# EXHIBIT A

*Prepared and Submitted by:*

Michael R. Johnson (7070)
David H. Leigh (9433)
Elaine A. Monson (5523)
Brent D. Wride (5163)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
Salt Lake City, UT 84111
(801) 532-1500
mjohnson@rqn.com
dleigh@rqn.com
emonson@rqn.com
bwride@rqn.com

*Proposed Counsel for the Debtor in Possession*

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**THE FALLS EVENT CENTER LLC, a** Utah limited liability company,<br><br>Address:   9067 S 1300 W, #301<br>            West Jordan, UT 84088,<br><br>Tax I.D. No. 90-1023989,<br><br>            Debtor in Possession. | Bankruptcy Case No. 18-25116<br><br>Chapter 11<br><br>Honorable Kimball Mosier<br><br>[Filed Electronically] |

**ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL
AND GRANTING ADEQUATE PROTECTION PURSUANT TO DEBTOR'S
EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF
CASH COLLATERAL AND PROVISION OF ADEQUATE PROTECTION <u>AND</u>
SETTING A FINAL HEARING ON THE DEBTOR'S MOTION**

On July ___, 2018, the *Debtor's Emergency Motion for Order Authorizing Use of Cash Collateral and Provision of Adequate Protection* (the "**Motion**") filed by Debtor The Falls Event Center LLC, a Utah limited liability company (the "**Debtor**"), the debtor in the above-captioned Chapter 11 case, came on for hearing. Appearances were made as noted on the record at the hearing, and it appearing from the Motion and the evidence presented on the record at the hearing that:

A.      GTR Source LLC ("**GSL**") claims a perfected security interest in collateral (the "**Collateral**") as described in the Merchant Agreement dated May 1, 2018 (the "**GSL Agreement**"), pursuant to the GSL Agreement and the UCC Financing Statement filed with the Utah Division of Corporations and Commercial Code on January 24, 2018, File No. 535710201828 (the "**GSL UCC Filing**"), and GSL also claims a perfected security interest in cash collateral consisting of the property identified in 11 U.S.C. § 363(a) (the "**Cash Collateral**"); and

B.      Richmond Capital Group LLC ("**RCG**") also claims a perfected security interest in the Collateral as described in the Merchant Agreement dated May 1, 2018 (the "**RCG Agreement**"), pursuant to the GSL Agreement, and RCG also claims a perfected security interest in the Cash Collateral; and

C.      Richmond Funding ("**RMF**") also claims a perfected security interest in some of the Collateral as described in the Secured Merchant Agreement dated May 1, 2018 (the "**RMF Agreement**"), pursuant to the RMF Agreement, and RMF also claims a perfected security interest in the Cash Collateral; and

D.      It is necessary for the Debtor, in order to avoid immediate and irreparable harm to the Debtor's Chapter 11 estate pending a final hearing, to use the Cash Collateral to meet day to

day business expenses as shown in the budget attached to this Order as **Exhibit A** (the "**Budget**").

NOW, THEREFORE, after considering the argument and evidence presented at the hearing, and good cause appearing, and no further notice being necessary, it is hereby ORDERED:

1. The Debtor is authorized, on an interim basis, to use the Cash Collateral, during the period commencing on the date hereof and continuing to and including August 31, 2018 (the "**Interim Use Period**") in an aggregate amount not to exceed the total stated as of that date in the Budget, such Cash Collateral to be used solely for the payment of expenses incurred in the ordinary course of the Debtor's business and operations as set forth in the Budget (provided, however, that the expenses shown in the Budget, if any, for professional fees shall accrue but shall not be paid with Cash Collateral during the Interim Use Period);

2. As adequate protection for the Debtor's use of the Cash Collateral, and for any resulting diminution (if any) in the value of the interests of GSL, RCG and RMF in the Collateral, GSL, RCG and RMF are hereby granted, pursuant to Section 361 of the Bankruptcy Code, a replacement lien on all post-petition Collateral of the same types such respective creditors had under the respective GSL Agreement, RCG Agreement and RMF Agreement, including on post-petition accounts and inventory of the Debtor, with such replacement liens to have the same perfection status and priority as existed prior to the Petition Date.

3. The Debtor has reserved the right to dispute that GSL, RCG and RMF have undisputed collateral rights in the Collateral and the Cash Collateral that have been properly perfected.

4. A final hearing on the Debtor's Motion shall be held on August __, 2018, at _____ o'clock __.m.

-------------------------------------------------END OF ORDER-------------------------------------------------

# EXHIBIT B

Contract ID#
Sales Partner:

# GTR SOURCE LLC

## MERCHANT AGREEMENT

Agreement dated 05/01/2018 _____ between GTR Source LLC ("GSL") and the Merchant listed below ("MERCHANT")

(Month)   (Day)   (Year)

### MERCHANT INFORMATION

Merchant's Legal Name: THE FALLS EVENT CENTER, LLC. / EVEN STEVENS UTAH, LLC.

D/B/A: THE FALLS EVENT CENTER, LLC. / EVEN STEVENS UTAH, LLC. State of Incorporation / Organization: UT  Federal Tax ID 90-1023989

Type of Entity (circle one)   Corporation   Limited Liability Company   Limited Partnership   Limited Liability Partnership   Sole Proprietorship

Physical Address: 9067 S 1300 W STE 301 _____ City: WEST JORDAN State: UT _____ Zip: 84088

Contact Name: STEVEN L. DOWN _____ Contact Number: _____ Email: _____

Mailing Address: 994 NEW HOPE DR. _____ City: DRAPER State: UT _____ Zip: 84020

### PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant ("Merchant" or "Seller") hereby sells, assigns and transfers to GSL ("GSL" or "Buyer") (making GSL the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Merchant's future accounts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payers (the "Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment in the ordinary course of the Merchant's business), for the payments due to Merchant as a result of Merchant's sale of goods or services (the "Transactions") until the amount specified below (the "Purchased Amount") has been delivered by or on behalf of Merchant to GSL.

The Purchased Amount shall be paid to GSL by Merchant's irrevocably directing and authorizing that there be only one depositing bank account, which account must be acceptable to, and pre-approved by, GSL (the "Account") into which Merchant and Merchant's customers shall remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each Transaction, until such time as GSL receives payment in full of the Purchased Amount. Merchant hereby authorizes GSL to ACH Debit the specified remittances from the merchant's Account on a daily basis and will provide GSL with all required access codes, and monthly bank statements. Merchant understands that it is responsible for ensuring that the specified percentage to be debited by GSL remains in the Account  and will be held responsible for any fees incurred by GSL resulting from a rejected ACH attempt or an event of default. (See Appendix A) GSL is not responsible for any overdrafts or rejected transactions that may result from GSL's ACH debiting the specified amounts under the terms of this agreement. GSL will debit the specific daily amount each business day and upon receipt of the Merchant's monthly bank statements on or about the eighteenth day of each month reconcile the Merchant's Account by either crediting or debiting the difference from or back to the Merchant's Account so that the amount debited per month equals the specified percentage. GSL may, upon Merchant's request, adjust the amount of any payment due under this Agreement at GSL's sole discretion and as it deems appropriate. Notwithstanding anything to the contrary in this Agreement or any other agreement between GSL and Merchant, upon the violation of any provision contained in Section 1.11 of the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under Section 3 of the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

Total Purchase Price: $500,000.00  Specified Percentage: 10 % Estimated Daily Amount:$ 7,250.00  Total Purchased Amount:$ 725,000.00

THE MERCHANT AGREEMENT TERMS AND CONDITIONS SET FORTH ON PAGE 2, THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.

FOR THE MERCHANT (#1)

By STEVEN L. DOWN _____   _____ (Signature)   | Sign Here |
(Print Name and Title)

FOR THE MERCHANT (#2)

By _____   _____ (Signature)   | Sign Here |
(Print Name and Title)

OWNER#1

By STEVEN L. DOWN _____   _____ (Signature)   | Sign Here |
(Print Name)

OWNER #2

By _____   _____ (Signature)   | Sign Here |
(Print Name)

GTR SOURCE LLC

By _____   Sales Associate Name: _____
(Company Officer)   (Signature)

GTR Source LLC | 111 John Street Suite 1210 | New York, NY 10038 | Ph. (646) 675-1847 Fax (855) 865-3163

GSL must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

**Guarantor Acknowledgement.** Guarantor acknowledges that: (i) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**Joint and Several Liability.** The obligations hereunder of the persons or entities constituting Guarantor under this Agreement are joint and several.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

MERCHANT #1

By: STEVEN L. DOWN
(Print Name and Title)
SS# 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

(Signature)
Drivers License Number _____

Sign Here

MERCHANT #2

By _____
(Print Name and Title)
SS# _____

(Signature)
Drivers License Number _____

Sign Here

OWNER/GUARANTOR #1

STEVEN L. DOWN
(Print Name)
SS# 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

(Signature)
Drivers License Number _____

Sign Here

OWNER/GUARANTOR #2

_____
(Print Name)
SS# _____

(Signature)
Drivers License Number _____

Sign Here

To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of above-signed Merchant and Owner(s) represent that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to repay this obligation; and that the information provided herein and in all of GSL document, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and GSL, and GSL shall be entitled to all remedies available under law, equity and/or this Agreement. GSL may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant via Processor and/or Operator to GSL. An investigative or consumer report may be made in connection with the Agreement. Merchant and each of the above-signed Owners authorizes GSL, its agents and representatives and any credit reporting agency engaged by GSL, to i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as Merchant and/or Owner(s) continue to have any obligation owed to GSL as a consequence of this Agreement or for GSL's ability to determine Merchant's eligibility to enter into any future agreement with Company. ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD, INTENTIONAL MISREPRESENTATION AND/OR UNJUST ENRICHMENT IN WHICH EVENT PCRV WILL BE ENTITLED TO THE RECOVERY OF NOT ONLY ITS LOSSES BUT ALSO PUNITIVE DAMAGES AND ALL OF ITS COSTS AND EXPENSES AND ITS REASONABLE LEGAL FEES.

# AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)

This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Merchant Agreement. Seller should keep this important legal document for Seller's records.

DISBURSMENT OF ADVANCE PROCEEDS. By signing below, Seller authorizes Buyer to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating an ACH credit to the checking account indicated below (or a substitute checking account Seller later identifies and is acceptable to Buyer) (hereinafter referred to as the "Designated Checking Account") This authorization is to remain in full force and effect until Buyer has received written notification from Seller of its termination in such time and in such manner as to afford Buyer and Seller's depository bank a reasonable opportunity to act on it.

BUSINESS PURPOSE ACCOUNT. By signing below, Seller attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes.

MISCELLANEOUS. Buyer is not responsible for any fees charged by Seller's bank as the result of credits or debits initiated under this agreement. The origination of ACH transactions to Seller's account must comply with the provisions of U.S. law.

I, (We) THE FALLS EVENT CENTER, LLC. / EVEN STEVENS UTAH, LLC   Hereby Authorize, GTR Source LLC
(Hereinafter known as "GSL") to Electronically (ACH) debit the Bank Account Below, of which I am a signer:

Bank Name: USBANK                           Branch: _____

ABA: Routing: XXXX '6473  DDA: Account: XXXX 2150                   For the

amount of: $ 7,250.00        (Or) Percentage of each Banking Deposit: % _____

On the Following Days: MONDAY - FRIDAY

This authorization is to remain in full force and effect until COMPANY has received written notification from me at least 5 banking days prior of its termination to afford COMPANY a reasonable opportunity to act on it.

Signer :(Print Name /Title) STEVEN L. DOWN   Date: 05/01/2018

X _____

GTR Source LLC |111 John Street, Ste 1210 | New York |NY 10038| Ph. (646) 762-1847 Fax (855) 865-3161

## Appendix A: The Fee Structure:

A.  Origination Fee- $ 14,990.99 to cover Underwriting and related expenses.

B.  ACH Program Fee- $ 14,998.99 (or 12% of the funded amount, depending on size of advance) ACH's are labor intensive and are not an automated process, requiring us to charge this fee to cover costs.

C.  NSF Fee Standard- $50.00 (each) up to THREE TIMES ONLY before a default is declared.

D.  Rejected ACH- $100.00 – When Merchant directs bank to reject our ACH Debit.

E.  Bank Change Fee- $500.00- When Merchant requires a change of Bank Account to be debited, requiring us to adjust our system.

F.  Blocked ACH Payment- $5,000.00—This fee is applied when Merchant directs the bank to BLOCK our ACH Debits. Blocking ACH Debits will place Merchant's account in default.

G.  Default Fee- a Default Fee of $2500.00 shall be applied to Merchant's account in the event that Merchant defaults under the terms of the Merchant Agreement. *See* Merchant Agreement at p.2, ¶3.1.

H.  Working Capital Funding- A fee of $5,000.00 shall be applied every time Merchant enters into any arrangement, agreement, or commitment that relates to or involves the Receipts, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales with any party other than GSL. *See* Merchant Agreement at p.2, ¶2.10.

I.  Account Management Fee- At the end of each month, Merchant will pay to GSL an Account Management Fee. This fee will not be applied towards the reduction of the Purchased Amount. This monthly fee will equal the average of all the payments received as a "Specified Percentage" of the Merchants settlement amount for that Month.

J.  Miscellaneous Service Fee- Merchant shall pay certain fees for services related to the origination and maintenance of Accounts. Each Merchant shall receive their funding electronically to their designated bank account and will be charged $30.00 for a Fed Wire or 0.00 for a bank ACH. The current charge for the underwriting and origination of each Merchant Agreement is $_____ paid from the funded amount. Merchant will be charged $25.00 for every additional change of their operating bank account once they are active with GSL. Additional copies of prior monthly statements will incur a fee of $10.00.

Merchant 1 (sign) _____     Print: STEVEN L. DOWN _____


Merchant 2 (sign) _____     Print: _____

## ADDENDUM TO SECURED PURCHASE AND SALE OF FUTURE RECEIVABLES AGREEMENT

This Addendum is entered into on the ___ day of _____, 20__ by and between GTR Source LLC ("GSL") and _____ (Seller).

1.  Should any of the terms of this Addendum conflict with the terms of the Secured Purchase and Sale of Future Receivables Agreement dated _____ (the "Agreement"), then the terms of this Addendum shall govern and be controlling. Capitalized terms used herein but otherwise not defined, shall have the same definition as in the Agreement:

    a.  By signing below, the Seller hereby requests and acknowledges that the Specified Percentage shall be revised to $_____ per business day (the "Estimated Daily Payment") which the parties agree is a good-faith approximation of the Specified Percentage, based on the Seller's receipts due to GSL pursuant to the Agreement.

    b.  The Estimated Daily Payment is to be drawn via ACH payment, from the following bank account:

        i.   Account Number:  x x x x 8907
        ii.  Routing Number:  x x x x 5971
        iii. Account Name:   Johnston's Utah LLC
        iv.  Bank Name:      Wells Fargo

    c.  At the Seller's option, within five (5) business days following the end of the calendar month, the Seller may request a reconciliation to take place, whereby the parties may ensure that the cumulative amount remitted for the subject month via the Estimated Daily Payment is equal to the amount of the Specified Percentage. However, in order to effectuate this reconciliation upon submitting the request for reconciliation to GSL – but in no event later than five (5) business days following the end of the calendar month – the Seller must produce any and all evidence and documentation requested by GSL in its sole and absolute discretion, necessary to identify the appropriate amount of the Specified Percentage. The foregoing includes without limitation, any and all bank statements, merchant processing statements, or any additional documentation necessary to ascertain the amounts of the Specified Percentage, including login to the Seller's bank account(s).

IN WITNESS WHEREOF, the parties have executed this Addendum to the Agreement as of the date first set above.

For the Seller #1:
By: STEVEN L. DOWN
Signature: _____

GTR SOURCE LLC
By: _____
Signature: _____

For the Seller #2:
By: _____
Signature: _____

*** This authorization is to remain in full force and effect until GTR Source LLC receives written notification from the Seller of its termination in such time and in such manner to afford GTR Source LLC a reasonable opportunity to act on it. Revocation of this authorization prior to remittance of the balance owed pursuant to the Agreement shall constitute a breach thereunder.

# AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)

This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Merchant Agreement. Seller should keep this important legal document for Seller's records.

DISBURSEMENT OF ADVANCE PROCEEDS. By signing below, Seller authorizes Buyer to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating an ACH credit to the checking account indicated below (or a substitute checking account Seller later identifies and is acceptable to Buyer) (hereinafter referred to as the "Designated Checking Account") This authorization is to remain in full force and effect until Buyer has received written notification from Seller of its termination in such time and in such manner as to afford Buyer and Seller's depository bank a reasonable opportunity to act on it.

BUSINESS PURPOSE ACCOUNT. By signing below, Seller attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes.

MISCELLANEOUS. Buyer is not responsible for any fees charged by Seller's bank as the result of credits or debits initiated under this agreement. The origination of ACH transactions to Seller's account must comply with the provisions of U.S. law.

I, (We) EVEN STEVENS UTAH, LLC. _____ Hereby Authorize, GTR Source LLC _____
(Hereinafter known as "GSL") to Electronically (ACH) debit the Bank Account Below, of which I am a signer:

Bank Name: Wells Fargo _____ Branch: _____

ABA: Routing: X X X X 2971 _____ DDA: Account: 1 X X X X 8909 _____ For the

amount of: $ 7,250.00 _____ (Or) Percentage of each Banking Deposit: % _____

On the Following Days: MONDAY - FRIDAY _____

This authorization is to remain in full force and effect until COMPANY has received written notification from me at least 5 banking days prior of its termination to afford COMPANY a reasonable opportunity to act on it.

Signer :(Print Name /Title) STEVEN L. DOWN Date: 05/01/2018

X _____

GTR Source LLC|111 John Street, Ste 1210|New York |NY 10038| Ph. (646) 762-1847 Fax (855) 865-3163

# GTR SOURCE LLC

### Balance Transfer Form

STEVEN L. DOWN

9067 S 1300 W STE 301

WEST JORDAN        UT 84088

MID:

Dear GTR,

STEVEN L. DOWN _____ agrees to transfer the retaining RTR
balance due in the amount of $ _3,800.00_ on the GTR contract # _002_ dated and signed on

_____

The RTR Balance has been added to the new "GTR" agreement dated and signed on _01/01/1970_ 2018

Thank You,

X _____

X _____

# MERCHANT AGREEMENT TERMS AND CONDITIONS

## I. TERMS OF ENROLLMENT PROGRAM

1.1  **Merchant Deposit Agreement.** Merchant shall execute an agreement (the "Merchant Deposit Agreement") acceptable to GSL and appoint a Bank acceptable to GSL, to obtain electronic fund transfer services and/or "ACH" payments. Merchant shall provide CMS and/or its authorized agent with all of the information, authorizations and passwords necessary to verify Merchant's receivables, receipts and deposits into the account. Merchant shall authorize GSL and/or its agent to deduct amounts owed to GSL for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to GSL by permitting GSL to withdraw the specified percentages by ACH debiting of the account. The authorization shall be irrevocable absent GSL's written consent.

1.2  **Future Purchases.** GSL reserves the right to rescind the offer to make any purchase payments hereunder, in its sole discretion.

1.3  **Financial Condition.** Merchant and Guarantor(s) authorize GSL and its agents to investigate their financial responsibility and history, and will provide to GSL any bank or financial statements, tax returns, etc. as GSL deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information GSL is authorized to update such information and financial profiles from time to time as it deems appropriate.

1.4  **Transactional History.** Merchant authorizes GSL and its agents to investigate their financial responsibility and history, and will provide to GSL any authorizations, bank or financial statements, tax returns, etc., as GSL deems necessary in its sole and absolute discretion prior to any time after the execution of this Agreement. A photocopy of this authorization will be deemed acceptable as an authorization for release of financial and credit information. Merchant waives, to the maximum extent permitted by law, any claims for damages against GSL or any of its affiliates relating to any investigation undertaken by or on behalf of GSL as permitted by this Agreement or disclosure of information as permitted by this Agreement.

1.5  **Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by GSL for monies owed to GSL from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by GSL.

1.6  **No Liability.** In no event will GSL be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect, or consequential damages, each of which is waived by Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantors will be jointly liable for all of GSL's legal fees and expenses resulting therefrom.

1.7  **Reliance on Terms.** Sections 1.1, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, GSL and Processor, and notwithstanding the fact that Processor is not a party of this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

1.8  **Sale of Receipts.** (THIS IS NOT A LOAN) Merchant is selling a portion of a future revenue stream to GSL at a discount, not borrowing money from GSL. There is no interest rate or payment schedule and not time period during which the Purchased Amount must be collected by GSL. If Future Receipts are remitted more slowly than GSL may have anticipated or projected because Merchant's business has slowed down, or if the full Purchased Amount is never remitted because Merchant's business went bankrupt or otherwise ceased operations in the ordinary course of business, and Merchant has not breached this Agreement, Merchant would not owe anything to GSL and would not be in breach of or default under this Agreement. GSL is buying the Purchased Amount of Future Receipts knowing the risks that Merchant's business may slow down or fail, and GSL assumes these risks based on Merchant's representations, warranties, and covenants in this Agreement, Merchant transfers to GSL full and complete ownership of the Purchased Amount of Future Receipts and Merchant retains no legal or equitable interest therein. Merchant agrees that it will treat Purchase Price and Purchased Amount in a manner consistent with a sale in its accounting records and tax returns. Merchant agrees that GSL is entitled to audit Merchant's accounting records upon reasonable Notice in order to verify compliance. Merchant waives any rights of privacy, confidentiality or taxpayer privilege in any such litigation or arbitration in which Merchant asserts that this transaction is anything other than a sale of future receipts.

1.9  **Power of Attorney.** Merchant irrevocably appoints GSL as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to GSL from Processor, or in the case of a violation by Merchant of Section 1.2 or the occurrence of an Event of Default under Section 4 hereof, from Merchant, under this Agreement, including without limitation: (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (ii) to receive, endorse, and collect any checks, notes, drafts, instruments, documents, or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to deliver future receipts directly to GSL' and (v) to file any claims or take any action or institute any proceeding which GSL may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to the delivery of the Purchased Amount.

1.10  **Protections against Default.** The following Protections 1 through 8 may be invoked by GSL, immediately and without notice to Merchant in an event of default, as prescribed by Section 3.1 and/or 2.9, OR in the event that: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the GSL electronic check processor; (b) Merchant changes its arrangements with Processor in any way that is adverse to GSL; (c) Merchant changes the electronic check processor through which the Receipts are settled from Process or to

another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check transactions to another processor; (d) Merchant interrupts the operation of this business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (i) the express prior written consent of GSL, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to GSL; (e) Merchant demonstrates an intent to default on this agreement by threatening to either cease payments or default on any provision within this Agreement; or (f) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise— the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to GSL at law, in equity or otherwise pursuant to this Agreement. **Protection 1.** The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately. **Protection 2.** GSL may enforce the provisions of the Personal Guarantee of Performance against the Guarantor(s). **Protection 3.** Merchant shall, upon execution of this Agreement, deliver to GSL an executed Confession of Judgment in favor of GSL in the amount of the Purchase Amount stated in the Agreement along with legal fees calculated at twenty five percent (25%) of the purchased price less any payments made and interest. Upon breach of any provision in paragraphs 1.10, 2.9, and/or 3.1, GSL may enter that Confession of Judgment as a judgment with the Clerk of the Court and execute thereon. **Protection 4.** GSL may enforce its security interest in the Collateral identified in the Security Agreement herein. **Protection 5.** GSL may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, in which GSL shall recover judgment against Merchant, Merchant shall be liable for all of GSL's costs of lawsuit, including but not limited to all reasonable attorneys' fees and court costs. **Protection 6.** Merchant shall, upon execution of this Agreement, deliver to GSL an executed assignment of lease of Merchant's premises in favor of GSL. Upon breach of any provision in this paragraph 1.12, GSL may exercise its rights under such assignment of lease. **Protection 7.** GSL may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise, in an amount consistent with the Specified Percentage. **Protection 8.** GSL shall have the right, without waiving any of its rights and remedies and without notice to Merchant and/or Guarantor(s), to notify Merchant's credit card processor of the sale of Receipts hereunder and to direct such credit card processor to make payment to GSL of all or any portion of the amounts received by such credit card processor on behalf of Merchant. Merchant hereby grants to GSL an irrevocable power - of-attorney, which power-of-attorney shall be coupled with an interest, and hereby appoints GSL or any of GSL's representatives as Merchant's attorney-in -fact, to take any and all action necessary to direct such new or additional credit card processor to make payment to GSL as contemplated by this Section.

1.11 **Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respect of himself or herself personally, authorizes GSL to disclose information concerning Merchant's and each Owner's and/or Guarantor(s)'s credit standing and business conduct only, to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant, Guarantor(s) and Owner(s) hereby waives to the maximum extent permitted by law any claim for damages against GSL or any of its affiliates relating to any (1) investigation undertaken by or on behalf GSL as permitted by this Agreement and/or (ii) disclosure of information as permitted by this Agreement.

1.12 **Confidentiality.** The terms and conditions of this Agreement are proprietary and confidential unless required by law. Merchant shall not disclose this information to anyone other than its attorney, accountant, or similar service provider and then only to the extent such person uses the information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Action. A breach entitles GSL to damages and legal fees as well as temporary restraining order and preliminary injunction without bond.

1.13 **D/B/As.** Merchant hereby acknowledges and agrees that GSL may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between GSL and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## II. REPRESENTATIONS, WARRANTIES, AND COVENANTS

Merchant represents, warrants, and covenants that as of this date and during the term of this Agreement:

2.1 **Financial Condition and Financial Information.** Any bank statements and financial statements of Merchant that have been furnished to GSL, and future statements that will be furnished to GSL, fairly represent the financial condition of Merchant at such dates, and Merchant will notify GSL immediately if there are material adverse changes, financial or otherwise, in the condition or operation of the Merchant or any change in the ownership of the Merchant. GSL may request statements at any time during the performance of this Agreement and the Merchant shall provide them to GSL within five business days. Furthermore, Merchant represents that all documents, forms and recorded interviews provided to or with GSL are true, accurate and complete in all respects, and accurately reflect Merchant's financial condition and results of operations. Merchant further agrees to authorize the release of any past or future tax returns to Merchant.

2.2 **Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations, and licenses to own, operate and lease its properties and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engages and/or will engage hereafter.

2.3 **Authorization.** Merchant and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

2.4 **Insurance.** Merchant will maintain business-interruption insurance naming GSL as a loss payee and additional insured in amounts and against risks as are satisfactory to GSL and shall provide GSL with proof of such insurance upon request.

2.5 **Electronic Check Processing Agreement.** Merchant will not change its processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without GSL's prior written consent. Any such changes shall be a material breach of this Agreement.

2.6 **Change of Name and/or Location or the Sale and/or Closing of the Business.** Merchant will not conduct Merchant's business under any name other than as disclosed to GSL or change any of its places of business without prior written consent of GSL. Merchant will not sell, dispose, transfer or otherwise convey all or substantially all of its business or assets without (i) the express prior written consent of GSL, and (ii) the written agreement of any purchaser or transferee assuming all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to GSL in writing, Merchant has no current plans to close its business either temporarily, whether for renovations, repairs or any other purpose, or permanently. Merchant agrees that until GSL has received all of the Purchases Amount Merchant will not voluntarily close its business on a temporary basis for renovations, repairs or other purposes. This

provision, however, does not prohibit Merchant from closing its business temporarily if such closing is require to conduct renovations or repairs that are required by local ordinance or other legal order, such as from a health or fire inspector, or if otherwise forced to do so by circumstances outside of the control of Merchant. Prior to any such closure, Merchant will provide GSL ten days' notice to the extent practicable.

2.7 **Estoppel Certificate.** Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from GSL to Merchant, execute, acknowledge and deliver to GSL and/or to any other person, firm or corporation specified by GSL, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modification, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been paid.

2.8 **No Pending or Contemplated Bankruptcy.** As of the date Merchant executes this Agreement, Merchant is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant represents that it has not consulted with a bankruptcy attorney within six months prior to the date of this Agreement. Merchant further warrants that it does not anticipate filing a bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

2.9 **Working Capital Funding.** Merchant shall not further encumber the Receipts without (i) the written consent of GSL, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to GSL; or (e) Merchant takes any action, fails to take any action, or offers any incentive— economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to GSL at law, in equity or otherwise pursuant to this Agreement. Protection 1. The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately. Protection 2. GSL may enforce the provisions of the Personal Guarantee of Performance against the Guarantor(s). Protection 3. Merchant shall, upon whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales, with any party other than GSL. Protection 4. Merchant shall, upon execution of this Agreement, deliver to GSL an executed Confession of Judgment in favor of GSL in the amount of the Purchase Amount stated in the Agreement along with legal fees calculated at twenty five percent (25%) of the purchased price less any payments made and interest. Upon breach of any provision in paragraphs 1.10, 2.9, and/or 3.1, GSL may enter that Confession of Judgment as a judgment with the Clerk of the Court and execute thereon.

2.10 **Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of GSL.

2.11 **Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdiction in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and *not as a consumer for personal, family or household purposes.*

2.12 **No Violation of Prior Agreements.** Merchant's execution and performance of this Agreement will not conflict with any other agreement, obligation, promise, court order, administrative order or decree, law or regulation to which Merchant is subject, including any agreement that prohibits the sale or pledge of Merchant's future receipts.

## III. EVENTS OF DEFAULT AND REMEDIES

3.1 **Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material aspect when made; (c) the sending of notice of termination by Guarantor(s) prior to the Purchased Amount being paid to GSL; (d) Merchant shall transport, move, interrupt, suspend, dissolve or terminate its business; (e) Merchant shall transfer or sell all or substantially all of its assets; (f) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (g) Merchant shall use multiple depository accounts without the prior written consent of GSL; (h) Merchant shall change its depositing account without the prior written consent of GSL; (i) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; (j) Merchant shall default under any of the terms, covenants and conditions of either this Agreement any other agreement with GSL; or (k) Merchant shall fail to deposit its Receipts into the Account.

3.2 **Remedies.** In case of any Event of Default occurs and to Section 4.4 hereof, GSL may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Personal Guarantee) or any other legal or equitable right or remedy. All rights, powers and remedies of GSL in connection with this Agreement may be exercised at any time by GSL after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

3.3 **Costs.** Merchant shall pay to GSL all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of GSL's remedies set forth herein, including but not limited to court costs and attorneys' fees.

3.4 **Required Notifications.** Merchant is required to give GSL written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give GSL seven (7) days written notice prior to closing of any sale or all or substantially all of the Merchant's assets or stocks.

## IV. MISCELLANEOUS

4.1 **Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by both parties.

4.2 **Assignment.** GSL may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part without prior notices to Merchant.

4.3 **Notices.** All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective ONLY upon receipt.

4.4 **Waiver Remedies.** No failure on the part of GSL to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5   **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of GSL which consent may be withheld in GSL's sole discretion.

4.6   **Governing Law, Venue and Jurisdiction.** This Agreement shall be governed by and construed exclusively in accordance with the laws of the state of New York, without regards to any applicable principles of conflicts of law. If there is any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof or in any dispute arising among the parties, then such litigation shall only be instituted in any court sitting in New York State (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, and submit to the jurisdiction of the Acceptable Forums and waive any and application made by either party to transfer such proceeding to an Acceptable Forum.

4.7   **Survival of Representation, etc.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

4.8   **Entire Agreement and Severability.** This Agreement embodies the entire agreement between Merchant and GSL and supersedes all prior agreements and understandings relating to the subject matter hereof. In case any of the provisions in this Agreement is found to be invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of any other provision contained herein shall not in any way be affected or impaired.

4.9   **JURY WAIVER.** THE PARTIES WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR ITS ENFORCEMENT, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. THE PARTIES ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY, AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.10  **CLASS ACTION WAIVER.** THE PARTIES WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

4.11  **Facsimile Acceptance.** Facsimile signature hereon, or other electronic means reflecting the party's signature hereto, shall be deemed acceptable for all purposes.

## GTR SOURCE LLC - SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: THE FALLS EVENT CENTER, LLC. / EVEN STEVENS UTAH, LLC.   D/B/A: THE FALLS EVENT CENTER, LLC. / EVEN STEVENS UTAH, LLC.

Physical Address: 5067 S 1300 W STE 301    City WEST JORDAN    State UT    Zip 84088

Federal ID# 90-1023989

### SECURITY AGREEMENT

**Security Interest.** This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant grants to GSL a security interest in and lien upon: (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant, (b) all proceeds, as that term is defined in Article 9 of the UCC (c) all funds at any time in the Merchant's Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to GSL under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets"). Merchant agrees to provide other security to GSL upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover GSL's entitlements under this Agreement, GSL is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Secured Assets. These security interests and liens will secure all of GSL's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, GSL or an affiliate of GSL. GSL is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by GSL without notice or demand of any kind by making an immediate withdrawal or freezing the Secured Assets. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, GSL has control over and may direct the disposition of the Secured Assets, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Secured Assets. With respect to such security interests and liens, GSL will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from GSL written consent prior to granting a security interest of any kind in the Secured Assets to a third party. Merchant agrees that this is a contract of recoupment and GSL is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Secured Assets. Nevertheless, Merchant agrees not to contest or object to any motion for relief from the automatic stay filed by GSL. Merchant agrees to execute and deliver to GSL such instruments and documents GSL may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. GSL is authorized to execute all such instruments and documents in Merchant's name.

**Additional-Collateral.** To secure Guarantor's payment and performance obligations to GSL under the Guaranty, the Guarantor hereby grants GSL a security interest in

_____(the "Additional Collateral"). Guarantor understands that GSL will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement.

Merchant and Guarantor each acknowledge and agree that any security interest granted to GSL under any other agreement between Merchant or Guarantor and GSL (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement.

Merchant and Guarantor each agrees to execute any documents or take any action in connection with this Agreement as GSL deems necessary to perfect or maintain GSL's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor each hereby authorizes GSL to file any financing statements deemed necessary by GSL to perfect or maintain GSL's security interest, which financing statement may contain notification that Merchant and/or Guarantor have granted a negative pledge to GSL with respect to the Collateral, and the Additional Collateral, and that any subsequent lienor may be tortuously interfering with GSL's rights. Merchant and Guarantor shall be liable for, and GSL may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by GSL in protecting, preserving and enforcing GSL's security interest and rights.

**Negative Pledge.** Merchant and Guarantor each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** GSL shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, GSL may exercise its rights and remedies under the Assignment of Lease. Merchant also agrees that GSL may enter into an agreement with Merchant's landlord giving GSL the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant's lease to another qualified business capable of operating a business comparable to Merchant's at such premises.

**Remedies.** Upon any Event of Default, GSL may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to GSL, whether by acceleration or otherwise.

### GUARANTY

**Personal Guaranty of Performance.** The undersigned Guarantor(s) hereby guarantees to GSL, Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in the Merchant Agreement in Sections thereof 2.3, 2.5, 2.6, 2.9, 2.10, 2.11, 2.12, 2.13 and 2.14, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

**Guarantor Waivers.** In the event of a breach of the above, GSL may seek recovery from Guarantors for all of GSL's losses and damages by enforcement of GSL's rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral GSL may hold pursuant to this Agreement or any other guaranty.

GSL does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount owed under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) GSL's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to GSL. In addition, GSL may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to GSL; (ii) release Merchant from its obligations to GSL; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Merchant Amount plus any accrued but unpaid interest and Merchant's other obligations to GSL under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that

# GTR SOURCE LLC

Dear Merchant,

Thank you for accepting an offer from GTR Source LLC. ("GSL") We look forward to being your funding partner for as long as you need.

Please note that the way your advance is set up GSL needs viewing access to your bank account each business day in order to calculate the amount of your daily payment. Please be assured that we will carefully safeguard your confidential information and only essential personnel will have access to it.

Please fill out the form below with the access information for your account.

Bank portal website: _____

Username: _____

Password: _____

Security Question/Answer 1:_____

Security Question/Answer 2:_____

Security Question/Answer 3:_____

Any other information necessary to access your account: _____

_____

Please note in the event we cannot access your account we will take an estimated payment plus a $39 fee for each day we don't have access. If you have any questions please feel free to contact our cash management department directly at (855) 662-9303

GTR Source LLC |111 John Street, Ste 1210 | New York |NY 10038| Ph. (855) 865-3163 Fax (646) 762-1847

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF

GTR SOURCE, LLC.

          Plaintiff,

     -against-

THE FALLS EVENT CENTER, LLC. / EVEN STEVENS
UTAH, LLC.
and STEVEN L. DOWN,

          Defendants.

Index No.

AFFIDAVIT OF
CONFESSION OF JUDGMENT

STATE OF Utah )
) ss.:
COUNTY OF Salt Lake )



AISLINN ANN GRENNY
NOTARY PUBLIC • STATE OF UTAH
COMMISSION # 687030
COMM. EXP. 02-05-2020

STEVEN L. DOWN, being duly sworn, deposes and says:

1.    I am a principal, owner, and an officer of THE FALLS EVENT CENTER, LLC. / EVEN STEVENS UTAH, LLC. ("Merchant Defendant"), a Corporation located at 9067 S 1300 W STE 301, WEST JORDAN, UT 84088, in the County of SALT LAKE, and as such, I have the authority to act on behalf of Merchant Defendant.

2.    I reside at 994 NEW HOPE DR., DRAPER, UT 84020, in the County of SALT LAKE.

3.    I, individually, and on behalf of Merchant Defendant consent to the jurisdiction of this Court.

4.    Merchant Defendant hereby confesses judgment and authorizes entry of judgment in favor of Plaintiff and against Defendants in the Federal District Court for the Southern District of New York, Supreme Court of the State of New York, County of Richmond, Supreme Court of the State of New York, County of Orange, Supreme Court of the State of New York, County of Westchester, Supreme Court of the State of New York, County of Kings, Supreme Court of the State of New York, County of Erie, Supreme Court of the State of New York, County of Ontario, and/or Supreme Court of the State of New York, County of Richmond, in the sum of $725,000.00 less any payments timely

made pursuant to the secured Merchant Agreement dated 05/01/2018, plus legal fees to Plaintiff calculated at twenty five percent (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 9% per annum from 05/01/2018, or the highest amount allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Affidavit of Confession of Judgment.

5.    In addition, I hereby confess judgment, individually and personally, jointly and severally, and authorize entry of judgment in favor of Plaintiff and against myself in the Federal District Court for the Southern District of New York, Supreme Court of the State of New York, County of Richmond, Supreme Court of the State of New York, County of Orange, Supreme Court of the State of New York, County of Westchester, Supreme Court of the State of New York, County of Kings, Supreme Court of the State of New York, County of Erie, Supreme Court of the State of New York, County of Ontario, and/or Supreme Court of the State of New York, County of Richmond, against me personally in the sum of $725,000.00 less any payments timely made pursuant to the Merchant Agreement dated 05/01/2018, plus legal fees to Plaintiff calculated at twenty five percent (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 9% per annum from 05/01/2018, or the highest rate allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Confession of Judgment.

6.    This confession of judgment is for a debt due to Plaintiff arising from Defendants' failure to pay to Plaintiff, Merchant Defendant's accounts-receivable, which were purchased by Plaintiff pursuant to the secured Merchant Agreement dated 05/01/2018, and for Defendants' breach of the secured Merchant Agreement, plus agreed-upon interest, reasonable attorneys' fees, costs and disbursements, as agreed-upon by Merchant Defendant and myself, under the secured Merchant Agreement, dated

05/01/2018, of which supporting documents include a Personal Guarantee and a UCC-1 financing statement(s).

7.    Merchant Defendant and I hereby agree that the execution and delivery of this Affidavit of Confession of Judgment and any entry of judgment thereon shall be without prejudice to any and all rights of Plaintiff, who reserves all of its rights and remedies against Defendants.

8.    If for any reason entry of judgment in the above specified amount or execution on the same is outside the jurisdiction of this Court, Merchant Defendant and I hereby consent to the personal jurisdiction, entry of judgment, and execution thereon in any State or Federal Court of the United States of America.

9.    I have been authorized by Merchant Defendant to sign this Affidavit of Confession of Judgment on this ____ day of _____, 2018.

AISLINN ANN GRENNY
NOTARY PUBLIC · STATE OF UTAH
COMMISSION# 667030
COMM. EXP. 02-05-2020

By: _____
STEVEN L. DOWN, individually, and on behalf
of THE FALLS EVENT CENTER, LLC. /
EVEN STEVENS UTAH, LLC.

Sworn to before me this
____ Day of _____, 2018.

_____
Notary Public

3

# EXHIBIT C



Utah
Department of
Commerce

Division Of Corporations

# Record of Filing

File Number: 535710201828
Old File Number: N/A

Record Date: 01-24-2018 10:54
Lapse Date: 01-24-2023 23:59

Type: UCC
Status: ACTIVE

---

**Filer:**

LIEN SOLUTIONS
P.O. BOX 29071
GLENDALE, CALIFORNIA 91209-9071

**Collateral Description:**
Action: NONE
Description:
ALL ACCOUNTS RECEIVABLE, RECEIPTS, INSTRUMENTS, CONTRACT RIGHTS AND OTHER RIGHTS TO RECEIVE
THE PAYMENT OF MONEY, PATENTS, CHATTEL PAPER, LICENSES, LEASES AND GENERAL INTANGIBLES,
WHETHER NOW OWNED OR HEREAFTER ACQUIRED OR ARISING, AND ALL OF DEBTOR'S BOOKS AND RECORDS
RELATING TO ANY OF THE FOREGOING.

**Debtor:**
THE FALLS EVENT CENTER LLC                                                              FEIN: null
9067 S 1300 W STE 301                                                        Jurisdiction: null
WEST JORDAN, UTAH 84088                                                   Organization Id: null
Trust: No                                                              Organization Type: NONE

**Debtor:**
DOWN, STEVEN L.
994 NEW HOPE DR
DRAPER, UTAH 84020
Trust: No

**Secured Party:**
GTR SOURCE LLC
1006 MONMOUTH AVE
LAKEWOOD, NEW JERSEY 08701

**Transaction Detail:**
Form Type: UCC 1 FILING STATEMENT                                    Transaction Cost: $12.00
Effective Date: 01-24-2018 10:54                                        Receipt Number: 777
Submitter Ref: UT-0-62420177                                        Alt Designation: NONE
Web Transaction ID: 180124-44526-1154669

---

**Additional Description:**
**FILLING APPROVED - 0**

THE DATA LISTED ABOVE IS A 'NON-CERTIFIED' RECORD.PLEASE TAKE THE TIME TO REVIEW ALL OF THE
INFORMATION.IF YOU FIND ANY DISCREPANCIES, MADE BY THE DIVISION YOU MUST CONTACT THE
DIVISION, AT NO COST, WITHIN 30 DAYS OF RECEIVING THIS ACKNOWLEDGEMENT.

# EXHIBIT D

Contract ID#
Sales Partner:

## MERCHANT AGREEMENT

Agreement dated 05/01/2018 _____ between Richmond Capital Group LLC ("RCG") and the Merchant listed below ("MERCHANT")

    (Month)  (Day)  (Year)

### MERCHANT INFORMATION

Merchant's Legal Name: THE FALLS EVENT CENTER, LLC. / EVEN STEVENS UTAH, LLC.

D/B/A: THE FALLS EVENT CENTER, LLC. / EVEN STEVENS UTAH, LLC.  State of Incorporation / Organization: UT  Federal Tax ID 90-1023989

Type of Entity (circle one)   Corporation   Limited Liability Company Limited Partnership   Limited Liability Partnership   Sole Proprietorship

Physical Address: 9067 S 1300 W STE 301 _____ City: WEST JORDAN State: UT _____ Zip: 84088

Contact Name: STEVEN L. DOWN _____ Contact Number: _____ Email: _____

Mailing Address: 994 NEW HOPE DR. _____ City: DRAPER ____ State: UT _____ Zip: 84020

### PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant ("Merchant" or "Seller") hereby sells, assigns and transfers to RCG ("RCG" or "Buyer") (making RCG the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Merchant's future accounts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment in the ordinary course of the Merchant's business), for the payments due to Merchant as a result of Merchant's sale of goods or services (the "Transactions") until the amount specified below (the "Purchased Amount") has been delivered by or on behalf of Merchant to RCG.

The Purchased Amount shall be paid to RCG by Merchant's irrevocably directing and authorizing that there be only one depositing bank account, which account must be acceptable to, and pre-approved by, RCG (the "Account") into which Merchant and Merchant's customers shall remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each Transaction, until such time as RCG receives payment in full of the Purchased Amount. Merchant hereby authorizes RCG to ACH Debit the specified remittances from the merchant's Account on a daily basis and will provide RCG with all required access codes, and monthly bank statements. Merchant understands that it is responsible for ensuring that the specified percentage to be debited by RCG remains in the Account and will be held responsible for any fees incurred by RCG resulting from a rejected ACH attempt or an event of default. (See Appendix A) RCG is not responsible for any overdrafts or rejected transactions that may result from RCG's ACH debiting the specified amounts under the terms of this agreement. RCG will debit the specific daily amount each business day and upon receipt of the Merchant's monthly bank statements on or about the eighteenth day of each month reconcile the Merchant's Account by either crediting or debiting the difference from or back to the Merchant's Account so that the amount debited each month equals the specified percentage. RCG may, upon Merchant's request, adjust the amount of any payment due under this Agreement at RCG's sole discretion and as it deems appropriate. Notwithstanding anything to the contrary in this Agreement or any other agreement between RCG and Merchant, upon the violation of any provision contained in Section 1.11 of the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under Section 3 of the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

Total Purchase Price: $500,000.00  Specified Percentage: 10 % Estimated Daily Amount:$ 7,250.00  Total Purchased Amount:$ 725,000.00

THE MERCHANT AGREEMENT TERMS AND CONDITIONS SET FORTH ON PAGE 2, THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.

FOR THE MERCHANT (#1)

By STEVEN L. DOWN _____    [signature]    Sign Here
    (Print Name and Title)    (Signature)

FOR THE MERCHANT (#2)

By _____    [signature]    Sign Here
    (Print Name and Title)    (Signature)

OWNER#1

By STEVEN L. DOWN _____    [signature]    Sign Here
    (Print Name)    (Signature)

OWNER#2

By _____    [signature]    Sign Here
    (Print Name)    (Signature)

RICHMOND CAPITAL GROUP, LLC

By _____  Sales Associate Name: _____
    (Company Officer)    (Signature)

Richmond Capital Group, LLC | 111 John Street Suite 1210 | New York |NY 10038| Ph. (855) 662-9303 Fax (855) 204-0222

RCG ACH

## RICHMOND CAPITAL GROUP LLC – SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: THE FALLS EVENT CENTER, LLC. / EVEN STEVENS UTAH, LLC.    D/B/A: THE FALLS EVENT CENTER, LLC. / EVEN STEVENS UTAH, LLC.

Physical Address: 9067 S 1300 W STE 301          City WEST JORDAN          State UT          Zip 84088

Federal ID# 90-1023989

### SECURITY AGREEMENT

**Security Interest.**   This Agreement will constitute a security agreement under the Uniform Commercial Code.   Merchant grants to RCG a security interest in and lien upon: (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant, (b) all proceeds, as that term is defined in Article 9 of the UCC (c) all funds at any time in the Merchant's Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to RCG under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets"). Merchant agrees to provide other security to RCG upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover RCG's entitlements under this Agreement, RCG is granted a further security interest in all of Merchant's assets, of any kind whatsoever, and such assets shall then become Secured Assets. These security interests and liens will secure all of RCG's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, RCG or an affiliate of RCG. RCG is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by RCG without notice or demand of any kind by making an immediate withdrawal or freezing the Secured Assets. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, RCG has control over and may direct the disposition of the Secured Assets, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Secured Assets. With respect to such security interests and liens, RCG will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from RCG written consent prior to granting a security interest of any kind in the Secured Assets to a third party. Merchant agrees that this is a contract of recoupment and RCG is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Secured Assets. Nevertheless, Merchant agrees not to contest or object to any motion for relief from the automatic stay filed by RCG.  Merchant agrees to execute and deliver to RCG such instruments and documents RCG may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. RCG is authorized to execute all such instruments and documents in Merchant's name.

**Additional Collateral.**   To secure Guarantor's payment and performance obligations to RCG under the Guaranty, the Guarantor hereby grants RCG a security interest in _____

_____ (the "Additional Collateral"). Guarantor understands that RCG will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement.

Merchant and Guarantor each acknowledge and agree that any security interest granted to RCG under any other agreement between Merchant or Guarantor and RCG (the "Cross-Collateral") will secure the obligations hereunder and under this Merchant Agreement.

Merchant and Guarantor each agrees to execute any documents or take any action in connection with this Agreement as RCG deems necessary to perfect or maintain RCG's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor each hereby authorizes RCG to file any financing statements deemed necessary by RCG to perfect or maintain RCG's security interest, which financing statement may contain notification that Merchant and/or Guarantor have granted a negative pledge to RCG with respect to the Collateral, and the Additional Collateral, and that any subsequent lienor may be tortuously interfering with RCG's rights. Merchant and Guarantor shall be liable for, and RCG may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by RCG in protecting, preserving and enforcing RCG's security interest and rights.

**Negative Pledge.** Merchant and Guarantor each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** RCG shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, RCG may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that RCG may enter into an agreement with Merchant's landlord  giving RCG the right: (a)  to  enter Merchant's premises and  to  take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant's lease to another qualified business capable of operating a business comparable to Merchant's at such premises.

**Remedies.** Upon any Event of Default, RCG may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to RCG, whether by acceleration or otherwise.

### GUARANTY

**Personal Guaranty of Performance.** The undersigned Guarantor(s) hereby guarantees to RCG, Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in the Merchant Agreement in Sections thereof 2.3, 2.5, 2.6, 2.9, 2.10, 2.11, 2.12, 2.13 and 2.14, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

**Guarantor Waivers.** In the event of a breach of the above, RCG may seek recovery from Guarantors for all of RCG's losses and damages by enforcement of RCG's rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral RCG may hold pursuant to this Agreement or any other guaranty.

RCG does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified  of: (i) Merchant's failure to pay timely any amount owed under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) RCG's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to RCG. In addition, RCG may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to RCG; (ii) release Merchant from its obligations to RCG; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Merchant Amount plus any accrued but unpaid interest and Merchant's other obligations to RCG under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that

# MERCHANT AGREEMENT TERMS AND CONDITIONS

## I. TERMS OF ENROLLMENT PROGRAM

1.1 **Merchant Deposit Agreement.** Merchant shall execute an agreement (the "Merchant Deposit Agreement") acceptable to RCG and appoint a Bank acceptable to RCG, to obtain electronic fund transfer services and/or "ACH" payments. Merchant shall provide CMS and/or its authorized agent with all of the information, authorizations and passwords necessary to verify Merchant's receivables, receipts and deposits into the account. Merchant shall authorize RCG and/or its agent to deduct amounts owed to RCG for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to RCG by permitting RCG to withdraw the specified percentages by ACH debiting of the account. The authorization shall be irrevocable absent RCG's written consent.

1.2 **Future Purchases.** RCG reserves the right to rescind the offer to make any purchase payments hereunder, in its sole discretion.

1.3 **Financial Condition.** Merchant and Guarantor(s) authorize RCG and its agents to investigate their financial responsibility and history, and will provide to RCG any bank or financial statements, tax returns, etc. as RCG deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information RCG is authorized to update such information and financial profiles from time to time as it deems appropriate.

1.4 **Transactional History.** Merchant authorizes RCG and its agents to investigate their financial responsibility and history, and will provide to RCG any authorizations, bank or financial statements, tax returns, etc., as RCG deems necessary in its sole and absolute discretion prior to any time after the execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. Merchant waives, to the maximum extent permitted by law, any claims for damages against RCG or any of its affiliates relating to any investigation undertaken by or on behalf of RCG as permitted by this Agreement or disclosure of information as permitted by this Agreement.

1.5 **Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by RCG for monies owed to RCG from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by RCG.

1.6 **No Liability.** In no event will RCG be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect, or consequential damages, each of which is waived by Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantors shall be jointly liable for all of RCG's legal fees and expenses resulting therefrom.

1.7 **Reliance on Terms.** Sections 1.1, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, RCG and Processor, and notwithstanding the fact that Processor is not a party of this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

1.8 **Sale of Receipts.** (THIS IS NOT A LOAN) Merchant is selling a portion of a future revenue stream to RCG at a discount, not borrowing money from RCG. There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by RCG. If Future Receipts are remitted more slowly than RCG may have anticipated or projected because Merchant's business has slowed down, or if the full Purchased Amount is never remitted because Merchant's business went bankrupt or otherwise ceased operations in the ordinary course of business, and Merchant has not breached this Agreement, Merchant would not owe anything to RCG and would not be in breach of or default under this Agreement. RCG is buying the Purchased Amount of Future Receipts knowing the risks that Merchant's business may slow down or fail, and RCG assumes these risks based on Merchant's representations, warranties, and covenants in this Agreement. Merchant transfers to RCG full and complete ownership of the Purchased Amount of Future Receipts and Merchant retains no legal or equitable interest therein. Merchant agrees that it will treat Purchase Price and Purchased Amount in a manner consistent with a sale in its accounting records and tax returns. Merchant agrees that RCG is entitled to audit Merchant's accounting records upon reasonable Notice in order to verify compliance. Merchant waives any rights of privacy, confidentiality or taxpayer privilege in any such litigation or arbitration in which Merchant asserts that this transaction is anything other than a sale of future receipts.

1.9 **Power of Attorney.** Merchant irrevocably appoints RCG as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to RCG from Processor, or in the case of a violation by Merchant of Section 1.2 or the occurrence of an Event of Default under Section 4 hereof, from Merchant, under this Agreement, including without limitation: (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (ii) to receive, endorse, and collect any checks, notes, drafts, instruments, documents, or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to deliver future receipts directly to RCG' and (v) to file any claims or take any action or institute any proceeding which RCG may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to the delivery of the Purchased Amount.

1.10 **Protections against Default.** The following Protections 1 through 8 may be invoked by RCG, immediately and without notice to Merchant in an event of default, as prescribed by Section 3.1, OR in the event that: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the RCG electronic check processor, (b) Merchant changes its arrangements with Processor in any way that is adverse to RCG; (c) Merchant changes the electronic check processor through which the Receipts are settled from Process or to another

electronic check processor, or permits any event to occur that could cause diversion of any Merchant's check transactions to another processor; (d) Merchant interrupts the operation of this business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (i) the express prior written consent of RCG, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to RCG; (e) Merchant demonstrates an intent to default on this agreement by threatening to either cease payments or default on any provision within this Agreement; or (f) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to RCG at law, in equity or otherwise pursuant to this Agreement. **Protection 1.** The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately. **Protection 2.** RCG may enforce the provisions of the Personal Guarantee of Performance against the Guarantor(s). **Protection 3.** Merchant shall, upon execution of this Agreement, deliver to RCG an executed Confession of Judgment in favor of RCG in the amount of the Purchase Amount stated in the Agreement along with legal fees calculated at twenty five percent (25%) of the purchased price less any payments made and interest. Upon breach of any provision in paragraphs 1.10, 2.9, and/or 3.1, RCG may enter that Confession of Judgment as a judgment with the Clerk of the Court and execute thereon. **Protection 4.** RCG may enforce its security interest in the Collateral identified in the Security Agreement herein. **Protection 5.** RCG may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, in which RCG shall recover judgment against Merchant, Merchant shall be liable for all of RCG's costs of lawsuit, including but not limited to all reasonable attorneys' fees and court costs. **Protection 6.** Merchant shall, upon execution of this Agreement, deliver to RCG an executed assignment of lease of Merchant's premises in favor of RCG. Upon breach of any provision in this paragraph 1.12, RCG may exercise its rights under such assignment of lease. **Protection 7.** RCG may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise, in an amount consistent with the Specified Percentage. **Protection 8.** RCG shall have the right, without waiving any of its rights and remedies and without notice to Merchant and/or Guarantor(s), to notify Merchant's credit card processor of the sale of Receipts hereunder and to direct such credit card processor to make payment to RCG of all or any portion of the amounts received by such credit card processor on behalf of Merchant. Merchant hereby grants to RCG an irrevocable power - of-attorney, which power-of-attorney shall be coupled with an interest, and hereby appoints RCG or any of RCG's representatives as Merchant's attorney-in -fact, to take any and all action necessary to direct such new or additional credit card processor to make payment to RCG as contemplated by this Section.

1.11 **Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respect of himself or herself personally, authorizes RCG to disclose information concerning Merchant's and each Owner's and/or Guarantor(s)'s credit standing and business conduct only, to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant, Guarantor(s) and Owner(s) hereby waives to the maximum extent permitted by law any claim for damages against RCG or any of its affiliates relating to any (1) investigation undertaken by or on behalf RCG as permitted by this Agreement and/or (ii) disclosure of information as permitted by this Agreement.

1.12 **Confidentiality.** The terms and conditions of this Agreement are proprietary and confidential unless required by law. Merchant shall not disclose this information to anyone other than its attorney, accountant, or similar service provider and then only to the extent such person uses the information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Action. A breach entitles RCG to damages and legal fees as well as temporary restraining order and preliminary injunction without bond.

1.13 **D/B/As.** Merchant hereby acknowledges and agrees that RCG may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between RCG and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## II. REPRESENTATIONS, WARRANTIES, AND COVENANTS

Merchant represents, warrants, and covenants that as of this date and during the term of this Agreement:

2.1 **Financial Condition and Financial Information.** Any bank statements and financial statements of Merchant that have been furnished to RCG, and future statements that will be furnished to RCG, fairly represent the financial condition of Merchant at such dates, and Merchant will notify RCG immediately if there are material adverse changes, financial or otherwise, in the condition or operation of the Merchant or any change in the ownership of the Merchant. RCG may request statements at any time during the performance of this Agreement and the Merchant shall provide them to RCG within five business days. Furthermore, Merchant represents that all documents, forms and recorded interviews provided to or with RCG are true, accurate and complete in all respects, and accurately reflect Merchant's financial condition and results of operations. Merchant further agrees to authorize the release of any past or future tax returns to Merchant.

2.2 **Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations, and licenses to own, operate and lease its properties and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engages and/or will engage hereafter.

2.3 **Authorization.** Merchant and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

2.4 **Insurance.** Merchant will maintain business-interruption insurance naming RCG as a loss payee and additional insured in amounts and against risks as are satisfactory to RCG and shall provide RCG with proof of such insurance upon request.

2.5 **Electronic Check Processing Agreement.** Merchant will not change its processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without RCG's prior written consent. Any such changes shall be a material breach of this Agreement.

2.6 **Change of Name and/or Location or the Sale and/or Closing of the Business.** Merchant will not conduct Merchant's business under any name other than as disclosed to RCG or change any of its places of business without prior written consent of RCG. Merchant will not sell, dispose, transfer or otherwise convey all or substantially all of its business or assets without (i) the express prior written consent of RCG, and (ii) the written agreement of any purchaser or transferee assuming all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to RCG. Except as disclosed to RCG in writing, Merchant has no current plans to close its business either temporarily, whether for renovations, repairs or any other purpose, or permanently. Merchant agrees that until RCG has received all of the Purchases Amount Merchant will not voluntarily close its business on a temporary basis for renovations, repairs or other purposes. This

provision, however, does not prohibit Merchant from closing its business temporarily if such closing is require to conduct renovations or repairs that are required by local ordinance or other legal order, such as from a health or fire inspector, or if otherwise forced to do so by circumstances outside of the control of Merchant. Prior to any such closure, Merchant will provide RCG ten days' notice to the extent practicable.

2.7 **Estoppel Certificate.** Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from RCG to Merchant, execute, acknowledge and deliver to RCG and/or to any other person, firm or corporation specified by RCG, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modification, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been paid.

2.8 **No Pending or Contemplated Bankruptcy.** As of the date Merchant executes this Agreement, Merchant is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant represents that it has not consulted with a bankruptcy attorney within six months prior to the date of this Agreement. Merchant further warrants that it does not anticipate filing a bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

2.9 **Working Capital Funding.** Merchant shall not further encumber the Receipts without (i) the written consent of RCG, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to RCG; or (e) Merchant takes any action, fails to take any action, or offers any incentive— economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to RCG at law, in equity or otherwise pursuant to this Agreement. **Protection 1.** The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately. **Protection 2.** RCG may enforce the provisions of the Personal Guarantee of Performance against the Guarantor(s). **Protection 3.** Merchant shall, upon whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales, with any party other than RCG. **Protection 4.** Merchant shall, upon execution of this Agreement, deliver to RCG an executed Confession of Judgment in favor of RCG in the amount of the Purchase Amount stated in the Agreement along with legal fees calculated at twenty five percent (25%) of the purchased price less any payments made and interest. Upon breach of any provision in paragraphs 1.10, 2.9, and/or 3.1, RCG may enter that Confession of Judgment as a judgment with the Clerk of the Court and execute thereon.

2.10 **Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of RCG.

2.11 **Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdiction in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and *not as a consumer for personal, family or household purposes.*

2.12 **No Violation of Prior Agreements.** Merchant's execution and performance of this Agreement will not conflict with any other agreement, obligation, promise, court order, administrative order or decree, law or regulation to which Merchant is subject, including any agreement that prohibits the sale or pledge of Merchant's future receipts.

### III. EVENTS OF DEFAULT AND REMEDIES

3.1 **Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material aspect when made; (c) the sending of notice of termination by Guarantor(s) prior to the Purchased Amount being paid to RCG; (d) Merchant shall transport, move, interrupt, suspend, dissolve or terminate its business; (e) Merchant shall transfer or sell all or substantially all of its assets; (f) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (g) Merchant shall use multiple depository accounts without the prior written consent of RCG; (h) Merchant shall change its depositing account without the prior written consent of RCG; (i) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; (j) Merchant shall default under any of the terms, covenants and conditions of either this Agreement or any other agreement with RCG; or (k) Merchant shall fail to deposit its Receipts into the Account.

3.2 **Remedies.** In case of any Event of Default occurs and to Section 4.4 hereof, RCG may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Personal Guarantee) or any other legal or equitable right or remedy. All rights, powers and remedies of RCG in connection with this Agreement may be exercised at any time by RCG after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

3.3 **Costs.** Merchant shall pay to RCG all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of RCG's remedies set forth herein, including but not limited to court costs and attorneys' fees.

3.4 **Required Notifications.** Merchant is required to give RCG written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give RCG seven (7) days written notice prior to closing of any sale or all or substantially all of the Merchant's assets or stocks.

### IV. MISCELLANEOUS

4.1 **Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by both parties.

4.2 **Assignment.** RCG may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part without prior notices to Merchant.

4.3 **Notices.** All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective ONLY upon receipt.

4.4 **Waiver Remedies.** No failure on the part of RCG to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5  **Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of RCG which consent may be withheld in RCG's sole discretion.

4.6  **Governing Law, Venue and Jurisdiction**. This Agreement shall be governed by and construed exclusively in accordance with the laws of the state of New York, without regards to any applicable principles of conflicts of law. If there is any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof or in any dispute arising among the parties, then such litigation shall only be instituted in any court sitting in New York State (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, and submit to the jurisdiction of the Acceptable Forums and waive any and application made by either party to transfer such proceeding to an Acceptable Forum.

4.7  **Survival of Representation, etc**. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

4.8  **Entire Agreement and Severability**. This Agreement embodies the entire agreement between Merchant and RCG and supersedes all prior agreements and understandings relating to the subject matter hereof. In case any of the provisions in this Agreement is found to be invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of any other provision contained herein shall not in any way be affected or impaired.

4.9  **JURY WAIVER**. THE PARTIES WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR ITS ENFORCEMENT, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. THE PARTIES ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY, AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.10  **CLASS ACTION WAIVER**. THE PARTIES WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

4.11  **Facsimile Acceptance**. Facsimile signature hereon, or other electronic means reflecting the party's signature hereto, shall be deemed acceptable for all purposes.

RCG must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

**Guarantor Acknowledgement.** Guarantor acknowledges that: (i) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**Joint and Several Liability.** The obligations hereunder of the persons or entities constituting Guarantor under this Agreement are joint and several.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

MERCHANT #1

By: STEVEN L. DOWN
_____
(Print Name and Title)
SS# 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

(Signature)                                    [ Sign Here ]
Drivers License Number _____

MERCHANT #2

By: _____
(Print Name and Title)
SS# _____

(Signature)                                    [ Sign Here ]
Drivers License Number _____

OWNER/GUARANTOR #1

STEVEN L. DOWN
_____
(Print Name)
SS# 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

(Signature)                                    [ Sign Here ]
Drivers License Number _____

OWNER/GUARANTOR #2

_____
(Print Name)
SS# _____

(Signature)                                    [ Sign Here ]
Drivers License Number _____

To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of above-signed Merchant and Owner(s) represent that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to repay this obligation and that the information provided herein and in all of RCG documents, forms and recorded interviews, is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and RCG, and RCG shall be entitled to all remedies available under law, equity and/or this Agreement. RCG may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant via Processor and/or Operator to RCG. An investigative or consumer report may be made in connection with the Agreement. Merchant and each of the above-signed Owners authorize RCG, its agents and representatives and any credit reporting agency engaged by RCG, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as Merchant and/or Owner(s) continue to have any obligation owed to RCG as a consequence of this Agreement or for RCG's ability to determine Merchant's eligibility to enter into any future agreement with Company. ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD, INTENTIONAL MISREPRESENTATION AND/OR UNJUST ENRICHMENT IN WHICH EVENT PCRV WILL BE ENTITLED TO THE RECOVERY OF NOT ONLY ITS LOSSES BUT ALSO PUNITIVE DAMAGES AND ALL OF ITS COSTS AND EXPENSES AND ITS REASONABLE LEGAL FEES.

## ADDENDUM TO SECURED PURCHASE AND SALE OF FUTURE RECEIVABLES AGREEMENT

This Addendum is entered into on the ___ day of _____, 20__ by and between Richmond Capital Group, LLC ("RCG") and _____ ("Seller").

I.      Should any of the terms of this Addendum conflict with the terms of the Secured Purchase and Sale of Future Receivables Agreement dated _____ (the "Agreement"), then the terms of this Addendum shall govern and be controlling. Capitalized terms used herein but otherwise not defined, shall have the same definition as in the Agreement:

   a.   By signing below, the Seller hereby requests and acknowledges that the Specified Percentage shall be revised to $_____ per business day (the "Estimated Daily Payment") which the parties agree is a good-faith approximation of the Specified Percentage, based on the Seller's receipts due to RCG pursuant to the Agreement.

   b.   The Estimated Daily Payment is to be drawn via ACH payment, from the following bank account:

         i.     Account Number: _____
         ii.    Routing Number: _____
         iii.   Account Name: _____
         iv:    Bank Name: _____

   c.   At the Seller's option, within five (5) business days following the end of the calendar month, the Seller may request a reconciliation to take place, whereby the parties may ensure that the cumulative amount remitted for the subject month via the Estimated Daily Payment is equal to the amount of the Specified Percentage. However, in order to effectuate this reconciliation upon submitting the request for reconciliation to RCG – but in no event later than five (5) business days following the end of the calendar month – the Seller must produce any and all evidence and documentation requested by RCG in its sole and absolute discretion, necessary to identify the appropriate amount of the Specified Percentage. The foregoing includes without limitation, any and all bank statements, merchant processing statements, or any additional documentation necessary to ascertain the amounts of the Specified Percentage, including login to the Seller's bank account(s).

IN WITNESS WHEREOF, the parties have executed this Addendum to the Agreement as of the date first set above.

         For the Seller #1:
         By:  STEVEN L. DOWN
         Signature: _____

         For the Seller #2:
         By: _____
         Signature: _____

*** This authorization is to remain in full force and effect until Richmond Capital Group, LLC receives written notification from the Seller of its termination in such time and in such manner to afford Richmond Capital Group, LLC a reasonable opportunity to act on it. Revocation of this authorization prior to remittance of the balance owed pursuant to the Agreement shall constitute a breach thereunder.

Richmond Capital Group, LLC | 111 John Street, Ste 1210 | New York | NY 10038| Ph. (855) 662-9303 Fax (855) 204-0222

## Appendix A: The Fee Structure:

A. **Origination Fee**- $ 14,999.00 to cover Underwriting and related expenses.

B. **ACH Program Fee**- $ 14,999.00 (or 12% of the funded amount, depending on size of advance) ACH's are labor intensive and are not an automated process, requiring us to charge this fee to cover costs.

C. **NSF Fee Standard**- $50.00 (each) up to THREE TIMES ONLY before a default is declared.

D. **Rejected ACH**- $100.00 – When Merchant directs bank to reject our ACH Debit.

E. **Bank Change Fee**- $500.00- When Merchant requires a change of Bank Account to be debited, requiring us to adjust our system.

F. **Blocked ACH Payment**- $5,000.00—This fee is applied when Merchant directs the bank to BLOCK our ACH Debits. Blocking ACH Debits will place Merchant's account in default.

G. **Default Fee**- a Default Fee of $2500.00 shall be applied to Merchant's account in the event that Merchant defaults under the terms of the Merchant Agreement. *See* Merchant Agreement at p.2, ¶3.1.

H. **Working Capital Funding**- A fee of $5,000.00 shall be applied every time Merchant enters into any arrangement, agreement, or commitment that relates to or involves the Receipts, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales with any party other than RCG. *See* Merchant Agreement at p.2, ¶2.10.

I. **Account Management Fee**- At the end of each month, Merchant will pay to RCG an Account Management Fee. This fee will not be applied towards the reduction of the Purchased Amount. This monthly fee will equal the average of all the payments received as a "Specified Percentage" of the Merchants settlement amount for that Month.

J. **Miscellaneous Service Fee**- Merchant shall pay certain fees for services related to the origination and maintenance of Accounts. Each Merchant shall receive their funding electronically to their designated bank account and will be charged $30.00 for a Fed Wire or 0.00 for a bank ACH. The current charge for the underwriting and origination of each Merchant Agreement is $_____ paid from the funded amount. Merchant will be charged $25.00 for every additional change of their operating bank account once they are active with RCG. Additional copies of prior monthly statements will incur a fee of $10.00.

Merchant 1 (sign) _____     Print: STEVEN L. DOWN _____

Merchant 2 (sign) _____     Print: _____



# AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)

This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Merchant Agreement. Seller should keep this important legal document for Seller's records.

DISBURSMENT OF ADVANCE PROCEEDS. By signing below, Seller authorizes Buyer to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating an ACH credit to the checking account indicated below (or a substitute checking account Seller later identifies and is acceptable to Buyer) (hereinafter referred to as the "Designated Checking Account") This authorization is to remain in full force and effect until Buyer has received written notification from Seller of its termination in such time and in such manner as to afford Buyer and Seller's depository bank a reasonable opportunity to act on it.

BUSINESS PURPOSE ACCOUNT. By signing below, Seller attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes.

MISCELLANEOUS. Buyer is not responsible for any fees charged by Seller's bank as the result of credits or debits initiated under this agreement. The origination of ACH transactions to Seller's account must comply with the provisions of U.S. law.

I, (We) THE FALLS EVENT CENTER, LLC / EVEN STEVENS UTAH, LLC Hereby Authorize, Richmond Capital Group, LLC (Hereinafter known as "RCG") to Electronically (ACH) debit the Bank Account Below, of which I am a signer:

Bank Name: USBANK                        Branch: _____

ABA: Routing: X X X X 16473 DDA: Account: X X X 12150 _____ For the

amount of: $ 7,250.00 _____ (Or) Percentage of each Banking Deposit: % _____

On the Following Days: MONDAY - FRIDAY

This authorization is to remain in full force and effect until COMPANY has received written notification from me at least 5 banking days prior of its termination to afford COMPANY a reasonable opportunity to act on it.

Signer :(Print Name /Title) STEVEN L. DOWN Date: 05/01/2018

X _____



# AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)

This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Merchant Agreement. Seller should keep this important legal document for Seller's records.

DISBURSEMENT OF ADVANCE PROCEEDS. By signing below, Seller authorizes Buyer to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating an ACH credit to the checking account indicated below (or a substitute checking account Seller later identifies and is acceptable to Buyer) (hereinafter referred to as the "Designated Checking Account") This authorization is to remain in full force and effect until Buyer has received written notification from Seller of its termination in such time and in such manner as to afford Buyer and Seller's depository bank a reasonable opportunity to act on it.

BUSINESS PURPOSE ACCOUNT. By signing below, Seller attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes.

MISCELLANEOUS. Buyer is not responsible for any fees charged by Seller's bank as the result of credits or debits initiated under this agreement. The origination of ACH transactions to Seller's account must comply with the provisions of U.S. law.

I, (We) THE FALLS EVENT CENTER, LLC. / EVEN STEVENS UTAH, LLC. Hereby Authorize, Richmond Capital Group, LLC (Hereinafter known as "RCG") to Electronically (ACH) debit the Bank Account Below, of which I am a signer:

Bank Name: Wells Fargo Branch: _____

ABA: Routing: X X X  2971  DDA: Account: X X X X X 8909 For the

amount of: $ 7,250.00 _____ (Or) Percentage of each Banking Deposit: % _____

On the Following Days: MONDAY - FRIDAY

This authorization is to remain in full force and effect until COMPANY has received written notification from me at least 5 banking days prior of its termination to afford COMPANY a reasonable opportunity to act on it.

Signer :(Print Name /Title) STEVEN L. DOWN Date: 05/01/2018

X _____



**RCG**
RICHMOND CAPITAL GROUP

Balance Transfer Form
THE FALLS EVENT CENTER, LLC ; EVEN STEVENS UTAH, LLC,

9067 S 1300 W STE 301
WEST JORDAN     UT 84088

MID:

Richmond Capital Group, LLC.
125 Maiden Lane Suite 501
New York, NY 10038

Dear RCG,

STEVEN L. DOWN _____ agrees to transfer the retaining RTR

balance due in the amount of $ 83,800.00 on the RCG contract # 002 _____ dated and signed on

_____

The RTR Balance has been added to the new "RCG" agreement dated and signed on 01/01/1970 _____

Thank You,

X _____

X _____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF

| | |
|---|---|
| RICHMOND CAPITAL GROUP, LLC. | Index No. |
| Plaintiff, | AFFIDAVIT OF CONFESSION OF JUDGMENT |
| -against- | |
| THE FALLS EVENT CENTER, LLC. / EVEN STEVENS UTAH, LLC. and STEVEN L. DOWN, | |
| Defendants. | |

STATE OF ⎧ Utah ⎫ ) ss.:
COUNTY OF ⎧ Salt Lake ⎫ )



AISLINN ANN GRENNY
NOTARY PUBLIC · STATE OF UTAH
COMMISSION# 687030
COMM. EXP. 02-05-2020

STEVEN L. DOWN, being duly sworn, deposes and says:

1.    I am a principal, owner, and an officer of THE FALLS EVENT CENTER, LLC. / EVEN STEVENS UTAH, LLC.("Merchant Defendant"), a Corporation located at 9067 S 1300 W STE 301, WEST JORDAN, UT 84088, in the County of SALT LAKE, and as such, I have the authority to act on behalf of Merchant Defendant.

2.    I reside at 994 NEW HOPE DR., DRAPER, UT 84020, in the County of SALT LAKE.

3.    I, individually, and on behalf of Merchant Defendant consent to the jurisdiction of this Court.

4.    Merchant Defendant hereby confesses judgment and authorizes entry of judgment in favor of Plaintiff and against Defendants in the Federal District Court for the Southern District of New York, Supreme Court of the State of New York, County of Richmond, Supreme Court of the State of New York, County of Orange, Supreme Court of the State of New York, County of Westchester, Supreme Court of the State of New York, County of Kings, Supreme Court of the State of New York, County of Erie, Supreme Court of the State of New York, County of Ontario, and/or Supreme Court of the State of New York, County of Richmond, in the sum of $725,000.00 less any payments timely

made pursuant to the secured Merchant Agreement dated 05/01/2018, plus legal fees to Plaintiff calculated at twenty five percent (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 9% per annum from 05/01/2018, or the highest amount allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Affidavit of Confession of Judgment.

5.      In addition, I hereby confess judgment, individually and personally, jointly and severally, and authorize entry of judgment in favor of Plaintiff and against myself in the Federal District Court for the Southern District of New York, Supreme Court of the State of New York, County of Richmond, Supreme Court of the State of New York, County of Orange, Supreme Court of the State of New York, County of Westchester, Supreme Court of the State of New York, County of Kings, Supreme Court of the State of New York, County of Erie, Supreme Court of the State of New York, County of Ontario, and/or Supreme Court of the State of New York, County of Richmond, against me personally in the sum of $725,000.00 less any payments timely made pursuant to the Merchant Agreement dated 05/01/2018, plus legal fees to Plaintiff calculated at twenty five percent (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 9% per annum from 05/01/2018, or the highest rate allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Confession of Judgment.

6.      This confession of judgment is for a debt due to Plaintiff arising from Defendants' failure to pay to Plaintiff, Merchant Defendant's accounts-receivable, which were purchased by Plaintiff pursuant to the secured Merchant Agreement dated 05/01/2018, and for Defendants' breach of the secured Merchant Agreement, plus agreed-upon interest, reasonable attorneys' fees, costs and disbursements, as agreed-upon by Merchant Defendant and myself, under the secured Merchant Agreement, dated

2

05/01/2018, of which supporting documents include a Personal Guarantee and a UCC-1 financing statement(s).

7.    Merchant Defendant and I hereby agree that the execution and delivery of this Affidavit of Confession of Judgment and any entry of judgment thereon shall be without prejudice to any and all rights of Plaintiff, who reserves all of its rights and remedies against Defendants.

8.    If for any reason entry of judgment in the above specified amount or execution on the same is outside the jurisdiction of this Court, Merchant Defendant and I hereby consent to the personal jurisdiction, entry of judgment, and execution thereon in any State or Federal Court of the United States of America.

9.    I have been authorized by Merchant Defendant to sign this Affidavit of Confession of Judgment on this 2ⁿᵈ day of May, 2018.

LINN ANN GRENNY
NOTARY PUBLIC•STATE OF UTAH
COMMISSION# 687030
COMM. EXP. 02-05-2020

By: _____
STEVEN L. DOWN, individually, and on behalf of THE FALLS EVENT CENTER, LLC.

Sworn to before me this
2ⁿᵈ Day of May, 2018.

_____
Notary Public

3



Dear Merchant,

Thank you for accepting an offer from Richmond Capital Group LLC. ("RCG") We look forward to being your funding partner for as long as you need.

Please note that the way your advance is set up RCG needs viewing access to your bank account each business day in order to calculate the amount of your daily payment. Please be assured that we will carefully safeguard your confidential information and only essential personnel will have access to it.

Please fill out the form below with the access information for your account.

Bank portal website: _____

Username: _____

Password: _____

Security Question/Answer 1: _____

Security Question/Answer 2: _____

Security Question/Answer 3: _____

Any other information necessary to access your account: _____

Please note in the event we cannot access your account we will take an estimated payment plus a $39 fee for each day we don't have access. If you have any questions please feel free to contact our cash management department directly at (855) 662-9303

Richmond Capital Group, LLC |111 John Street, Ste 1210 | New York |NY 10038| Ph. (855) 662-9303 Fax (855) 204-0222

# EXHIBIT E

# RICHMOND FUNDING

30 Broad Street, 14th Floor, Suite 14108, New York, New York 10004

## SECURED MERCHANT AGREEMENT

This agreement, dated 5/01/2018, between WORLD GLOBAL CAPITAL, LLC D/B/A RICHMOND FUNDING ("RMF") and the merchant listed below (the "Merchant"):

Business Legal Name: THE FALLS EVENT CENTER LLC
D/B/A: THE FALLS EVENT CENTER
Type of Entity: LLC                                    EIN #: 90-1023989
Physical Address: 9067 S 1300 W STE 301, WEST JORDAN, UT 84088
Mailing Address: 9067 S 1300 W STE 301, WEST JORDAN, UT 84088

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to RMF (making RMF the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, the Specified Percentage (defined below) of Merchant's future accounts, contract rights and other obligations arising from, or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Receipts") defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business, for the payment of Merchant's sale of goods or services until the amount specified below (the "Purchased Amount") has been delivered by Merchant to RMF (the "Agreement" or "Merchant Agreement").

The Purchased Amount shall be paid to RMF by Merchant's irrevocably authorizing only ONE depositing account acceptable to RMF (the "Account") to remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each transaction, until such time as RMF receives payment in full of the Purchased Amount. Merchant hereby authorizes RMF to ACH Debit the specified remittances from the Merchant's bank account on a daily basis and will provide RMF with all required access codes, and monthly bank statements. Merchant understands that it is responsible for ensuring that the specified percentage to be debited by RMF remains in the account and will be held responsible for any fees incurred by RMF resulting from a rejected ACH attempt or an event of default. (See Appendix A). RMF is not responsible for any overdrafts or rejected transactions that may result from RMF's ACH debiting the specified amounts under the terms of this agreement. RMF may, upon Merchant's request, adjust the amount of any payment due under this Agreement at RMF's sole discretion and as it deems appropriate. Notwithstanding anything to the contrary in this Agreement or any other agreement between RMF and Merchant, upon the violation of any provision contained the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this agreement is annexed hereto in Appendix A.

| PURCHASE PRICE: | SPECIFIED PERCENTAGE: | PURCHASED AMOUNT: |
|---|---|---|
| $300,000.00 | 15% | $434,700.00 |

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "SECURITY AGREEMENT AND GUARANTY" AND "ADMINISTRATIVE FORM" HEREOF ARE HEREBY INCORPORATED HEREIN AND MADE A PART OF THIS AGREEMENT.

FOR THE MERCHANT #1
By:
Name: STEVEN LANE DOWN
Title: OWNER
SSN: XXX-XX-5525

OWNER/GUARANTOR #1
By:
Name: STEVEN LANE DOWN
SSN: XXX-XX-5525

FOR THE MERCHANT #2
By:
Name: N/A
Title:
SSN:

OWNER/GUARANTOR #2
By:
Name: N/A
SSN:

To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of above-signed Merchant and Owner(s) represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to pay this obligation and that the information provided herein and in all of RMF documents, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and RMF, and RMF shall be entitled to all remedies available under law. RMF may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant via Processor and/or Operator to RMF. An investigative report may be made in connection with the Agreement. Merchant and each of the above-signed Owners authorizes RMF, its agents and representatives and any credit-reporting agency engaged by RMF, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull a credit report at any time now or for so long as Merchant and/or Owner(s) continue to have any obligation owed to RMF as a consequence of this Agreement or for RMF's ability to determine Merchant's eligibility to enter into any future agreement with Company.

ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.

1347678

RMF does not have to notify Guarantor(s) of any of the following events and Guarantor(s) will not be released from its/their obligations under this Agreement if it is not notified of: (i) Merchant's failure to timely perform any obligation under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) RMF's acceptance of this Agreement ; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to RMF. In addition, RMF may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement : (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to RMF; (ii) release Merchant from its obligations to RMF; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Merchant Amount plus any accrued but unpaid interest and Merchant's other obligations to RMF under the Merchant Agreement and this Agreement are satisfied in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that RMF must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

**IN WITNESS WHEREOF, the parties have executed this Security Agreement and Guaranty as of the date first written above:**

FOR THE MERCHANT #1
By:
Name: STEVEN LANE DOWN
Title: OWNER
SSN:  X X X 5525

OWNER/GUARANTOR #1
By:
Name: STEVEN LANE DOWN
SSN: X X X -5525

FOR THE MERCHANT #2
By:

Name: N/A
Title:
SSN:

OWNER/GUARANTOR #2
By:

Name: N/A
SSN:

**AGREED AND ACCEPTED:**

RICHMOND FUNDING
By:

Name:
Title:

Rev. 9.6.17

## APPENDIX A – FEE STRUCTURE

A. Origination Fee: $295.00 (to cover underwriting and related expenses).

B. ACH Program Fee: $395.00 or up to 10% of the funded amount (the ACH program is labor intensive and is not an automated process, requiring us to charge this fee to cover related costs).

C. Bank Fee: Minimum bank fee of $195.00 or up to 10% of the funded amount.

D. NSF Fee: $35.00 each occurrence.

E. Rejected ACH: $100.00 (if a merchant directs the bank to reject our debit ACH).

F. Bank Change Fee: $50.00 (If a merchant requires a change of account to be debited requiring us to adjust our system).

G. Unauthorized Account Fee: $5,000.00 (if a merchant blocks RMF's ACH debit of the Account, bounces more than 4 debits of the Account, or simultaneously uses multiple bank accounts or credit card processors to process its receipts).

H. Default Fee: $2,500.00 (if a merchant changes bank accounts or switches to another credit-card processor without RMF's consent, or commits another default pursuant to the Agreement).

I. Miscellaneous Service Fees: Merchant shall pay certain fees for services related to the origination and maintenance of accounts. Each Merchant shall receive their funding electronically to their designated bank account and will be charged $30.00 for a Fed Wire or $0.00 for a bank ACH.

J. Risk Assessment Fee: $249.00

K. UCC Fee: $195.00

FOR THE MERCHANT #1
By:
⇨

Name: STEVEN LANE DOWN
Title: OWNER
SSN: XXX 1-5525

FOR THE MERCHANT #2
By:

Name: N/A
Title:
SSN:

# ACH Authorization Form

All information on this form is required unless otherwise noted.

### Business Authorized to Debit/Credit Account

Authorized Business Name: RICHMOND FUNDING

Authorized Business Phone Number: 1-800-955-2411

Authorized Business Address: 30 Broad Street, 14th Floor, Suite 14108, New York, NY 10004

### Account Holder Information:

Account Holder Name: STEVEN LANE DOWN

Account Holder DBA Name: THE FALLS EVENT CENTER

Account Holder Address: 9067 S 1300 W STE 301, WEST JORDAN, UT 84088

### Account Holder's Bank Information:

Account Holder's Bank Name: _____

Bank Routing Number: _____

Bank Account Number: _____

\* Please verify and complete any missing information.

### Transaction Information:

Good Purchased/Services Rendered: PROFESSIONAL SERVICE FEE

Amount of Transaction: $17,999.00

Effective Date: 5/01/2018

Number of transactions: __1__  or Open-Ended ☐

One time ■   Recurring ☐

### Authorization:

In exchange for products and/or services listed above, the undersigned hereby authorizes:

**RICHMOND FUNDING**
to electronically draft via the Automated Clearing House system the amounts indicated above from the account identified above. This authority will continue until withdrawn in writing by the undersigned account holder. The Undersigned hereby certifies that they are duly authorized to execute this form on behalf of the above listed account holder. I acknowledge that I am subject to a $25 reject fee if items are returned for insufficient funds.

_____
Signature of Account Holder

STEVEN LANE DOWN
Name of Account Holder

# ADDENDUM TO SECURED MERCHANT AGREEMENT

This Addendum is entered into on 5/01/2018 by and between RICHMOND FUNDING ("RMF") and THE FALLS EVENT CENTER LLC (the "Merchant").

1.        Should any of the terms of this Addendum conflict with the terms of the agreement between RMF and the Merchant dated 5/01/2018 (the "Agreement"), then the terms of this Addendum shall govern and be controlling. Capitalized terms used herein but otherwise not defined, shall have the same definition as in the Agreement:

a.        By signing below, the Merchant hereby requests and acknowledges that the Specified Percentage shall be revised to $4,347.00 per business Day (the "Daily Payment") which the parties agree is a good-faith approximation of the Specified Percentage, based on the Merchant's prior receipts due to RMF pursuant the Agreement.

b.        The Daily Payment is to be drawn via ACH payment, from the following bank account:



*Please verify and complete any missing information.

   i.   Account Number: _____

   ii.  Routing Number: _____

   iii. Account Name:   THE FALLS EVENT CENTER LLC

   iv.  Bank Name: _____

c.        At the Merchant's option, within five (5) business following the end of a calendar month, the Merchant may request a reconciliation to take place, whereby RMF shall ensure that the cumulative amount remitted for the subject month via the Daily Payment is equal to the amount of the Specified Percentage (the "Reconciliation"). However, in order to effectuate the Reconciliation, upon submitting the request for the Reconciliation to RMF – but in no event later than five (5) business days following the end of the calendar month – the Merchant must produce any and all evidence and documentation requested by RMF in its sole and absolute discretion, necessary to identify the appropriate amount of – and effectuate - the Specified Percentage. The foregoing includes without limitation, any and all bank statements, merchant statements or other documents necessary to ascertain the amount of the Specified Percentage, including login to the Merchant's bank account(s).

d.        The Merchant specifically acknowledges that the Daily Payment in lieu of the Specified Percentage is being provided to the Merchant as a courtesy, and if the Merchant fails to furnish the requested documentation within five (5) business days following the end of a calendar month, then RMF shall not be obligated to effectuate the Reconciliation discussed in Section (c) herein. Additionally, as the Daily Payment is being provided to Merchant as a courtesy, the Merchant may elect, upon timely notice as outlined above to RMF , to remit receipts via Specified Percentage instead of the Daily Payment.

IN WITNESS WHEREOF, the parties have executed this Addendum to the Agreement as of the date first set forth above.

FOR THE MERCHANT #1:                    RICHMOND FUNDING

Signature: _____            Signature: _____

By: STEVEN LANE DOWN                  By: _____

FOR THE MERCHANT #2:

Signature: _____

By:

** This authorization is to remain in full force and effect until RMF receives written notification from the Merchant of its termination in such time and in such manner to afford RMF a reasonable opportunity to act on it. Revocation of this authorization prior to remittance of the balance owed pursuant to the Agreement shall constitute a breach thereunder.

Rev. 9.6.17

## RICHMOND FUNDING - SECURITY AGREEMENT AND GUARANTY

Business Legal Name: THE FALLS EVENT CENTER LLC
D/B/A: THE FALLS EVENT CENTER
Type of Entity: LLC                                    EIN #: 90-1023989
Physical Address: 9067 S 1300 W STE 301, WEST JORDAN, UT 84088
Mailing Address: 9067 S 1300 W STE 301, WEST JORDAN, UT 84088

### I.    SECURITY AGREEMENT

Security Interest. To secure Merchant's payment and performance obligations to RMF under the Merchant Agreement, Merchant hereby grants to RMF a security interest in all assets now owned, or hereafter acquired, including without limitation: (a) all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant; and (b) all proceeds, as that term is defined by Article 9 of the UCC ("a" and "b" collectively, the "Collateral").

Cross-Collateral. To secure Guarantor's payment and performance obligations to RMF under this Security Agreement and Guaranty (the "Agreement"), Guarantor hereby grants RMF an additional security interest in

_____

the ("Additional Collateral"). Guarantor(s) understands that RMF will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement. Merchant and Guarantor each acknowledge and agree that any security interest granted to RMF under an agreement between Merchant or Guarantor and RMF (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement.

Merchant and Guarantor each agrees to execute any documents or take any action in connection with this Agreement as RMF deems necessary to perfect or maintain RMF's first priority security interest in the Collateral, the Additional Collateral and the Cross-Collateral, including the execution of any account control agreements. Merchant and Guarantor each hereby authorizes RMF to file any financing statements deemed necessary by RMF to perfect or maintain RMF's security interest, which financing statement may contain notification that Merchant and Guarantor have granted a negative pledge to RMF with respect to the Collateral, the Additional Collateral and the Cross- Collateral, and that any subsequent lienor may be tortiously interfering with RMF's rights. Merchant and Guarantor shall be liable for and RMF may charge and collect all costs and expenses, including but not limited to attorney's fees, which may be incurred by RMF in protecting, preserving and enforcing RMF's security interest and rights. Merchant further acknowledges that RMF may use another legal name and/or D/B/A when designating the Secured Party, when RMF files the above-referenced financing statement(s).

Negative Pledge. Merchant and Guarantor(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral, the Additional Collateral or the Cross-Collateral, as applicable.

Consent to Enter Premises and Assign Lease. RMF shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, RMF may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that RMF may enter into an agreement with Merchant's landlord giving RMF the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and (b) to assign Merchant's lease to another qualified Merchant capable of operating a business comparable to Merchant's at such premises.

Remedies. Upon any Event of Default, RMF may (i) pursue any remedy available at law (including those available under the provisions of the UCC), (ii) or in equity to collect, enforce, or satisfy any obligations then owing, whether by acceleration or otherwise, and (iii) exercise its rights under this Agreement.

### II.    GUARANTY

Personal Guaranty of Performance. The undersigned Guarantor(s) hereby guarantees to RMF, Merchant's performance of all of the representations, warranties, covenants made by Merchant in this Security Agreement and Guarantee, and the Merchant Agreement, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due (i) at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement, and (ii) if any representation, warranty or covenant made by Merchant in this Agreement, or the Merchant Agreement, are false and/or misleading, in RMF's sole and absolute discretion.

Guarantor Waivers. In the event that Merchant fails to deliver the receivables purchased hereunder or perform any obligation when due under the Merchant Agreement, RMF may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral or Cross-Collateral RMF may hold pursuant to this Agreement or any other guaranty.

Rev. 9.6.17

Owner 1 Initials: _____

Owner 2 Initials: _____

MERCHANT AGREEMENT TERMS AND CONDITIONS

# I. TERMS OF ENROLLMENT IN PROGRAM

1.1. **Merchant Deposit Agreement**. Merchant shall execute an agreement (the "Merchant Deposit Agreement") acceptable to RMF, and appoint a Bank acceptable to RMF, to obtain electronic fund transfer services and/or "ACH" payments. Merchant shall provide RMF and/or its authorized agent with all of the information, authorizations and passwords necessary to verify Merchant's receivables, receipts and deposits into the account. Merchant shall authorize RMF and/or it's agent to deduct the amounts owed to RMF for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to RMF by permitting RMF to withdraw the specified percentages by ACH debiting of the account. The authorization shall be irrevocable absent RMF's written consent.

1.2 **Future Purchases**. RMF reserves the right to rescind the offer to make any purchase payments hereunder, in its sole discretion.

1.3 **Financial Condition**. Merchant and Guarantor(s) authorize RMF and its agents to investigate their financial responsibility and history, and will provide to RMF any bank or financial statements, tax returns, etc., as RMF deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. RMF is authorized to update such information and financial profiles from time to time as it deems appropriate.

1.4 **Transactional History**. Merchant authorizes their bank to provide RMF with Merchant's banking and/or credit-card processing history to determine qualification or continuation in this program.

1.5 **Indemnification**. Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by RMF for monies owed to RMF from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by RMF.

1.6 **No Liability**. In no event will RMF be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental,

indirect or con sequential damages, each of which is waived by Merchant and Guarantor(s).

1.7 **Reliance on Terms**. Section 1.1, 1.9, 1.10 and 2.5 of this Agreement are agreed to for the benefit of Merchant, RMF and Processor, and notwithstanding the fact that Processor is not a party of this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

1.8 **Sale of Receipts**. Merchant and RMF agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from RMF to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement equals the fair market value of such Receipts. RMF has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to RMF in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services and the payment therefore by Merchant's customers in the manner provided in Section 1.1. In no event shall the aggregate of all amounts be deemed as interest hereunder and charged or collected hereunder exceed the highest rate permissible at law. In the event that a court determines that RMF has charged or received interest hereunder in excess of the highest rate allowed by law, then the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and RMF shall promptly refund to Merchant any interest received by RMF in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that RMF not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law.

1.9 **Power of Attorney**. Merchant irrevocably appoints RMF as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to RMF from Processor, or in the case of a violation by Merchant of Section 1.10 or the occurrence of an Event of Default under Section III hereof, from Merchant, under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments,

documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to RMF; and (v) to file any claims or take any action or institute any proceeding which RMF may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount.

1.10 **Protections against Default**. The following Protections 1 through 8 may be invoked by RMF, immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the RMF electronic check processor; (b) Merchant changes its arrangements with Processor in any way that is adverse to RMF; (c) Merchant changes its electronic check processor through which the Receipts are settled from Process or to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check transactions to another processor; (d) Merchant interrupts the operation of this business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (i) the express prior written consent of RMF, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to RMF; or (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to RMF at law, in equity or otherwise pursuant to this Agreement. **Protection 1:** The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately. **Protection 2.** RMF may enforce the provisions of the Personal Guarantee of Performance against the

Rev. 9.6.17

Owner 1 Initials: _____

Owner 2 Initials: _____

Guarantor(s). Protection 3. Merchant shall, upon execution of this Agreement, deliver to RMF an executed confession of judgment in favor of RMF in the amount of the Purchase Amount stated in the Agreement, plus attorneys' fees calculated at twenty-five percent (25%) of the balance due hereunder at the time of breach. Upon breach of any provision in this paragraph 1.10, RMF may enter that confession of judgment as a judgment with the Clerk of the Court, without notice, and execute thereon. Protection 4. RMF may enforce its security interest in the Collateral identified in the Security Agreement herein. Protection 5. RMF may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, in which RMF shall recover judgment against Merchant, Merchant shall be liable for all of RMF's costs of lawsuit, including but not limited to all reasonable attorneys' fees and court costs (in addition to any remedies pursuant to Protection 3 of this section 1.10). Protection 6. Merchant shall upon execution of this Agreement, delivery to RMF an executed assignment of lease of Merchant's premises in favor of RMF. Upon breach of any provision in this paragraph 1.10, RMF may exercise its rights under such assignment. Protection 7. RMF may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise, in an amount consistent with the Specified Percentage. Protection 8. RMF shall have the right, without waiving any of its rights and remedies and without notice to Merchant and/or Guarantor(s), to notify Merchant's credit card processor of the sale of Receipts hereunder and to direct such credit card processor to make payment to RMF of all or any portion of the amounts received by such credit card processor on behalf of Merchant. Merchant hereby grants to RMF an irrevocable power - of-attorney, which power-of-attorney shall be coupled with an interest, and hereby appoints RMF or any of RMF representatives as Merchant's attorney-in -fact, to take any and all action necessary to direct such new or additional credit card processor to make payment to RMF as contemplated by this Section.

1.11   Protection   of   Information. Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respect of himself or herself personally, authorizes RMF to disclose information concerning Merchant's and each

Owner's and/or Guarantor(s)'s credit standing and business conduct only, to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant, Guarantor(s) and Owner(s) hereby waives to the maximum extent permitted by law any claim for damages against RMF or any of its affiliates relating to any (i) investigation undertaken by or on behalf of RMF as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

1.12   Confidentiality. Merchant understands and agrees that the terms and conditions of the products and services offered by RMF, including this Agreement and any other RMF documentation s (collectively, "Confidential Information") are proprietary and confidential information of RMF. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of RMF to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Section 1.12.

1.13   D/B/A's. Merchant hereby acknowledges and agrees that RMF may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between RMF and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## H. REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents warrants and covenants that as of this date and during the term of this Agreement:

2.1   **Financial Condition and Financial Information.** Its bank and financial statements, copies of which have been furnished to RMF, and future statements which will be furnished hereafter at the discretion of RMF, fairly represent the financial condition of Merchant at such dates, and prior to execution of the Agreement, there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise RMF of any material adverse change in its financial condition, operation or ownership. RMF may request statements at any time during the performance of this Agreement and the Merchant shall

provide them to RMF within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

2.2   Governmental Approvals. Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

2.3   Authorization. Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

2.4   Insurance. Merchant will maintain business-interruption insurance naming RMF as loss payee and additional insured in amounts and against risks as are satisfactory to RMF and shall provide RMF proof of such insurance upon request.

2.5   Electronic   Check   Processing   Agreement. Merchant will not change its processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without RMF's prior written consent. Any such change shall be a material breach of this Agreement.

2.6   Change of Name or Location. Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and RMF or change any of its places of business.

2.7   Estoppel Certificate. Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from RMF to Merchant, execute, acknowledge and deliver to RMF and/or to any other person, person firm or corporation specified by RMF, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modification s) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

2.8   Working   Capital   Funding. Merchant shall not further encumber the Receipts, without (i) written consent of RMF, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to RMF; or (iii) Merchant takes any action, fails to take any action, or offers any incentive— economic or otherwise—the result of which will be to induce any customer



Owner 1 Initials: _____

Owner 2 Initials: _____

or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to RMF at law, in equity or otherwise pursuant to this Agreement. Protection 1: The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately. Protection 2. RMF may enforce the provisions of the Personal Guarantee of Performance against the Guarantor(s). Protection 3. Merchant shall, upon whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales, with any party other than RMF.

**2.9** **Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of RMF.

**2.10 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**2.11 Defaults under Other Contracts.** Merchant's execution of and/or performance under this Agreement will not cause or create an event of default by Merchant under any contract with another person or entity.

**III. EVENTS OF DEFAULT AND REMEDIES**

**3.1** **Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; (c) the sending of notice of termination by Guarantor(s) prior to the Purchased Amount being paid to RMF; (d) Except for: (i) as a result of an Act of God, (ii) filing for protection under applicable bankruptcy law, (iii) an assignment for the benefit of the creditors, and (iv) similar protection; (e) Merchant shall transfer or sell all or

substantially all of its assets; (f) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (g) Merchant shall use multiple depository accounts without the prior written consent of RMF; (h) Merchant shall change its depositing account without the prior written consent of RMF; (i) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; (j) Merchant shall default under any of the terms, covenants and conditions of any other agreement with RMF; or (k) Merchant shall fail to deposit its Receipts into the Account.

**3.2** **Remedies.** In case any Event of Default occurs and is not waived pursuant to Section 4.4. hereof, RMF may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Personal Guarantee) or any other legal or equitable right or remedy. All rights, powers and remedies of RMF in connection with this Agreement may be exercised at any time by RMF after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.3** **Costs.** Merchant shall pay to RMF all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of RMF's remedies set forth herein, including but not limited to court costs and attorneys' fees calculated at twenty-five percent (25%) of the balance at the time of default as provided for in section 1.10 herein.

**3.4** **Required Notifications.** Merchant is required to give RMF written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give RMF seven (7) days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

**IV. MISCELLANEOUS**

**4.1** **Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by both parties.

**4.2** **Assignment.** RMF may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties

hereunder, either in whole or in part without prior notice to the Merchant.

**4.3** **Notices.** All notices, requests, consent, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective only upon receipt.

**4.4** **Waiver Remedies.** No failure on the part of RMF to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**4.5** **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of RMF which consent may be withheld in RMF's sole discretion.

**4.6** **Governing Law, Venue and Jurisdiction.** This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of New York, without regards to any applicable principles of conflicts of law. If there is any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, then such litigation shall only be instituted in any court sitting in New York State, (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to jurisdiction or venue. Should a proceeding be initiated in any other forum, the parties waive any right to oppose any motion or application made by either party to transfer such proceeding to an Acceptable Forum.

**4.7** **Survival of Representation, etc.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**4.8** **Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision

Rev. 9.6.17

Owner 1 Initials: _____

Owner 2 Initials: _____

contained herein shall not in any way be affected or impaired.

4.9    Entire Agreement. Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and Security Agreement hereto embody the entire agreement between Merchant and RMF and supersede all prior agreements and understandings relating to the subject matter hereof.

4.10    JURY TRIAL WAIVER. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.11    CLASS ACTION WAIVER. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY, AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY

AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

4.12    Facsimile Acceptance. Facsimile signatures and/or via Portable Digital Format (PDF) shall be deemed acceptable for all purposes.

4.13    Arbitration. If RMF, Merchant or any Guarantor requests, the other parties agree to arbitrate all disputes and claims arising out of or relating to the Agreement. If RMF, Merchant or any Guarantor seeks to have a dispute settled by arbitration, that party must first send to the other party, by certified mail, a written Notice of Intent to Arbitrate. If RMF, Merchant or any Guarantor do not reach an agreement to resolve the claim within 30 days after the Notice is received, RMF, Merchant or any Guarantor may commence an arbitration proceeding with the American Arbitration Association ("AAA"), located in New York City. RMF will promptly reimburse Merchant or the Guarantor any arbitration filing fee; however, in the event that both Merchant and the Guarantor must pay filing fees, RMF will only reimburse Merchant's arbitration filing fee and, except as provided in the next sentence, RMF will pay all administration and arbitrator fees. If the arbitrator finds that either the substance of the claim raised by Merchant or the Guarantor or

the relief sought by Merchant or the Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Civil Procedure 11(b), then RMF will pay these fees only if required by the AAA Rules. If the arbitrator grants relief to Merchant or the Guarantor that is equal to or greater than the value of what Merchant or the Guarantor has requested in the arbitration, RMF shall reimburse Merchant or the Guarantor for that person's reasonable attorneys' fees and expenses incurred for the arbitration. Merchant and the Guarantor agree that, by entering into this Agreement, they are waiving the right to trial by jury. PURCHASER, MERCHANT AND ANY GUARANTOR MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY,

and not as a plaintiff or class member in any purported class or representative proceeding. Further, RMF, Merchant and any Guarantor agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and that if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void. MERCHANT AND ANY GUARANTOR MAY OPT OUT OF THIS CLAUSE. To opt out of this Arbitration Clause, Merchant and/or Guarantor may send RMF a notice that the Merchant or Guarantor does not want this clause to apply to this Agreement. For any opt out to be effective, Merchant and/or Guarantor must send an opt out notice to the following address by registered mail, within 14 days after the date of this Agreement: 30 Broad Street, 14th Floor, Suite 14108, New York, New York 10004.

Owner 1 Initials: _____

Owner 2 Initials: _____

Dear Merchant,

Thank you for accepting this offer from RICHMOND FUNDING. We look forward to being your funding partner for as long as you need.

Daily ACH Program:
RICHMOND FUNDING will require viewing access to your bank account, each business day, in order to calculate the amount of your daily payment. Please be assured that we carefully safeguard your confidential information, and only essential personnel will have access to it.

RICHMOND FUNDING will also require viewing access to your bank account, prior to funding, as part of our underwriting process.

Please fill out the form below with the information necessary to access your account.
* Be sure to indicate capital or lower-case letters.

Name of bank: _____

Bank portal website: _____

Username: _____

Password: _____

Security Question/Answer 1:_____

Security Question/Answer 2:_____

Security Question/Answer 3:_____

Any other information necessary to access your account: _____

_____

Please note: In the event that we are unable to access your account, we will take a daily estimated payment. An additional $39 fee will be assessed for each day we don't have access.

If you have any questions please feel free to contact us directly at 1-800-955-2411.

# EXHIBIT F

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Corporation Service Company    1-800-858-5294

B. E-MAIL CONTACT AT FILER (optional)
SPRFiling@cscinfo.com

C. SEND ACKNOWLEDGMENT TO:    (Name and Address)

1412 90818
Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed in: Utah
(S.O.S.)

535300 201822

LAL

JAN 16 '18 AM 10:52

01/16/2018
Receipt Number: 7202399
Amount Paid: $60.00

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | THE FALLS EVENT CENTER LLC | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS 9067 S 1300 | CITY WEST JORDAN | STATE UT | POSTAL CODE 84088 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | THE FALLS EVENT CENTER | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS 9067 S 1300 | CITY WEST JORDAN | STATE UT | POSTAL CODE 84088 | COUNTRY USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | CORPORATION SERVICE COMPANY, AS REPRESENTATIVE | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS P.O. BOX 2576 UCCSPREP@CSCINFO.COM | CITY Springfield | STATE IL | POSTAL CODE 62708 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:
All Assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets: a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c. Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts; i. Letter of Credits Rights; j. General Intangibles; k. Supporting Obligations; and l. Proceeds and Products of the foregoing. NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN, THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCER IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | | | 6b. Check only if applicable and check only one box: | |
|---|---|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor    ☐ Consignee/Consignor    ☐ Seller/Buyer    ☐ Bailee/Bailor    ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
1412 90818

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Corporation Service Company
2711 Centerville Rd., Ste. 400
Wilmington, DE 19808

# EXHIBIT G

| The Falls | Week 1 Jul 16-20 | Week 2 Jul 23-27 | Week 3 Jul 30 to Aug 3 | Week 4 Aug 6-10 | Week 5 Aug 13-17 | Week 6 Aug 20-24 | Week 7 Aug 27-31 | Week 8 Sep 3-7 |
|---|---|---|---|---|---|---|---|---|
| Beg Bal | 60,803.47 | | | | | | | |
| InTransit | | | | | | | | |
| Net Deposits | 190,000.00 | 190,000.00 | 190,000.00 | 215,000.00 | 220,000.00 | 220,000.00 | 220,000.00 | 145,000.00 |
| Proceeds from Sale | 234,046.00 | 374,142.09 | | | | | | |
| Groupon | | | | | | | | |
| Interest (Secured Creditors) | | | (22,091.00) | (22,091.00) | (22,091.00) | (22,091.00) | (22,091.00) | (22,091.00) |
| Merchant Fees | | (6,970.00) | | | | | | (6,970.00) |
| Payroll (Wage) | (144,000.00) | | (144,000.00) | | (144,000.00) | | | (144,000.00) |
| Payroll (Tax) | (173,178.16) | | (44,000.00) | | (44,000.00) | | | (44,000.00) |
| ADP (monthly) | (12,500.00) | | | | (12,500.00) | | | |
| EMI Health | | (45,161.31) | (45,000.00) | | | | | (45,000.00) |
| Trolley Rent | | (38,792.50) | | (30,000.00) | | | | |
| Rent - Corp | (5,735.50) | | (5,735.50) | | | | | (5,735.50) |
| Marketing | (5,582.38) | | | | (5,582.38) | | | |
| Travel | (1,000.00) | (1,000.00) | (1,000.00) | (1,000.00) | (1,000.00) | (1,000.00) | (1,000.00) | (1,000.00) |
| Utilities | (6,500.00) | (6,500.00) | (6,500.00) | (6,500.00) | (6,500.00) | (6,500.00) | (6,500.00) | (6,500.00) |
| Employee Reimb | (1,500.00) | | | (1,500.00) | | | (1,500.00) | |
| COGS - Linens/Liquor | (7,000.00) | (7,000.00) | (7,000.00) | (7,000.00) | (7,000.00) | (7,000.00) | (7,000.00) | (7,000.00) |
| Insurance (GenLiab/WC) | (10,564.98) | | | (10,564.98) | | | | (10,564.98) |
| Repairs & Maint | (3,729.56) | (3,729.56) | (3,729.56) | (3,729.56) | (3,729.56) | (3,729.56) | (3,729.56) | (3,818.67) |
| Vendors (Supplies/Services) | (2,109.99) | (2,109.99) | (2,109.99) | (2,381.70) | (2,381.70) | (2,381.70) | (2,381.70) | (1,923.33) |
| Social Tables | | | | | (8,833.33) | | | |
| IT Consultants | (5,000.00) | | | | (5,000.00) | | | |
| Maintenance | | | | (20,000.00) | | | | |
| Critical Vendors | | (115,092.74) | | | | | | |
| BK Attorneys | | | (45,000.00) | | | | | (45,000.00) |
| Acctg Firm | | | (20,000.00) | | | | | (20,000.00) |
| PR | | | (25,000.00) | | (25,000.00) | | | |
| ESBE | | (25,000.00) | (25,000.00) | | (25,000.00) | | | (25,000.00) |
| Utilities (W&W) | (23,000.00) | | | | (23,000.00) | | | |
| Workers Comp (W&W) | (8,668.13) | | (5,000.00) | | | | | (4,500.00) |
| Liab Insurance (W&W) | | (17,349.11) | | | | | (17,349.11) | |
| Vendors (W&W) | (9,000.00) | (9,000.00) | (10,200.00) | (10,200.00) | (10,200.00) | (10,200.00) | (10,200.00) | (9,000.00) |
| Maint (W&W) | (10,844.84) | | | | | | | |
| Weekly Total | 54,935.93 | 293,406.88 | (228,336.05) | 100,032.76 | (125,817.97) | 167,097.74 | 148,248.63 | (257,103.47) |
| Balance | 54,935.93 | 348,342.81 | 120,006.76 | 220,039.53 | 94,221.56 | 261,319.31 | 409,567.94 | 152,464.47 |