Laurie A. Cayton (USB #4557)
Trial Attorney
J. Vincent Cameron (USB #10006)
Assistant United States Trustee
**UNITED STATES DEPARTMENT OF JUSTICE**
Office of the United States Trustee
Washington Federal Bank Building
405 South Main Street, Suite 300
Salt Lake City, UT 84111
Telephone:    (801) 524-3031
Facsimile:    (801) 524-5628
Email: Laurie.Cayton@usdoj.gov

Attorneys for Patrick S. Layng, United States Trustee

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH
### CENTRAL DIVISION

| In re:<br><br>**THE FALLS EVENT CENTER LLC,**<br><br>Debtor. | **Bankruptcy Case No. 18-25116 RKM**<br>(Chapter 11)<br>Chief Judge R. Kimball Mosier |
|---|---|

### UNITED STATES TRUSTEE'S MOTION FOR THE APPOINTMENT
### OF A CHAPTER 11 TRUSTEE AND
### MEMORANDUM IN SUPPORT THEREOF

---

The United States Trustee, by and through his attorney, Laurie A. Cayton, and pursuant to 11 U.S.C. §§ 1104(a) and (e) hereby moves this Court for the Appointment of a Chapter 11 Trustee. For the reasons set forth below, the court should grant this requested relief.

### RECITALS

1. This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and venue is proper pursuant to 28 U.S.C. § 1409.

2. This Motion is made pursuant to 11 U.S.C. § 1104(a) and (e), Rules 9013 and 9014 of the Federal Rules of Bankruptcy Procedure and Local Rule 9013-1.

3. The United States Trustee has standing to bring this Motion under 11 U.S.C. §§ 307 and 1104(a) and (e), and pursuant to the United States Trustee's authority to supervise the administration of bankruptcy cases under 28 U.S.C. § 586(a)(3).

4. The relief sought is based upon this Motion and Memorandum, the records and files in the case and such other evidence as may be introduced prior to or at the time of the hearing on the Motion.

## STATEMENT OF FACTS

1. The debtor, The Falls Event Center LLC ("the debtor") commenced this case by filing a voluntary petition for relief under Chapter 11 on July 11, 2018.

2. The debtor is a Utah limited liability company with its principal office in West Jordan, Utah.  Steven L. Down ("Down") formed the debtor in 2011 and from that time through and until June of 2018, Down was the Chief Executive Officer ("CEO") of the debtor as well as it sole manager and person in control.

3. The debtor operates eight events centers located in five states.   Various wholly owned subsidiaries of the debtor own the real property where the event centers were built.  Other wholly owned subsidiaries of the debtor own 13 parcels of vacant land that were acquired with the intention of building and operating additional event centers.

4. The debtor and these wholly owned subsidiaries involved in the ownership of event centers or the ownership of land intended to be used for event centers will be collectively referred to as the "Falls entities."  One of these Falls entities, The Falls at Elk Grove

LLC, filed a voluntary petition for relief under Chapter 11 in the District of Utah on July 16, 2018. A second entity, The Falls at Gilbert, LLC, filed a voluntary petition for relief under chapter 11 in the District of Utah on July 25, 2018. The debtor has informed the office of the United States Trustee that it intends to cause other wholly owned subsidiaries to file Chapter 11 petitions over the next few weeks.

5. As previously mentioned, from 2011 until approximately June of 2018, Down was the CEO of the debtor as well as it sole manager and person in control. Down was also the manager of the other Falls entities referenced above.

6. From 2011 through June of 2018, Down managed or controlled a large number of other entities involved in businesses in addition to the event centers (collectively, the "Down entities"). These entities include entities involved in the ownership or operation of a chain of sandwich shops known as Even Stevens (collectively, the "Even Stevens entities").

7. The debtor and the Falls entities do not maintain separate bank accounts, rather the funds of the debtor and the various Falls entities have been and continue to be comingled with their funds in the new Debtor in Possession bank account newly established at Bank of the West.

8. The debtor[1] has acknowledged that the debtor and the Down entities, including the Even Stevens entities, have comingled funds in the past and that there are significant intercompany claims involving the debtor, the Even Stevens entities and the other Down

---

[1] When referring to statements made by "the debtor", these are statements made by the current CRO, Brooks Pickering.

entities.

9. At all relevant times prior to 2018, Down offered and sold investments in the debtor to individuals.

10. On May 10, 2018, the Securities and Exchange Commission (the "SEC") filed a complaint against the debtor and Down in the United States District Court for the District of Utah (Case No.: 2:18-cv-00382-PMW) (The SEC Action). The complaint alleged that Down has raised approximately $120 million from approximately 300 investors for The Falls since 2011. [2]

11. According to the complaint, Down primarily solicited investors by providing informational seminars as part of continuing education programs to dentists regarding investment opportunities with the Falls entities, as well as other entities established by Down. In those seminars, Down represented to investors that The Falls was a profitable business and had a profit margin of 35% per year.

12. According to the audit performed for the SEC, the Falls entities were never profitable. Down continued to make representations concerning The Falls profitability even after he was fully informed that The Falls was not profitable nor had it ever been profitable. A copy of the complaint is attached hereto as Exhibit A.

13. On or about December 21, 2017, the debtor and Down signed consents to the entry of a final judgment which, among other things, restrained and enjoined both the debtor and Down from violations of Section 17(a)(2) [15 U.S.C. § 77q(a)(2)] of the Securities Act of

---

[2] The SEC Complaint refers to one entity which is The Falls Event Center LLC. In reality, there are a number of operating entities which are subsidiaries of The Falls referred to throughout the motion as the Falls entities.

1933) ("Securities Act"), which prohibited in certain securities transactions, the use of material, untrue statements or misleading omissions. The court entered a final judgment on these consents on May 10, 2018.

14. While the consents were made without admission or denial of the allegations of the complaint, the consents did include an agreement by the debtor and Down that the Defendants may not deny the allegations in the complaint or refuse to admit the allegations through any public statement.

15. On or about June of 2018, Down contacted Brooks Pickering ("Pickering") of ESBE regarding obtaining assistance in the management of the debtor, the Falls entities and the Even Stevens entities. At the time, Down was the sole manager and decision making authority for these various entities, including the debtor.

16. On or about June of 2018, Down caused the debtor to hire Pickering as the Chief Reorganizing Officer ("CRO") of the debtor.

17. On or about June of 2018, Down also caused the Even Stevens entities to hire Pickering as their CRO.

18. The debtor does not have a board of directors or any other person or governing body, other than Pickering, with authority to make decisions for the debtor or review and direct the actions of Pickering.

19. On July 11, 2018, Pickering caused the debtor to file the Chapter 11 petition commencing this case.

20. On July 12, 2018, the United States Trustee, through his trial attorney assigned to the case, reminded counsel for the debtor of the Chapter 11 Operating Guidelines and

Reporting Requirements of the United States Trustee. The debtor was reminded that these guidelines require the debtor to immediately close pre-petition bank accounts and open "debtor in possession" bank accounts.

21. On July 12, 2018, the Office of the United States Trustee had a telephonic meeting with Brent Wride, counsel for the debtor and informed him of the requirement of immediately closing pre-petition bank accounts and opening debtor in possession bank accounts.

22. The debtor did not close its pre-petition bank accounts until July 18, 2018. As a consequence, the pre-petition secured creditors who had ACH authority to withdraw funds from the debtor's account at Bank of the West, continued to withdraw funds through July 17, 2018, in the total amount of approximately $98,000.

23. Despite the debtor's knowledge of these continued ACH withdrawals as early as July 12, 2018, they did not close the account or set up a new debtor in possession bank account until July 18, 2018.

## ARGUMENT

### I. THIS MOTION IS REQUIRED UNDER 11 U.S.C. § 1104(e)

11 U.S.C. § 1104(e) provides, in relevant part, that "[t]he United States Trustee shall move for the appointment of a trustee under subsection (a) if there are reasonable grounds to suspect that . . . members of the governing body who selected the debtor's chief executive of or chief financial officer, participated in actual fraud, dishonesty, or criminal conduct in the management of the debtor . . .". See In re The 1031 Tax Group, LLC, 374 B.R. 78, 87 (Bankr.S.D.N.Y. 2007)("the U.S. Trustee must seek an order requiring appointment of a chapter 11 trustee whenever the 'reasonable grounds to suspect' standard is met").

Pickering signed the petition as manager of the debtor. There is no formally designated Chief Executive Officer or other managing authority for the debtor other than Pickering. Even if he lacks the formal designation, Pickering is the chief executive officer of the debtor. Down selected Pickering as the manager or chief executive officer of the debtor. At the time of the selection of Pickering, Down was the sole manager and the sole member of the governing body of the debtor. There was no board of directors other than Down. The debtor still lacks any board of directors. There was no governing body other than Down and, at this time, there is no governing body other than Pickering.[3]

The SEC complaint and the consents to the relief requested by the SEC complaint provide reasonable grounds to suspect that Down, the person who selected Pickering to lead the debtor, participated in actual fraud, dishonesty, or criminal conduct in the management of the debtor. The complaint includes allegations that Down fraudulently induced investors to purchase convertible notes in the Falls entities by stating that the Falls entities were profitable businesses with a profit margin of 35%, even after Down had a clear knowledge of the fact that the Falls entities were not profitable and had never been profitable.

Such deceptive conduct or knowing statements of material misrepresentations made to induce others to invest money in the debtor present a textbook example of actual fraud or dishonesty. This conduct also arguably meets the elements of federal securities fraud under 18 USC § 348 as well as other federal and state criminal statutes.

---

[3] The debtor has suggested to the United States Trustee that Pickering be replaced by an independent CRO who could then establish a Board of Directors. This resolution does not change the fact that Down is a 22% shareholder and holds the largest percentage of shares in the debtor, thus being in a position to control the election of the Board of Directors. Nor does the proposed resolution address the fact that the new CRO was selected by Pickering and not an independent Board of Directors.

## II.    CAUSE EXISTS FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE

11 U.S.C. § 1104(a) provides that the court shall order the appointment of a trustee

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee -
> (1)    for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case or similar cause ...; or
> (2)    if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

### A)    There is cause to appoint a Trustee under 11 U.S.C. § 1104(a)(1).

11 U.S.C. § 1104(a)(1) requires the Court to order the appointment of a Trustee where cause exists. Cause is not limited to the factors listed in Section 1104 itself. *See In re Oklahoma Refining Co.*, 838 F.2d 1133 (10th Cir. 1988). Courts have found cause to appoint a trustee where the debtor has failed to maintain adequate financial records or has failed to adequately document transactions with insiders or affiliated entities; *In re Oklahoma Refining Co.,* 838 F.2d 1133 (10th Cir. 1988); *In re McCorhill Publishing, Inc*. 73 B.R. 1013, 1017 (Bankr. S.D.N.Y. 1987); to investigate allegations of fraud and wrongdoing by the Debtor; *In re Parr*, 1 B.R. 453, 456 (Bankr. E.D.N.Y. 1979); when circumstances evidence a lack of prudent business management occurring pre-petition; *In re North Eastern Lumber of Millwork Corp.*, 9 B.C.D. 425 (Bankr. E.E. Pa. 1982); when management of the Debtor fails to adhere to the fiduciary requirements of a debtor-in-possession in fully disclosing assets or liabilities of the debtor causing creditors to lack confidence and trust in the current management of the Debtor; *In re*

*Parker Grand Development, Inc.*, 64 B.R. 557 (Bankr. S.D. Ind. 1986); and to prevent looting of the estate; *In re Bibo, Inc.*, 76 F.3d 256, 258 (9th Cir. 1996).

As stated by the United States Supreme Court in *Commodity Futures Trading Com'n v. Weintraub*, 105 S.Ct. 1986 (1985) at 1995 *citing Wolf v. Weinstein*, 372 U.S. 633 (1963) at 651: "Indeed, the willingness of Courts to leave debtors-in-possession is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of the Trustee". Courts have uniformly recognized that an independent Trustee is necessary where the principals of the debtor have engaged in illegal or improper transactions which the debtor-in-possession cannot be reasonably expected to prosecute. See e.g., *In re Russell*, 60 B.R. 42 (Bankr. W.D. Ark. 1985); *In re W.H. Vaughan*, 40 B.R. 524 (Bankr. E.D. Pa. 1984); *In re Fisher Holding Co.*, 12 B.R. 195 (Bankr. S.D. Ind. 1981).

The primary cause for the appointment of a trustee is that Pickering's selection by and connections with Down are fatal to his ability to function as an independent fiduciary for this bankruptcy estate. Down was the sole manager and sole member of the debtor's governing body when he selected Pickering. Pickering is now the sole manager and the sole member of the only identified governing body of the debtor. The debtor has never had an independent board of directors to oversee management. It has no such board today. To the extent there is an authority to whom Pickering is answerable it would be the shareholders. To the extent an independent governing body is created, it would be created by the shareholders. Down, as a 22% shareholder, holds the largest percentage of shares in the debtor and is in a position to control an election of the Board of Directors. As the largest and controlling shareholder, Down, in essence remains in control of the debtor, notwithstanding the existence of reasonable grounds to suspect that he

participated in fraud, dishonesty or criminal conduct in connection with the debtor.

The fact that Down hired Pickering to manage the Even Stevens entities further emphasizes Pickering's inability to serve as an independent fiduciary for the estate. Even if he is not answerable to Down with respect to the management of this debtor, he may remain answerable to and work closely with Down with respect to the management of the Even Stevens entities. Moreover, as Pickering himself acknowledges, there had been comingling of funds between the debtor and the Even Stevens entities prior to the filing of this bankruptcy and there are intercompany claims among the debtor and the Even Stevens entities. Pickering has estimated that this may result in a net claim of up to $500,000 owed by the Even Stevens entities to the debtor. Pickering's duties as manager of the debtor conflict with his duties as manager of the Even Stevens entities with respect to these issues. This conflict of interest and other concerns expressed above are exacerbated by the fact that there is no board of directors or other governing body of the debtor available to review Pickering's decisions and actions to ensure that they are in the best interests of the debtor and untainted by Pickering's connections to Down or Pickering's management of the Even Stevens entities.

Additional cause is found in the failure to safeguard the funds in the debtor's bank accounts on the day of the filing of the petition. Safeguarding and preserving assets of the estate is fundamental to the role of a debtor-in –possession. Pursuant to 11 U.S.C. § 1106 (a)(1), a Trustee is accountable for all property received which should be safeguarded. As further outlined in 11 U.S.C. § 704(a)(2), a debtor-in-possession serves in the place of a Trustee and has a similar duty to safeguard property of the estate. The United States Trustee's Operating Guidelines and Reporting Requirements were established to assist the debtor-in-possession to

safeguard its property and failure to adhere to those guidelines provides additional cause for the appointment of a Chapter 11 Trustee.  In Chapter 11, the requirements of immediately closing pre-petition accounts and opening debtor-in possession accounts is a responsibility of the debtor-in-possession.

In this case the debtor did not immediately close pre-petition accounts and open debtor-in-possession accounts.  This allowed secured creditors to remove approximately $98,000 from the account.  In the event the property is not recovered from those secured creditors, there will be a loss of approximately $98,000 to the estate arising from the dilatory conduct of the debtor-in-possession.  This failure to safeguard funds leading to a potential $98,000 loss to the estate is reflective of mismanagement, if not gross mismanagement.

The combination of Pickering's selection by and continuing connections with Down and his non-debtor entities, the lack of any independent governing body of the debtor and the failure to take adequate steps to safeguard the funds in the pre-petition accounts leading to the loss of $98,000 of estate funds collectively, if not individually, provide cause for the appointment of a trustee under section 1104(a)(1).

**B) <u>Appointment of a Chapter 11 Trustee is in the Best Interest of Creditors and Parties in Interest</u>**

If the Court does not find sufficient cause for the appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(1), the United States Trustee requests that the Court exercise its discretion under the broader standard set forth in section 1104(a)(2) to appoint a trustee in light of the facts set forth above. Under section 1104(a)(2), the Court need not find that any of the factors set forth in section 1104(a)(1) as a predicate to ordering the appoint a trustee; it is

sufficient that the appointment be in the best interest of creditors. *Oklahoma Refining Co. v. Blaine (In re Oklahoma Ref. Co.)*, 838 F.2d 1133 (10th Cir. 1988). The best interests of creditors in this case will be served by appointment of an independent third party to properly administer Debtor's chapter 11 estate.

## CONCLUSION

WHEREFORE, the United States Trustee requests that the Court grant the U.S. Trustee's Motion to Appoint a Chapter 11 Trustee under either 11 U.S.C. § 1104(a) or (e), or for such other and further relief as the Court deems necessary and appropriate.

DATED: July 27, 2018.

Respectfully submitted,

/s/
J. Vincent Cameron
Laurie A. Cayton
Attorneys for the United States Trustee,
Patrick S. Layng

## CERTIFICATE OF MAILING

I HEREBY CERTIFY that, on July 27, 2018, I caused a true and correct copy of the foregoing **UNITED STATES TRUSTEE'S MOTION FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE AND MEMORANDUM IN SUPPORT THEREOF** to be electronically filed with the Court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF System as noted below:

- David P. Billings    dbillings@fabianvancott.com; mparks@fabianvancott.com
- Michael R. Johnson    mjohnson@rqn.com; docket@rqn.com; dburton@rqn.com
- Brent D. Wride    bwride@rqn.com; pbrown@rqn.com

Further, I certify that I caused copies of the **UNITED STATES TRUSTEE'S MOTION FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE** to be forwarded via U.S. Mail, first class, postage prepaid and properly addressed to all persons as listed on the appointment and to the following:

The Falls Event Center LLC
9067 South 1300 West, Suite 301
West Jordan, UT  84088

/s/
Lindsey Huston