Michael F. Thomson (#9707)
Peggy Hunt (#6060)
Jessica G. McKinlay (#11210)
DORSEY & WHITNEY LLP
111 South Main Street, 21st Floor
Salt Lake City, UT 84111-2176
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email:  thomson.michael@dorsey.com
        hunt.peggy@dorsey.com
        mckinlay.jessica@dorsey.com

*Attorneys for Michael F. Thomson, Chapter 11 Trustee of The Falls Event Center LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>THE FALLS EVENT CENTER LLC; THE FALLS AT CLOVIS, LLC; THE FALLS AT FRESNO, LLC; THE FALLS AT GILBERT, LLC; THE FALLS AT MCMINNVILLE, LLC; THE FALLS AT ST. GEORGE, LLC; *and* THE FALLS OF LITTLETON, LLC,<br><br>Debtors. | Bankr. Case No. 18-25116<br>Bankr. Case No. 18-28140<br>Bankr. Case No. 18-27713<br>Bankr. Case No. 18-25419<br>Bankr. Case No. 18-25492<br>Bankr. Case No. 18-26653<br>Bankr. Case No. 18-27111<br><br>Chapter 11<br><br>The Honorable R. Kimball Mosier |

**MEMORANDUM OF LAW IN SUPPORT OF CHAPTER 11 TRUSTEE'S MOTION TO SUBSTANTIVELY CONSOLIDATE THE FALLS EVENT CENTER LLC WITH DEBTORS THE FALLS AT CLOVIS, LLC, THE FALLS AT FRESNO, LLC, THE FALLS AT GILBERT, LLC, THE FALLS AT MCMINNVILLE, LLC, THE FALLS AT ST. GEORGE, LLC, AND THE FALLS OF LITTLETON, LLC; *and* NON-DEBTORS THE FALLS AT AUSTIN BLUFFS, LLC, THE FALLS AT CUTTEN ROAD, LLC, THE FALLS AT STONE OAK PARKWAY, LLC, THE FALLS AT BEAVERTON, LLC, AND THE FALLS AT ROSEVILLE, LLC**

Michael F. Thomson, the duly appointed Chapter 11 Trustee (the "Trustee") for The Falls

Event Center LLC ("TFEC"), which is the sole member and manager, either directly or indirectly

of the other above-captioned debtors, as well as non-debtors The Falls at Austin Bluffs, LLC;

The Falls at Cutten Road, LLC; The Falls at Stone Oak Parkway, LLC; The Falls at Beaverton,

LLC; and The Falls at Roseville, LLC, hereby files this *Memorandum of Law in Support of*

*Chapter 11 Trustee's Motion To Substantively Consolidate The Falls Event Center, LLC With*

*Debtors The Falls at Fresno, LLC, The Falls at Gilbert, LLC, The Falls at McMinnville, LLC,*

*The Falls at St. George, LLC, And The Falls of Littleton, LLC; And Non-Debtors The Falls at*

*Austin Bluffs, LLC, The Falls at Cutten Road, LLC, The Falls at Stone Oak Parkway, LLC, The*

*Falls at Beaverton, LLC, And The Falls at Roseville, LLC* (the "Motion").

Pursuant to the Motion, the Trustee requests entry of an Order substantively

consolidating the above-listed entities (collectively the "Falls Parties") with TFEC as of the

TFEC Petition Date (as defined below).  In support of the Motion, the Trustee has filed

concurrently herewith the *Declaration of Michael F. Thomson, Chapter 11 Trustee of The Falls*

*Event Center LLC* (the "Trustee Declaration"), the *Declaration of Gil A. Miller* (the "Miller

Declaration"), and states as follows:

## JURISDICTION AND VENUE

1.      On July 11, 2018, TFEC filed a petition seeking relief under Chapter 11 of the

Bankruptcy Code (the "TFEC Petition Date").

2.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2

4850-2710-2598\5

## BACKGROUND

### TFEC and the Affiliated Companies

4.    TFEC operates event centers located in multiple states and a water park located in Oregon.  It also is the sole member and manager of fifteen "Affiliated Companies" described below.  Trustee Declaration ¶ 4.

5.    Eight of the Affiliated Companies own or lease the real property where business operations take place, as follows:

a.    The Falls at Elk Grove, LLC ("Elk Grove") previously held title to real property located at 8280/8290 Elk Grove Blvd., Elk Grove, California, where an event center is operated by TFEC.  That real property was sold at a post-petition foreclosure sale and TFEC now leases the real property directly from the current owner.

b.    The Falls at Fresno, LLC ("Fresno") holds title to real property located at 4105 W. Figarden Dr., Fresno, California, where an event center is operated by TFEC.

c.    The Falls at Gilbert, LLC ("Gilbert") holds title to real property located at 4635 East Baseline Road, Gilbert, Arizona, where an event center is operated by TFEC.

d.    The Falls of Littleton, LLC ("Littleton") holds title to real property located at 8199 Southpark Ct., Littleton, Colorado, where an event center is operated by TFEC.

e.    The Falls at McMinnville, LLC ("McMinnville") holds title to real property located at 510 Northeast Captain Michael King Smith Way, McMinnville, Oregon, where an event center and Wings and Waves Waterpark (the

3

"Waterpark") are operated by TFEC. The Waterpark operations are a dba of

TFEC, but the real property on which the Waterpark sits is titled in the name of

McMinnville.

    f.    The Falls at Roseville, LLC ("Roseville") holds title to real property located at

240 Conference Center Dr., Roseville, California, where an event center is

operated by TFEC.

    g.    The Falls at St. George, LLC ("St. George") holds title to real property located at

170 South Mall Drive, St. George, Utah, where an event center is operated by

TFEC.

    h.    The Falls at Trolley Square, LLC ("Trolley") leases real property located at 580

S. 600 E, Salt Lake City, Utah, where an event center is operated by TFEC.

Trustee Declaration ¶ 5.

    6.    The other seven Affiliated Companies own real property and have no other

business operations. The Trustee understands that former management acquired these properties

to either construct event centers or convert existing structures into event centers. These

Affiliated Companies are as follows:

    a.    The Falls at Austin Bluffs, LLC ("Austin Bluffs") holds title to real property

located at Township 13 South Range 66 West El Paso County, Colorado.

    b.    The Falls at Beaverton, LLC ("Beaverton") holds title to real property located at

12655 Southwest Miliken Way, Beaverton, Oregon.

    c.    The Falls at Bricktown, LLC ("Bricktown") holds title to real property located at

108 East California Ave., Oklahoma City, Oklahoma.

    d.    The Falls at Burr Ridge, LLC ("Burr Ridge") holds title to real property located at 120 Harvester Drive, Burr Ridge, Illinois.

    e.    The Falls at Clovis, LLC ("Clovis") holds title to real property located at 250 & 270 North Clovis Ave., Clovis, California.

    f.    The Falls at Cutten Road, LLC ("Cutten Road") holds title to real property located at 13455 Cutten Road, Houston, Texas.

    g.    The Falls at Stone Oak Parkway, LLC ("Stone Oak") holds title to real property located at S. Side of Stone Oak Parkway West of Highway 281, San Antonio, Texas.

Trustee Declaration ¶ 6.

## Management

7.    All of the Affiliated Companies are wholly-owned subsidiaries of TFEC. Trustee Declaration ¶ 7.

8.    Since their inception, TFEC and the Affiliated Companies have had common managers, and TFEC has directed all actions of the Affiliated Companies. Trustee Declaration ¶ 8.

9.    Steven L. Down ("Down") founded TFEC, and from 2011 to 2018, he was the Chief Executive Officer. Down and his brother, David W. Down, were also managers of TFEC and the Affiliated Companies. [Case No. 18-25116, Docket No. 72, ¶ 29.]

10.    The Trustee is informed that on or about June 28, 2018, Brooks Pickering became Chief Restructuring Officer of TFEC. Trustee Declaration ¶ 9.

4850-2710-2598\5

11.     On or about August 30, 2018, Mr. Pickering resigned and Gil A. Miller appointed

Chief Restructuring Advisor [Docket No. 99].  Mr. Miller served in this role until the

appointment of the Trustee.

12.     On November 27, 2018, the Court entered an *Order Approving Appointment of*

*Chapter 11 Trustee,* approving the appointment of the Trustee as the Chapter 11 trustee of the

TFEC estate. [Docket No. 214].

13.     The Trustee is managing the Affiliated Companies through TFEC, which is the

sole member of the Affiliated Companies.  Trustee Declaration ¶ 10.

**TFEC Capitalization**

14.     Down capitalized TFEC primarily through private investor funding and hard

money loans.  Miller Declaration ¶ 9.

15.     Prior to the Petition Date, on May 10, 2018, the Securities and Exchange

Commission filed a *Complaint* against TFEC and Down in the United States District Court for

the District of Utah (Case No.: 2:18-cv-00382-PMW).  The Complaint, a copy of which is

attached hereto as **Exhibit A**, alleges that Down had raised approximately $120 million from

approximately 300 investors since 2011, and Down misrepresented the profitability of TFEC

even after he was fully informed that TFEC was not profitable and had never been profitable.

On May 11, 2018, the District Court entered a *Final Judgment* in this lawsuit, a copy of which is

attached hereto as **Exhibit B**, in which TFEC and Down consented to entry of the Final

Judgment without admitting or denying the allegations in the Complaint, Down agreed to pay

$150,000 in civil penalties, and TFEC and Down were enjoined from violating securities laws.

6

4850-2710-2598\5

16.     Since the TFEC Petition Date, a review of records to date shows that information provided to investors about the profitability of TFEC's enterprise was not accurate, and that the funds obtained from operating the event center and Waterpark businesses were not sufficient to sustain the entire enterprise. Miller Declaration ¶ 10.

### Affiliated Companies' Capitalization and Property Acquisition

17.     None of the Affiliated Companies has ever had a source of income.  Miller Declaration ¶ 11.

18.     The debts of each of the Affiliated Companies have been paid by TFEC.  Miller Declaration ¶ 12.

19.     Each of the Affiliated Companies acquired title to real property through hard money or traditional loans that were secured by the real property they held.  TFEC caused each of the Affiliated Companies to enter into these loans, and any cash down payments or debt service on the loans was made from TFEC funds.  Miller Declaration ¶ 13.

20.     TFEC guaranteed or is otherwise obligated for the majority of the Affiliated Companies' real property loans.  Trustee Declaration ¶ 11.

### Business Operations

21.     TFEC's corporate office is located in a building that it leases located in West Jordan, Utah (the "Office").  TFEC runs its operations and manages each of the Affiliated Companies from the Office, and none of the Affiliated Companies have separate offices. Trustee Declaration ¶ 12.

22.     All books and records of TFEC and the Affiliated Companies are located in the Office.  Trustee Declaration ¶ 13.

7

4850-2710-2598\5

23.     TFEC has approximately two hundred and twenty-five employees.  The Affiliated

Companies have no employees, and to the extent that they require services they rely on TFEC.

Trustee Declaration ¶ 14.

24.     TFEC manages each of the Affiliated Companies without receiving compensation

or remuneration, including providing bookkeeping services and attending to management of

property owned or leased by the Affiliated Companies.  Trustee Declaration ¶ 15.

25.     TFEC's business includes operating event centers and a waterpark at the real

properties held by some of the Affiliated Companies.  TFEC has no written contracts with the

Affiliated Companies for use of the properties.  Trustee Declaration ¶ 16.

26.     TFEC attends to all aspects of running the event centers and executing events,

including contracting with persons wanting to hold events, securing prepayments, servicing

events, contracting with vendors that assist in servicing the events, and collecting final payments.

Trustee Declaration ¶ 17.

27.     TFEC operates the Waterpark as a dba and has rights to its income, and it

contracts with event center customers thus entitling it to income from that business as well.

Trustee Declaration 18.

28.     All activity for TFEC and the Affiliated Companies has always been filed on

consolidated tax returns as the Affiliated Companies are considered to be disregarded entities by

the Internal Revenue Service.  Miller Declaration ¶ 14.

## Cash Management and Accounting

29.     Prior to the TFEC Petition Date TFEC had 3 bank accounts.  Docket No. 72 (Schedule B).

30.     Prior to the TFEC Petition Date, none of the Affiliated Companies had bank accounts, and creditors of the Affiliated Companies were therefore paid on checks issued by TFEC using its accounts.  Miller Declaration ¶ 15.

31.     Prior to the TFEC Petition Date, TFEC maintained two sets of accounting records.  The first contained activity for TFEC corporate overhead and all activity for operating and non-operating Affiliated Companies ("TFEC QuickBooks").  The second file contained only the activity for Waterpark operations, even though the Waterpark is a dba of TFEC.  Within the TFEC QuickBooks, all real property, debt and operational income and expenses of the Affiliated Companies were consolidated.  Each transaction was identified to a particular "Class" representing the Affiliated Company to which the transaction related.  There was no attempt made to book intercompany receivables and payables to identify TFEC's payment of any of the Affiliated Companies' obligations, such as debt service or property taxes.  Miller Declaration ¶ 16.

32.     The Trustee's investigation, while still preliminary and ongoing and therefore subject to change, indicates that TFEC used the funds it obtained from business operations and investors to fund whatever the needs of the entire enterprise were at any given time.  Miller Declaration ¶ 17.

33.     The assets and business activities of TFEC and the Affiliated Companies have been treated as a single enterprise.  Trustee Declaration ¶ 19; Miller Declaration ¶ 18.

9

## The Affiliated Companies' Bankruptcy Filings

34.    After the TFEC Petition Date, the following Affiliated Companies filed cases seeking relief under Chapter 11 of the Bankruptcy Code: Elk Grove (July 16, 2018, Case No. 18-25208), Gilbert (July 25, 2018, Case No. 18-25419), McMinnville (July 27, 2018, Case No. 18-25492), St. George (September 6, 2018, Case No. 18-26653), Littleton (September 24, 2018, Case No. 18-27111), Fresno (October 15, 2018, Case No. 18-27713), Bricktown (October 17, 2018, Case No. 18-27766),[1] and Clovis (October 31, 2018, Case No. 18-28140) (collectively, with TFEC, the "Debtors").

35.    As the trustee of TFEC, the Trustee manages these Debtors as debtors in possession.  *See* ¶ 13, *supra.*

36.    To date, the following Affiliated Companies have not sought bankruptcy protection: Austin Bluffs, Burr Ridge, Cutten Road, Cedar Park, Stone Oak Parkway, Beaverton, Roseville, and Trolley (the "Non-Debtors").

## The Affiliated Companies Proposed for Consolidation

37.    Since his appointment as the Chapter 11 trustee of TFEC, which is the sole member of all the Affiliated Companies, the Trustee has engaged in investigation of TFEC and the Affiliated Companies.  Among other things, the Trustee has reviewed the books and records, transaction documents, and numerous other documents relating to the business operations and potential assets and liabilities of TFEC and the Affiliated Companies.  Trustee Declaration ¶ 3.

---

[1] The United States Trustee has recommended that this case be dismissed.  The Trustee did an investigation of the assets and liabilities of Bricktown and determined that there was no equity for unsecured creditors.  Accordingly, he has not contested the recommendation for dismissal.

38.     Based on his investigation, the Trustee has determined, in an exercise of his business judgment, that substantive consolidation of certain Debtor and Non-Debtor Affiliated Companies with TFEC as of the TFEC Petition Date is in the best interests of creditors and all parties in interest.  Trustee Declaration ¶ 20.

39.     Specifically, the Trustee has determined that (a) all of the Debtors, other than Elk Grove and Bricktown, should be substantively consolidated with TFEC; and (b) the following Non-Debtors should be substantively consolidated with TFEC: Austin Bluffs, Cutten Road, Stone Oak, Beaverton and Roseville (collectively, the Debtors and Non-Debtors to be consolidated with TFEC are the "Falls Parties").  Trustee Declaration ¶ 21.

40.     The Trustee has determined that there is no reason to consolidate Debtors Elk Grove and Bricktown because:

     a.     Elk Grove's real property was foreclosed on, and pursuant to an *Order Approving Stipulation and Joint Motion Under Bankruptcy Rule 4001(d)(4) for Approval of Settlement Agreement Concerning Motions for Relief from Stay Filed by Lender iBorrow, L.P.* [Docket No. 193], TFEC is now leasing the property on which its event center at that location is operated.

     b.     It is anticipated that Bricktown's Chapter 11 case will be dismissed and that its sole asset – real property – will be foreclosed on by a secured lender.

Trustee Declaration ¶ 22.

41.     The Trustee has determined that there is no reason to consolidate Non-Debtors Burr Ridge, Cedar Park, and Trolley because there is no economic benefit to do so.  Trustee Declaration ¶ 23.

11

4850-2710-2598\5

## Basis For and Benefit of Consolidation

42.     Trustee's decision to seek substantive consolidation of the Falls Parties is based on at least the following considerations.

43.     The evidence outlined above shows that the Fall Parties are alter egos of TFEC.

44.     Substantive consolidation would make it unnecessary to quantify and prosecute intercompany claims that may exist between TFEC and the Falls Parties, thus conserving considerable resources of the separate estates or entities.  For example, at this time, arguably, the Falls Parties on whose properties TFEC was conducting business have claims against TFEC for use of their properties, and TFEC has claims against each of Falls Parties for, among other things, costs of managing the Falls Parties and monies it used to purchase properties and pay the debts of the Falls Parties.  The cost of quantifying these claims will likely exceed any benefit that might result.  Among other things, (a) to the extent that TFEC may have claims against the Falls Parties, those Parties have no source of income to pay TFEC other than from any equity that may exist in their respective properties; (b) the Falls Parties' primary creditors are those claiming to hold claims secured by property, and therefore, any equity in the property will be paid to TFEC. Trustee Declaration ¶ 25; Miller Declaration ¶ 19.

45.     Substantive consolidation would resolve corporate governance and authority issues.  Trustee Declaration ¶ 26.

46.     For the Non-Debtor Falls Parties, substantive consolidation would allow the Trustee to include these entities in a reorganization or orderly liquidation, including the benefits associated with bankruptcy sale provisions and bankruptcy transparency.  Trustee Declaration ¶ 27.

4850-2710-2598\5

47.     Substantive consolidation would greatly streamline this case thus, among other things, reducing costs and delays related to separate administration, minimizing confusion by parties in interest created by the various cases (and non-cases), and consolidating noticing issues. Trustee Declaration ¶ 28.

48.     For all of these reasons, the Trustee has determined, in an exercise of his business judgment, that substantive consolidation of the Falls Parties with TFEC as of the TFEC Petition Date is in the best interests of creditors and all parties in interest.  Trustee Declaration ¶ 29.

49.     In so concluding, the Trustee has considered other alternatives, but has determined that, for the reasons outlined in ¶¶ 43-47 above, substantive consolidation is the most efficient way to maximize the value of assets for the benefit of creditors.  Appointment of a trustee for each of the Debtors may not be beneficial given that, in the absence of consolidation, one person likely could not serve as a trustee for TFEC and the Affiliated Companies.  Multiple trustees will greatly increase administrative costs to the determinant of all creditors.  Trustee Declaration ¶ 30.

### Notice

50.     The Trustee will give notice of the present Motion to all creditors and parties in interest.

4850-2710-2598\5

## RELIEF REQUESTED

Pursuant to 11 U.S.C. § 105(a),[2] the Trustee seeks to substantively consolidate the Falls Parties with TFEC as of the TFEC Petition Date.[3]

## ARGUMENT

The Trustee respectfully requests the entry of an Order substantively consolidating the Falls Parties with TFEC, with the consolidation being effective as of the TFEC Petition Date.  As discussed in Part I, this Court has the authority to substantively consolidate the Falls Parties with TFEC as requested.  Furthermore, consolidation is appropriate under applicable and binding law as discussed in Part II, and for the reasons set forth in Part III, consolidation should occur as of the TFEC Petition Date.  For all of these reasons, the Trustee requests that the Court grant the Motion and substantively consolidate the Falls Parties with TFEC as requested herein.

### I.    THE COURT HAS AUTHORITY TO SUBSTANTIVELY CONSOLIDATE THE FALLS PARTIES WITH TEFC

Substantive consolidation is an extraordinary remedy, arising out of federal common law for the purpose of advancing the equitable powers of the bankruptcy courts.[4]  The result is that "claims of creditors against separate debtors morph to claims against the consolidated survivor."[5] The Court of Appeals for the Tenth Circuit has stated:

---

[2] A *Motion Requesting Joint Administration and Procedural (But Not Substantive) Consolidation of Related Chapter 11 Cases* [Docket No. 86] was filed, seeking joint administration of the Debtors.  In response, all of the Debtors' cases were assigned (or reassigned) to the Honorable R. Kimball Mosier.  [Minute Entry 08/28/2018]. There has not been a request for substantive consolidation to date.

[3] The Trustee reserves the right to substantively consolidate with TFEC those Affiliated Companies not included herein at a later date, and by not seeking such relief at this time he is in no way making any admissions or waivers.
[4] *See* 11 U.S.C. § 105(a); *In re Owens Corning, Inc.*, 419 F.3d 195, 205, 208 & 216 (3d Cir. 2005); *see also In re George Love Farming, LC*, 366 B.R. 170, 180 (Bankr. D. Utah 2007) (Thurman, J.) (recognizing same).

[5] *Owens Corning*, 419 F.3d at 205.

4850-2710-2598\5

The power to consolidate authorizes the court to pierce the several corporate veils and to disregard the existence of the separate corporate entities. Thus where a corporation is a mere instrumentality or alter ego of the bankrupt corporation, with no independent existence of its own, equity would favor disregarding the separate corporate entities. It is, of course, proper to disregard a separate legal entity when such action is necessary to avoid fraud or injustice.[6]

"The bankruptcy court's power of substantive consolidation has been considered part of the bankruptcy court's general equitable powers since the passage of the Bankruptcy Act of 1898."[7] This power is widely accepted under the Bankruptcy Code,[8] including by this Court in reliance on the Tenth Circuit's decisions in *In re Gulfco Inv. Corp.*[9] and *Fish v. East,*[10] which were both decided under the Bankruptcy Act.

As set forth in Part II below, consolidating the Falls Parties with TFEC is appropriate in this case and, as discussed in Part III below, consolidating the Non-Debtor Falls Parties with TFEC as of the TFEC Petition Date is also appropriate.

---

[6] *Federal Deposit Ins. Corp. v. Hogan (In re Gulfco Inv. Corp.)*, 593 F.2d 921, 928-29 (10th Cir. 1979) (relying on *Fish v. East*, 114 F.2d 177, 191 (10th Cir. 1940)).

[7] *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 763 (9th Cir. 2000) (citing in part *Sampsell v. Imperial Paper & Color Corp.,* 313 U.S. 215, 219 (1941)).

[8] *See, e.g., Owens Corning,* 419 F.3d at 206-209 (discussing history and concluding that although extraordinary, "[n]o court has held that substantive consolidation is not authorized"); *Bonham*, 229 F.3d at 765 (same); *George Love Farming,* 366 B.R. at 180 (same); *see also In re Horsley*, No. 99-30458 JAB, 2001 WL 1682013, at *3 (Bankr. D. Utah Aug. 17, 2001) (Boulden, J.) (stating that the ability to order substantive consolidation was "implied from the bankruptcy court's general equitable powers"); *Heller v. Langenkamp (In re Tureaud)*, 59 B.R. 973, 975-77 (N.D. Okla. 1986) (affirming order consolidating individual debtor with non-debtor entities controlled by the debtor); *In re Mansfield Corp.*, Bankr. Case No. 02-28236 (Bankr. D. Utah) (Boulden, J.), Order Substantively Consolidating Cases [Docket No. 245].

[9] 593 F.2d at 921.

[10] 114 F.2d at 177.

4850-2710-2598\5

## II.  SUBSTANTIVE CONSOLIDATION OF THE FALLS PARTIES WITH TFEC IS APPROPRIATE UNDER APPLICABLE LAW

"The propriety of ordering substantive consolidation is primarily a factual question and is determined by a balancing of interests" of those seeking consolidation and those opposing it, if any.[11] In *Fish v. East,* the Tenth Circuit set forth the following ten factors to consider in a consolidation analysis:

(1)     The parent corporation owns all or majority of the stock of the subsidiary;

(2)     The parent and subsidiary corporations have common directors or officers;

(3)     The parent corporation finances the subsidiary;

(4)     The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;

(5)     The subsidiary has grossly inadequate capital;

(6)     The parent corporation pays the salaries or expenses or losses of the subsidiary;

(7)     The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;

(8)     In the papers of the parent corporation, and in the statements of its officers, the subsidiary is referred to as such or as a department or division;

(9)     The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; and

(10)    The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.[12]

---

[11] *Matter of Baker & Getty Fin. Servs., Inc.*, 78 B.R. 139, 142 (Bankr. N.D. Ohio 1987); *see In re F.A. Potts & Co.*, 23 B.R. 569 (Bankr. E.D. Pa. 1982).

[12] *Fish*, 114 F.2d at 191.

4850-2710-2598\5

In applying these factors, the Court in *Fish* concluded that consolidation of entities was appropriate because an insolvent parent had organized subsidiaries for the purpose of delaying or hindering creditors; the parent and the subsidiary were operated as a single enterprise, with property being hopelessly commingled and funds raised by one entity being indiscriminately used by both corporations; the subsidiary did not have an existence outside of the corporate family; the subsidiary had no employees; one individual dominated and managed both companies; and the subsidiary did not act independently and in the interest of the subsidiary.[13]

In *In re Horsley*, this Court stated: "The *Gulfco/Fish* criteria can be reduced into two general components: (1) the extent to which the entity to be substantively consolidated was managed or controlled by the debtor, and (2) whether the entity to be substantively consolidated had an economic existence independent from the Debtor."[14]

The *Gulfco/Fish* factors are met—in short, as noted in *Horsely*, the Falls Parties are controlled by common management and they have no economic existence separate and apart from each other.  These entities truly have been treated as a single enterprise.  *See* ¶ 33, *supra*.  Specifically --

- the Affiliated Companies are all wholly-owned subsidiaries of TFEC, ¶¶ 4, 7, *supra*;

- since their inception, TFEC and the Affiliated Companies have had common managers, and TFEC directs all actions of the Affiliated Companies, ¶ 8, *supra*;

- none of the Affiliated Companies ever had a source of income, ¶ 17, *supra*;

---

[13] *Id.* at 182, 185–86 & 189–91; *see Gulfco*, 593 F.2d at 928 (discussing these facts and distinguishing same in declining consolidation).

[14] *Horsley*, 2001 WL 1682013, at *4.

- the debts of the Affiliated Companies have been paid by TFEC, ¶ 18, *supra*;

- TFEC caused each of the Affiliated Companies to enter into real property loans, and any cash down payment or debt service on those loans was made from TFEC's funds, ¶ 19, *supra*;

- TFEC guaranteed or is otherwise obligated to pay many of the Affiliated Companies' loans, ¶ 20, *supra*;

- the business operations of the TFEC and the Affiliated Companies were operated on a consolidated basis, with the Affiliated Companies relying on TFEC for use of an office, employees, and management and there was no consideration provided for the same, ¶¶ 21 - 27, *supra*;

- there are no written contracts for TFEC's use of the Affiliated Companies' properties, ¶ 25, *supra*;

- the Affiliated Companies did not even have bank accounts prior to the TFEC Petition Date, and creditors of the Affiliated Companied were therefore paid on checks issued by TFEC using its accounts, ¶ 30, *supra*;

- TFEC and the Affiliated Companies have always filed consolidated tax returns and have consolidated financial records, ¶ 28, *supra*;[15]

---

[15] *See, e.g.*, *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 86 n.7 (3d Cir. 2003) (noting that many bankruptcy courts have used the *In re Vecco* seven-factor test to determine if substantive consolidate is appropriate, which test considers, among other factors, "the presence or absence of consolidated financial statements"); *In re Worldcom, Inc.*, 2003 WL 23861928, at *8 (Bankr. S.D.N.Y. 2003) (considering the filing of consolidated financials as a factor in determining whether debtors were operationally integrated for substantive consolidation purposes); *In re World Access, Inc.*, 301 B.R. 217, 253–56 (Bankr. N.D. Ill. 2003) (declining substantive consolidation but noting the filing of consolidated financials with the SEC as a factor in determining the debtors' public perception to creditors for substantive consolidation).

- accounting protocols typically used for separate entities were not followed, ¶¶ 30-32, *supra*; and

- cash was used by TFEC to fund whatever needs of the enterprise were at any given time, ¶ 32, *supra*.

In short, TFEC and the Affiliated Companies are alter egos. As a result of these facts, the Trustee has determined for the reasons set forth in ¶¶ 43 - 48 above that substantive consolidation of TFEC and the Falls Parties is appropriate and in the best interests of creditors and parties in interest. Substantive consolidation is the most efficient and best way to maximize the value of assets and distributions to creditors. *See* ¶¶ 48-49, *supra*.

## III.   CONSOLIDATION OF THE FALLS PARTIES WITH TFEC SHOULD BE EFFECTIVE AS OF THE TFEC PETITION DATE

Consolidation of the Falls Parties with TFEC should take place as of the TFEC Petition Date. The analysis of whether to order substantive consolidation *nunc pro tunc* "closely parallel[s]" the analysis of whether to substantively consolidate entities in the first place.[16] Courts have adopted two tests for *nunc pro tunc* consolidation, with the key factor under both tests being whether there was "reliance on an entity's apparent separateness."[17]

---

[16] *In re Bonham*, 226 B.R. 56, 99 (Bankr. D. Ala. 1998) (citing *In re Auto-Train Corp.*, 810 F.2d 270, 277 (D.C. Cir. 1987)), *aff'd*, 229 F.3d 750, 771 (9th Cir. 2000).

[17] *Bonham,* 226 B.R. at 99. The Trustee notes that in *United States v. AAPC, Inc. (In re AAPC, Inc.)*, 277 B.R. 785, 789 (Bankr. D. Utah 2002) (Clark, C.J.), the Court refused to allow the proposed consolidation of certain non-debtor individual and entities with a Chapter 11 debtor to be effective "*nunc pro tunc*" to the petition date. This decision was not a condemnation of *nunc pro tunc* relief, but rather a result of the fact that the party seeking consolidation had not specifically plead fraud and had not shown that notice of the proceeding had been served on all creditors of the targeted non-debtors. It was granted additional time to mend these procedural flaws. *See id.* at 790-91. In contrast to *AAPC*, the Trustee has and will submit detailed facts in support of substantive consolidation, and notice of the Motion will be served on all known creditors and investors of all affected entities.

The first test is established in *In re Auto-Train Corporation*[18] where the Court of Appeals for the D.C. Circuit held that *nunc pro tunc* consolidation requires the movant to show that such consolidation is necessary to achieve some benefit or avoid some harm. If this showing is made, *nunc pro tunc* consolidation will be allowed unless any opposing party proves that it relied on the separate credit of one of the entities to be consolidated **and** that the harm to it in shifting a filing date will outweigh the benefits of *nunc pro tunc* consolidation.[19]

The second test for *nunc pro tunc* consolidation was set forth by the Court of Appeals for the Sixth Circuit in *In re Baker & Getty Financial Srvcs., Inc.*[20] Under this test, the following two factors are considered in determining whether substantive consolidation should occur as of the petition date: (1) whether the creditors dealt with the consolidated entities as if they were the same, **or** (2) the affairs of the consolidated entities are so entangled that it would not be feasible to identify and allocate all of their assets and liabilities.[21]

The facts in this case support the view that substantive consolidation of Falls Parties should occur as of the TFEC Petition Date under either of these two tests. The Falls Parties had no corporate existence outside of the TFEC corporate group. The Falls Parties' affairs are so entangled with those of TFEC that it would be most efficient to consolidate them as of the TFEC Petition Date, which allows the Trustee to capture the Falls Parties' assets as assets of the consolidated estate.

---

[18] 810 F.2d 270 (D.C. Cir. 1987).

[19] *Id.* at 277.

[20] 974 F.2d 712 (6th Cir.1992).

[21] *Id.*

4850-2710-2598\5

## CONCLUSION

Accordingly, for all of the reasons stated above and any additional reasons provided in oral argument, the Trustee requests that the Court grant the Motion and order that (1) the Falls Parties be substantively consolidated with TFEC; and (2) the consolidation of the Falls Parties with TFEC occur as of the TFEC Petition Date.

DATED:  February 15, 2019

DORSEY & WHITNEY LLP

*/s/ Peggy Hunt*
Peggy Hunt
Michael F. Thomson
Jessica McKinlay
*Attorneys for Michael F. Thomson, Chapter 11 Trustee of The Falls Event Center, LLC*

4850-2710-2598\5

# EXHIBIT A

Daniel J. Wadley (10358)
wadleyd@sec.gov
Amy J. Oliver (8785)
olivera@sec.gov
Alison J. Okinaka (7954)
okinakaa@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, Utah 84101
Tel.  801-524-5796
Fax: 801-524-3558

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>PLAINTIFF,<br><br>v.<br><br>THE FALLS EVENT CENTER, LLC and STEVEN L. DOWN, an individual,<br><br>DEFENDANTS. | **COMPLAINT**<br><br><br>Case No.: 2:18-cv-00382-PMW<br><br>Magistrate Judge: Paul M. Warner |

Plaintiff, Securities and Exchange Commission (the "Commission"), for its Complaint against defendants The Falls Event Center, LLC ("The Falls") and Steven L. Down ("Down") (collectively, "Defendants") alleges as follows:

### INTRODUCTION

1.      This matter arises out of misrepresentations in the offer or sale of securities by The Falls and Down, its CEO and founder.  Down has raised approximately $120 million from approximately 300 investors for The Falls since 2011.

2.      The Falls builds and operates small event centers that can be rented for events such as parties and weddings.  Currently The Falls has eight open and operating event centers in five states.

3.      The Falls offers several investment options to prospective investors.  Most investors have invested in The Falls' convertible secured promissory notes (the "Notes").  The investments offered by The Falls, including the Notes, are securities.

4.      Down has solicited investments in The Falls by, among other things, making presentations to groups of prospective investors during continuing education seminars that he sponsors for dentists.

5.      In his presentations Down consistently represented that some or all of the event centers were and continued to be profitable.   Certain of Down's representations concerning the individual event centers were untrue, however.  The Falls' own accounting records indicate that, from inception through September 2017, the event centers have never been profitable on the basis of generally accepted accounting principles  ("GAAP").

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction by authority of Sections 20 and 22 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v].  Defendants, directly and indirectly, singly and in concert, have made use of the means and instrumentalities of interstate commerce and the mails in connection with the transactions, acts and courses of business alleged herein, certain of which have occurred within the District of Utah.

7.      Venue for this action is proper in the District of Utah under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], because certain of the transactions, acts, practices, and

courses of business alleged in this Complaint took place in this district and because Defendants reside in and transact business in this district.

8.      Defendants, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and courses of business alleged herein and in transactions, acts, practices, and courses of business of similar purport and object.

9.      Defendants' conduct took place in connection with the offer or sale of investments, including Notes, issued by The Falls, which are securities.

## DEFENDANTS

10.     The Falls Event Center, LLC is a Utah limited liability company with its principal office in West Jordan, Utah. It was formed by Down in 2011. The Falls opened its first event center in St. George, Utah in the fall of 2013. Its most recent center was opened in McMinnville, Oregon in March 2017.

11.     Steven L. Down, 60, is a resident of Draper, Utah. Down is the CEO of The Falls. From 2011 to the present, Down offered and sold investments to individuals either individually or through his entity The Falls.

## STATEMENT OF FACTS

12.     Down formed The Falls in 2011 as a Utah LLC.

13.     Down is the CEO of The Falls. He directs The Falls' operations and makes decisions regarding how The Falls raises and spends investor funds.

14.     The Falls opened its first event center in the fall of 2013 and currently has eight open and operating event center locations. The Falls typically purchases the land and constructs the event centers itself. The Falls also owns approximately 13 parcels of vacant land on which it plans to build new event centers.

3

15.     The currently open and operating locations are in Salt Lake City and St. George, Utah; Elk Grove, Fresno and Roseville, California; Littleton, Colorado; McMinnville, Oregon; and Gilbert, Arizona.

16.     The purchase and construction of the event centers is and has been financed through loans made by private investors, bearing interest rates of 10 to 14% per year. The Falls referred to these loans as "hard money" loans. The Falls obtained hard money loans because it was not able to obtain traditional bank financing at lower interest rates.

17.     The hard money loans are secured by mortgages on the event centers. As of September 30, 2017 the principal amount of these loans was $33.5 million.

18.     Down has located prospective investors by presenting his sales pitch for The Falls at continuing education seminars that he sponsored for dentists. During the seminar lunch break, Down gave his presentation regarding an investment in The Falls. Down's presentation, and the accompanying PowerPoint, has remained essentially the same for years.

19.     In his presentation, Down always represented that many if not all of the event centers were profitable even before they opened, because they were accepting event bookings before they opened. Down represented that that the event centers continued to be profitable after they opened. Down represented to investors that, after The Falls had 12 centers, it would be able to obtain institutional loans to replace the hard money loans.

20.     In his presentation, Down always stated that The Falls would have 200 event centers by 2022. He always represented that each event center would earn gross revenue of $1 million per year and cover expenses of approximately $650,000, leaving profit of approximately $350,000, or 35%, per year.

4

21.     In his presentation, Down always stated that therefore the 200 projected centers would bring in net income of $70 million per year, and that The Falls would achieve a price/earnings ration of 40, causing it to be worth $2.8 billion by the time it has 200 centers in 2022. He always forecasts that, after 2022, the company will either go public or be bought out.

22.     Prospective investors were often flown to Salt Lake City or to one of the other event centers, and given an opportunity to meet the executive team of The Falls. They were provided with the company's private placement memorandum, its current Business Plan Summary and its most recent quarterly investor newsletter.

23.     Investors usually invested in The Falls' Notes. As of September 30, 2017 The Falls had approximately $78 million in Notes outstanding. As of that date, accrued interest expense related to these Notes on the company's profit and loss statement was nearly $2 million.

24.     After investing, investors did not receive any updated disclosures from The Falls other than a quarterly investor newsletter that often included a letter from Down on recent events.

25.     The Falls maintained its books using QuickBooks software, which generates financial statements in accordance with GAAP. Beginning in approximately 2011, The Falls' chief financial officer ("CFO") provided Down with reports each month that included GAAP profit and loss statements for the individual event centers.

26.     In 2014, Down and other company executives decided to generate a new type of monthly profit and loss statement for the event centers, using the figure for event bookings instead of the GAAP revenue figure. They called these statements "modified accrual" profit and loss statements.

27.     Accordingly, at the direction of Down and the other executives, the CFO began preparing monthly profit and loss statements using bookings instead of GAAP revenue.

28.     The CFO e-mailed these statements in internal reports to Down and other executives almost every month from 2014 until the CFO left the company in March 2017.

29.     In his presentations to investors, Down did not disclose that The Falls was using "modified accrual" profit and loss statements.

30.     In the first half of 2016 the CFO attended an investor presentation by Down. After hearing the presentation he told Down that Down had to stop telling prospective investors that the centers were making a profit, because they were not doing so.

## MATERIAL MISREPRESENTATIONS AND OMISSIONS

31.     In a newsletter The Falls sent out between January and August 2014, Down stated: "The Falls at St. George is now profitable and gaining momentum. A monthly return on revenue of 35% is looking possible sometime this year!" According to The Falls' QuickBooks, however, St. George experienced a net operating loss in every month but one from January to August 2014. Over this period St. George had a net operating loss of $81,531. According to the "modified accrual" P&Ls, from January to August 2014, St. George had a net operating loss of $57,035, with only three out of eight months showing net profit.

32.     In a letter to investors included in an October 2015 investor newsletter, Down stated, "[w]e currently have five event centers operating; each one operating profitably." These five would have been St. George, Elk Grove (two buildings) and Fresno (two buildings). Through September 2015, however, QuickBooks shows that St. George lost $104,757; Elk Grove lost $657,261; and Fresno lost $102,682. On a "modified accrual" basis, this statement is false as to St. George and Elk Grove.

33.     Between February 2016 and December 2016, Down told four investors that the centers were profitable.  On a GAAP basis, for the 2016 year, however, the company's QuickBooks reflects that all centers had net losses.  On a "modified accrual" basis, for the 2016 year, only two out of the eight centers were profitable.

34.     In a presentation to a group of investors in January 2017 in Seattle, Down stated: ". . . we went into Elk Grove and built these two buildings.  These two buildings were profitable in month one. We're getting about 35 percent return this year."  On a GAAP basis, and even on a "modified accrual" basis, Down's claim that Elk Grove was "profitable in month one" was incorrect.  Elk Grove opened in November 2014.  For its first month, its net loss was $114,268. In its second month, its net loss was $84,186.  On a "modified accrual" basis, Elk Grove lost $67,689 in its first month and lost $52,813 in its second.

35.     In March 2017, Down told an investor that "the Fresno buildings were profitable in the first month."  On a GAAP basis, this statement is incorrect.  Fresno opened in August 2015.  In its first month, its net loss was $52,434.  Only on the "modified accrual" basis is this statement correct.  On that basis Fresno had net income of $12,914 in its first month.

### DOWN'S NEGLIGENCE

36.     Down was at least negligent in making representations to investors regarding the profitability of individual event centers.  Down was the CEO of The Falls and had ready access at all times to all its financial information.   In fact, profit and loss information was regularly provided to him by executives at The Falls.

37.     From the inception of The Falls until at least 2014, The Falls' CFO provided Down with a QuickBooks profit and loss statement for the event centers, prepared on a GAAP basis.

38.     Beginning in 2014 and continuing until March 2017, The Falls' CFO provided Down with "modified accrual" profit and loss statements for the event centers by e-mail every month.

39.     From the first half of 2016 forward, Down was informed on numerous occasions by members of his executive team at The Falls that the event centers were not profitable. They informed Down that the centers were not close to achieving $1 million in annual gross revenue or 35% profit per center, as Down was representing to investors. They informed Down that his event center model was unsustainable because of the huge amount of mortgage debt on the event centers and because of the tens of millions of dollars of Note principal and accrued interest.

40.     Down was at least negligent in not reviewing, or assimilating, the profit and loss information provided to him by The Falls' CFO, while continuing to make false representations to investors that the event centers were profitable.

41.     In his presentations to investors, Down did not disclose that The Falls was using "modified accrual" profit and loss statements. Down was at least negligent in not making these disclosures to investors.

42.     Either the GAAP profit and loss statements or the "modified accrual" profit and loss statements would have shown Down that he was mistaken in touting the profitability of the event centers in the course of raising money from investors.

**FIRST CAUSE OF ACTION**
**FRAUD IN THE OFFER OR SALE OF SECURITIES**
**Violations of Sections 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)]**
**by The Falls and Down**

43.     The Commission realleges and incorporates by reference the allegations contained in paragraphs 1 through 42 above.

44.     Defendants, by engaging in the conduct described above, directly and indirectly, in the offer and sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, engaged in transactions, practices, or courses of business which operate or would operate as a fraud or deceit upon the purchaser.

45.     By reason of the foregoing, Defendants, directly or indirectly, violated, and unless restrained and enjoined will continue to violate, Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2].

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court:

## I.

Issue findings of fact and conclusions of law that Defendants committed the violations charged herein.

## II.

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that temporarily, preliminarily, and permanently enjoin Defendants and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Section 17(a)(2) of the Securities Act.

## III.

Enter an order directing Defendants, and each of them, to pay civil money penalties pursuant to Section 20(d) of the Securities Act.

## IV.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

Dated May 10, 2018.

Respectfully submitted,


/s/ Daniel J. Wadley_____
Daniel J. Wadley
Amy J. Oliver
Alison J. Okinaka
Attorneys for Plaintiff
Securities and Exchange Commission

JS 44 (Rev. 06/17)                              **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| | |

| (b) County of Residence of First Listed Plaintiff _____ | County of Residence of First Listed Defendant _____ |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| | |

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                 Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: _____

Brief description of cause: _____

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**       *(See instructions):*

JUDGE _____          DOCKET NUMBER _____

DATE _____          SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____     AMOUNT _____     APPLYING IFP _____     JUDGE _____     MAG. JUDGE _____

JS 44 Reverse (Rev. 04/18)

**INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44**

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III. Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V. Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

v.

THE FALLS EVENT CENTER, LLC, and
STEVEN L. DOWN,

Defendants.

Case No.: 2:18-cv-00382-JNP

Judge Jill N. Parrish

## FINAL JUDGMENT AS TO DEFENDANTS THE FALLS EVENT CENTER, LLC AND STEVEN L. DOWN

The Securities and Exchange Commission (the "SEC") having filed a complaint and Defendants The Falls Event Center, LLC and Steven L. Down (collectively, "Defendants") having entered a general appearance; consented to the Court's jurisdiction and the subject matter of this action; consented to entry of this Final Judgment without admitting or denying the allegations of the complaint (except as to jurisdiction and as otherwise provided herein in paragraph V); waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendants are permanently restrained and enjoined from violating Section 17(a)(2) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)(2)] in the offer or sale of any security by the use

of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided by Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendants' officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendants or with anyone described in (a).

II.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant Steven L. Down shall pay a civil penalty in the amount of $150,000 to the SEC pursuant to Section 20 [15 U.S.C. § 77t] of the Securities Act. Down shall make this payment pursuant to the terms of the payment schedule set forth in paragraph III below after entry of this Final Judgment.

Down may transmit payment electronically to the SEC, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Down may also pay by certified check, bank cashier's check, or United States postal money order payable to the SEC, which shall be delivered or mailed to

Enterprise Services Center
Accounts Receivable Branch
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Down as a defendant in this action; and specifying that payment is made pursuant to

this Final Judgment.

Down shall simultaneously transmit photocopies of evidence of payment and case identifying information to the SEC's counsel in this action.  By making this payment, Down relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Down. The SEC shall send the funds paid pursuant to this Final Judgment to the United States Treasury. Down shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

III.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Down shall pay the penalty due of $150,000 in three installments to the SEC according to the following schedule: (1) $50,000 within 90 days of entry of this Final Judgment; (2) $50,000 within 150 days of entry of this Final Judgment; and (3) $50,000 within 210 days of entry of this Final Judgment. Payments shall be deemed made on the date they are received by the SEC and shall be applied first to post judgment interest, which accrues pursuant to 28 U.S.C. § 1961 on any unpaid amounts due after 14 days of the entry of the Final Judgment. Prior to making the final payment set forth herein, Down shall contact the staff of the SEC for the amount due for the final payment.

If Down fails to make any payment by the date agreed and/or in the amount agreed according to the schedule set forth above, all outstanding payments under this Final Judgment, including post-judgment interest, minus any payments made, shall become due and payable immediately at the discretion of the staff of the SEC without further application to the Court.

IV.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Defendants'
respective consents are incorporated herein with the same force and effect as if fully set forth
herein, and that Defendants shall comply with all of the undertakings and agreements set forth
therein.

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, solely for purposes of
exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the
allegations in the complaint are true and admitted by Defendants, and further, any debt for civil
penalty or other amounts due by Defendant Steven L. Down under this Final Judgment or any
other judgment, order, consent order, decree or settlement agreement entered in connection with
this proceeding, is a debt for the violation by Defendants of the federal securities laws or any
regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy
Code, 11 U.S.C. § 523(a)(19).

VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain
jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

Dated:  11 May 2018

_____
U.S. District Judge Jill N. Parrish