Michael F. Thomson (#9707)
Peggy Hunt (#6060)
DORSEY & WHITNEY LLP
111 South Main Street, 21st Floor
Salt Lake City, UT  84111-2176
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: thomson.michael@dorsey.com
        hunt.peggy@dorsey.com

*Attorneys for Michael F. Thomson, Chapter 11 Trustee*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>THE FALLS EVENT CENTER LLC; THE FALLS AT GILBERT, LLC; THE FALLS AT MCMINNVILLE, LLC; THE FALLS AT ST. GEORGE, LLC; THE FALLS AT FRESNO, LLC; THE FALLS AT CLOVIS, LLC; THE FALLS OF LITTLETON, LLC; THE FALLS AT CUTTEN ROAD, LLC; THE FALLS AT STONE OAK PARKWAY, LLC; THE FALLS AT BEAVERTON, LLC; AND THE FALLS AT ROSEVILLE, LLC<br><br>Consolidated Debtors. | Bankr. Case Nos.<br><br>18-25116; 18-25419; 18-25492; 18-26653; 18-27713; 18-28140; and 18-27111<br><br>(Substantively Consolidated under Case No. 18-25116)<br><br>Chapter 11<br><br>The Honorable R. Kimball Mosier |
| In re:<br><br>THE FALLS AT MCMINNVILLE, LLC<br><br>Debtor. | Bankr. Case No. 18-25492<br><br>Chapter 11<br><br>The Honorable R. Kimball Mosier |

4816-6682-6153\4

**CHAPTER 11 TRUSTEE'S MOTION TO SELL PROPERTY OUT OF THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF ALL INTERESTS
AND SUBJECT TO HIGHER AND BETTER OFFERS, TO MCMINNVILLE
PROPERTIES, LLC, PURSUANT TO 11 U.S.C. § 363(b), (f) and (m); APPROVAL OF
SALE PROCEDURES, INCLUDING A BREAK-UP FEE; AND WAIVER OF THE
STAY SET FORTH IN FED. R. BANKR. P. 6004(h)**

Michael F. Thomson, the duly appointed Chapter 11 Trustee (the "Trustee") of the

above-referenced substantively consolidated Debtors, hereby moves this Court for entry of an

*Order* approving the sale of certain real and personal property more fully described below to

McMinnville Properties, LLC ("Buyer") in accordance with and pursuant to the *Purchase and

Sale Agreement* (the "PSA") attached hereto as **Exhibit 1** and the *First Amendment to Purchase

and Sale Agreement* attached hereto as **Exhibit 2** ("PSA Amendment") (collectively, the

"Agreement"), free and clear of all interests and subject to higher and better offers, pursuant to

11 U.S.C. § 363(b), (f) and (m), and Rules 2002, 6004 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"). The Trustee also requests approval of the "Sale

Procedures" defined below, and waiver of the fourteen-day stay set forth in Bankruptcy Rule

6004(h). This Motion is supported by the Trustee's *Declaration* (the "Trustee Declaration"), and

the *Declaration of Eric W. Jamieson* (the "Jamieson Declaration"), filed concurrently herewith.

For the reasons set forth below, the Trustee respectfully requests that the Court grant this

Motion.

## I.      JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4816-6682-6153\4

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.      BACKGROUND

### A.      The Relevant Entities, the Trustee, and the Consolidated Estate

4.      The Falls Event Center LLC ("TFEC") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code[1] with this Court on July 11, 2018 (the "TFEC Petition Date"), captioned as Case No. 18-25116.

5.      The Falls at McMinnville, LLC ("McMinnville") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 27, 2018, thus commencing the above-captioned Case No.18-25492.

6.      On November 27, 2018, the Court entered an *Order* approving the appointment of the Trustee as the Chapter 11 trustee of the TFEC bankruptcy estate.[2]

7.      On April 9, 2019, the Court entered an *Order Granting Motion to Substantively Consolidate The Falls Event Center LLC with Debtors The Falls At Gilbert, LLC, The Falls At St. George, LLC, The Falls Of Littleton, LLC, The Falls At Fresno, LLC, and The Falls At Clovis, LLC; and Non-Debtors The Falls At Cutten Road, LLC, The Falls At Stone Oak Parkway, LLC, The Falls At Beaverton, LLC, and The Falls At Roseville, LLC;*[3] which resulted in the substantive consolidation of the named entities as of the TFEC Petition Date.

---

[1] Title 11 of the United States Code, 11 U.S.C. § 101 *et seq*.

[2] *See* TFEC Docket No. 214. Unless otherwise stated, all references herein to the Docket, shall be to the Docket in Case No. 18-25116.

[3] Docket No. 395.

8.      On July 30, 2019, a *Stipulated Order Substantively Consolidating The Falls at McMinnville, LLC With The Falls Event Center, LLC As to All Creditors and Parties In Interest Other Than the Evergreen Aviation and Space Museum and the Captain Michael King Smith Educational Institute*[4] was entered, substantively consolidating McMinnville as of the TFEC Petition Date as to all creditors other than the Evergreen Aviation and Space Museum and the Captain Michael King Smith Educational Institute (the "Museum").[5]

9.      As a result, the Trustee serves as the Chapter 11 Trustee of the consolidated bankruptcy estate of TFEC, The Falls at Gilbert, LLC, McMinnville, The Falls at St. George, LLC, The Falls of Littleton, LLC, The Falls at Fresno, LLC, The Falls at Clovis, LLC, The Falls at Cutten Road, LLC, the Falls at Stone Oak Parkway, LLC, The Falls at Beaverton, LLC, and The Falls at Roseville, LLC (collectively, the "Consolidated Debtors").

**B.    The Property**

**1.    The Land and Associated Museum Agreements**

10.     The Consolidated Debtors' estate includes certain real property, improvements and water rights, which are described as follows:

---

[4] Docket No. 520.

[5] Pursuant to a global settlement agreement with the Museum ("Museum Settlement") that the Trustee intends to file and seek approval of in conjunction with this Motion discussed briefly below, the Museum will agree to the substantive consolidation of McMinnville with TFEC as of the TFEC Petition Date upon the consummation of the Agreement with the Buyer, which is a condition precedent to the effectiveness of the Museum Settlement. Absent consummation of the Agreement with Buyer, the Museum has preserved the structural seniority of its claims against McMinnville as well as its claims against TFEC. Moreover, the Museum has not agreed to waive its statutory rights under 11 U.S.C. 365(h) with respect to any and all bidders—but rather has only agreed to waive such rights at this time with respect to the Buyer. *See* Museum Settlement (Term Sheet, Sections 5 and 12).

> [T]he real property consisting of approximately 285.5 acres located in Yamhill County, Oregon, and more particularly described on Exhibit A attached to the [PSA], any and all water rights attached thereto, and all improvements thereon, together with all and singular the rights and appurtenances pertaining to the property, including but not limited to any and all water rights associated with Water Right Certificate 22019, Water Right Certificate 57121 and Water Right Certificate 27910, and all right, title and interest of Sellers in and to parking, adjacent streets, easements, and rights of way (collectively the "Land").[6]

11.    The Land consists of five separate parcels of real property, which include, among other things, parcels containing (1) Wings & Waves Waterpark (the "Waterpark"), (2) a facility operated by the Museum known as the Space Building, (3) a building used by TFEC, (4) a vineyard, and (5) farmland. TFEC operates the Waterpark, which is a dba of TFEC, as well as an event center business on the Land. These operations have continued since the TFEC Petition Date.[7]

12.    There are several agreements with the Museum which are related to the Land and Personal Property (as defined below). Specifically, the Museum leases part of the Land known as the Space Building from McMinnville pursuant to a "Lease Agreement." In addition, TFEC, McMinnville, and the Museum are parties to the following agreements related to the Land or operations on the Land (together with Lease Agreement, the "Museum Agreements"): (a) the *Gift Donation and Security Agreement* between the Museum, McMinnville, and TFEC; (b) *Bank Directive Agreement* between the Museum, McMinnville, TFEC, and US Bank; (c) the *Campus Use Agreement* between the Museum and McMinnville; (d) an *Aircraft Loan & Display*

---

[6] Ex. 2 (PSA Amendment, Section 1, incorporating Ex. 1 (PSA, Ex. A)).

[7] Trustee Declaration, ¶ 5.

*Agreement* between the Museum and McMinnville; and (e) a *Waterpark Transition Agreement* between the Museum, TFEC, and McMinnville.[8]

13.    The sale proposed herein does not include the assumption of the Museum Agreements by the Trustee and assignment of the Museum Agreements to the Buyer, and it is a condition to closing that the Trustee must provide the Buyer with exclusive possession of the Land at the closing of the sale. Accordingly, the Trustee separately negotiated the Museum Settlement with the Museum. [9] Pursuant to the Museum Settlement, the Museum has agreed to waive—*in connection with the sale of the Property to this particular Buyer*—its statutory right under section 365(h)(1)(A)(ii) of the Bankruptcy Code to retain its possessory rights in the leasehold. As set forth in the Term Sheet that will be filed with the Trustee's motion to approve the Museum Settlement, the Museum has not agreed to waive its rights under section 365(h) in the event the Agreement with this Buyer does not close.[10]

### 2.    The Personal Property

14.    Another component of the assets comprising the Consolidated Debtors' estate is certain personal property, including several aircraft, located at or affiliated with the Land, described as follows:

> [A]ll personal property, including all aircraft, intellectual property rights related to the Land (including but not limited to the assumed business name "Wings & Waves Waterpark", and any and all domain names, websites and trademark/tradename registrations associated with "Wings & Waves Waterpark"), exhibits, intangibles, building systems (including all existing

---

[8] *Id.* at ¶ 6.

[9] *Id.* at ¶ 7.

[10] See Museum Settlement (Term Sheet, Section 12).

4816-6682-6153\4

security systems and CCTV), equipment, permits, and contracts rights[.][11]

(collectively, the "Personal Property" and together with the Land, the "Property").

15.    The Property being sold by the Trustee expressly excludes "any accounts, accounts receivable, cash, cash equivalents, or any deposits or prepayments held by, received by, or paid for the benefit of, [TFEC and McMinnville] (including, but not limited to, any and all payments made to, made through, or held by, a credit card, credit card processing company, or payment processing company)."[12] Also excluded from the Property being sold are special events contracts, and prepaid deposits relating to those contracts, that the Trustee executes prior to consummation of the Agreement with Buyer for which performance thereunder is due post-consummation. The Museum Settlement addresses how those special events contracts will be treated.

### C.    Marketing of the Property

16.    On April 30, 2019, the Court entered the *Order Granting Supplemental Application of Michael F. Thomson, Chapter 11 Trustee, for Entry of an Order Authorizing the Employment of Jones Lang Lasalle Americas, Inc., and Jones Lang Lasalle Brokerage, Inc., as Real Estate Broker for the Trustee*.[13]

17.    Since that time, JLL—an international commercial real estate brokerage—has actively marketed the Property at the Trustee's direction by, among other things, listing the

---

[11] Ex. 2 (PSA Amendment, Section 1); *see* Trustee Declaration ¶ 8.

[12] Ex. 2 (PSA Amendment, Section 1).

[13] Docket No. 413.

Property on national real estate listing services and in World Waterpark Association's magazine which is sent to all members, producing and distributing brochures to interested parties, actively tracking and discussing the Property with approximately 25 different interested parties, and showing the Land to interested parties.[14]

18.     JLL advised the Trustee that the Land had a value range of between $10,000,000 and $13,260,448.00. Using the high end of that value range, JLL allocated the following values to each of the five parcels:[15]

| Parcel No. | 1 | 2 | 3 | 4 | 5 | Total |
|---|---|---|---|---|---|---|
| JLL Opinion of Value | $7,345,000 | $44,431 | $1,061,122 | $2,151,211 | $2,658,685 | **$13,260,449**[16] |

19.     The offering and marketing of the Property has been complicated due to the size of the Land and the unique nature of the Property and its location (i.e., lack of proximity to major metropolis); lack of comparable sales transactions; the inaccurate former surveys related to the Land; the existence of the Museum Agreements and the complexity of the relationship with the Museum, as well as claims made by the Museum against TFEC and McMinnville and statutory rights that the Museum has under the Bankruptcy Code; perceived issues related to the condition of the Waterpark; and the issues related to various asserted liens on the Land.[17]

---

[14] Trustee Declaration, ¶ 9.

[15] *Id.* at ¶ 10.

[16] *See* Jamieson Declaration, ¶ 11.

[17] Trustee Declaration, ¶ 11.

20.     The Trustee received numerous expressions of interest in the Property, or certain parcels of the Land, including from the Buyer.[18]

21.     On or about April 1, 2019, the Buyer submitted a *Letter of Intent* to the Trustee initially offering $8,000,000 for the Property. The parties engaged in arms' length and good faith negotiations, and as discussed in further detail below, ultimately entered into the Agreement.[19]

22.     Tower Investments, LLC ("Tower") also submitted a *Letter of Intent* to the Trustee on or about May 13, 2019, proposing to purchase the Property for $2,500,000 in cash, plus the assumption of debt in the approximate amount of $1,400,000. The Trustee provided Tower with requested due diligence materials. As his negotiations with the Buyer advanced, he informed Tower of his intent to enter into the PSA with the Buyer and solicited an alternative offer. Tower informed the Trustee at that time of its intent to bow out of any proposed purchase of the Property.[20]

23.     The Land was also shown by JLL to several prospective purchasers, and the Trustee provided limited initial due diligence materials to at least one of these prospective purchasers. None of these expressions of interest resulted in an offer to purchase the Land.[21]

**D.     The Agreement**

24.     The Trustee determined in an exercise of his business judgment that Buyer presented the best offer he had received related to the Property, and accordingly, he commenced

---

[18] *Id.* at ¶ 12.

[19] *Id.* at ¶ 13; Jamieson Declaration, ¶¶ 4-5.

[20] Trustee Declaration, ¶ 14.

[21] *Id.* at ¶ 15.

4816-6682-6153\4

arms' length and good faith negotiations with Buyer to arrive at a definitive purchase agreement.[22]

25.      On or about August 7, 2019, the Trustee, on behalf of the TFEC and McMinnville, and Buyer (collectively, the "Parties"), entered into the PSA, a copy of which is attached hereto as **Exhibit 1**, subject to Court approval, pursuant to which Buyer agreed to purchase the Property for $10,000,000, subject to a 30-day Due Diligence Period. Pursuant to paragraph 2(b) of the PSA, the Parties agreed that any reduction of the $10,000,000 purchase price as a result of due diligence would not exceed $250,000.[23]

26.      In conjunction with the Buyer's due diligence, the Buyer employed Jeff Ellis Management LLC ("JEM"), an aquatic industry consultant, to provide an evaluation of the Waterpark. The Due Diligence Period set forth in the Agreement was extended at least two times, in part, to allow JEM time to complete its evaluation of the Waterpark. On or about September 10, 2019, JEM provided the Buyer a written *Park Assessment* based upon an inspection JEM performed on August 12, 2019, which the Buyer then provided to the Trustee (the "JEM Report").[24]

27.      As a result of the information in the JEM Report, the Buyer informed the Trustee during the Due Diligence Period that it would terminate the PSA as was its right under paragraph

---

[22] *Id.* at ¶ 16; Jamieson Declaration, ¶ 5.

[23] Ex. 1 (PSA, Sections 2, 8); Jamieson Declaration, ¶ 6

[24] Trustee Declaration, ¶ 18; Jamieson Declaration, ¶ 7.

4816-6682-6153\4

8, unless the Trustee agreed to an adjustment of the purchase price in excess of the $250,000 limit set forth in paragraph 2(b).[25]

28.    The Parties thereafter engaged in further extensive good faith and arms' length negotiations, and prior to the expiration of the extended Due Diligence Period, the Parties agreed to several amendments to the PSA, including a reduction of the purchase price to $9,500,000 (the "Purchase Price"), with the $500,000 reduction being allocated to the Waterpark parcel (Parcel 1) since the price reduction was a direct result of the JEM Report which noted various Waterpark repairs, including significant deferred maintenance, that JEM believed the Buyer would need to fund to operate the Waterpark. These agreements are memorialized in the PSA Amendment, a copy of which is attached hereto as **Exhibit 2**, which has an Effective Date of September 27, 2019.[26]

29.    In addition to adjusting the Purchase Price, the PSA Amendment to the PSA serves to further define the Property being sold and sets forth the Buyer's allocation of the Purchase Price as to each portion of the Property as follows:[27]

| Tax ID/Asset | Use | Parcel # | Allocation |
|---|---|---|---|
| R4423-TBD (east) | Space Building | 1 | $ 3,300,000 |
| R4423-0600 (west) | Waterpark/Lodge/Vineyard | 1 | $ 2,000,000 |
| R4423-0400 | Farmland | 5 | $ 1,570,000 |
| R4423-1400 | Vineyard/Farmland | 4 | $ 1,600,000 |
| R4423-1301 | Farmland/Hotel | 3 | $   350,000 |
| R4423-0800 | Vineyard/Farmland | 2 | $     40,000 |
| Canso PBY 5-A | Aviation Museum | N/A | $   150,000 |
| Cassutt Racer | Aviation Museum | N/A | $     10,000 |

---

[25] Trustee Declaration, ¶ 19; Jamieson Declaration, ¶ 8.

[26] Trustee Declaration, ¶ 20; Jamieson Declaration, ¶ 9; Ex. 2 (PSA Amendment).

[27] Ex. 2 (PSA Amendment, Sections 1-3); Jamieson Declaration 10; *see* Trustee Declaration, ¶ 20.

4816-6682-6153\4

| Ryan NYP - Spirit of St. Louis | Aviation Museum | N/A | $   75,000 |
| FW-190A Replica | Aviation Museum | N/A | $   75,000 |
| JN4 Curtis | Aviation Museum | N/A | $   10,000 |
| Ryan ST3KR #2161 | Aviation Museum | N/A | $   70,000 |
| Douglass DC-3A, N16070 | Aviation Museum | N/A | $  150,000 |
| Other Personal Property | Space Museum/Waterpark | N/A | $  100,000 |
| **Totals** | | | **$ 9,500,000** |

30.    In evaluating the Buyer's allocation of the Purchase Price, the Trustee considered, among other things, the Buyer's Purchase Price allocation set forth above and the valuation and allocation provided to him by JLL on the five land parcels. A comparison of these allocations, using the Purchase Price of $9,500,000 for the Property ($8,860,000 of which is attributable to the Land), is set forth immediately below. Based on this information, the Trustee determined that he would enter into the PSA Amendment.[28]

| Parcel No. | 1 | 2 | 3 | 4 | 5 | **Total** |
|---|---|---|---|---|---|---|
| JLL Opinion of Value | $4,684,530 | $31,362 | $749,002 | $1,518,450 | $1,876,655 | **$8,859,999** |
| Buyer Allocation | $5,300,000 | $40,000 | $350,000 | $1,600,000 | $1,570,000 | **$8,860,000** |

31.    The sale of the Property as set forth in the Agreement is subject to Court approval, is subject to higher and better offers, and is AS IS, WHERE IS with no representations or warranties other than those expressly set forth in the Agreement.[29] In the event of a higher and

---

[28] Trustee Declaration, ¶ 22.

[29] Ex. 1 (PSA, Section 6).

4816-6682-6153\4

better offer that becomes a winning bid, the Agreement provides for a break-up fee to the Buyer, which is discussed in great detail in Section II.F below.[30]

32.      Finally, the sale of the Property set forth in the Agreement requires the Trustee to provide the Buyer exclusive possession of the Land at closing of the sale, which the Trustee will be able to facilitate as a result of the Museum Settlement.[31]

**E.      The Sale of the Property Free and Clear of Interests, Liens and Encumbrances**

33.      The Trustee is seeking to sell the Property free and clear of all liens, encumbrances, and interests under section 363(f) of the Bankruptcy Code, and in conjunction therewith, the Trustee has conducted an investigation to determine what, if any, interests exist against the Property. A summary of recorded interests are set forth below.

**1.      Interests Asserted Against the Personal Property**

34.      The Trustee conducted UCC searches of TFEC and McMinnville.

35.      A UCC search for McMinnville shows that there are three UCC-1 statements filed that may apply to the Personal Property: (a) a UCC-1 listing the Museum as a secured party, filed on December 27, 2017; (b) a UCC-1 listing Moss Gregory as the secured party filed on February 5, 2018; and (c) a UCC-1 listing Yamhill County as the secured party filed on July 20, 2018. Copies of these filings are attached to the Trustee Declaration as Exhibit 1.

36.      A UCC search for TFEC shows that there are three UCC-1 statements filed against TFEC that may apply to the Personal Property: (a) a UCC-1 listing Corporation Service

---

[30] Ex. 1 (PSA, Section 9(d)).

[31] Ex. 1 (PSA, 10(a(ii))); *see* Trustee Declaration, ¶ 33.

4816-6682-6153\4

Company, as Representative, as the secured party, filed on January 16, 2018, (b) a UCC-1 listing

GTR Source LLC as the secured party, filed on January 24, 2018, and (c) a UCC-1 listing GTR

Source LLC as the secured party, filed on July 13, 2018. Copies of these filings are attached to

the Trustee Declaration as Exhibit 2.

37.    Additionally, the Trustee conducted lien searches on the aircraft identified as

Personal Property in the Agreement. Gregory Steven Moss has filed notices of an interest in the

Douglass DC-31A-S1C3G and the Canso PBY 5-A, related to his asserted claim in the amount

of $259,375.00. Copies of these search results are attached to the Trustee Declaration as Exhibit

3.

38.    Notice of the Motion will be provided to all parties noted above who have

asserted interests against the Personal Property.

### 2.    Interests Asserted in the Land

39.    Based on the Preliminary Report issued by First American Title Company (the

"Title Report") obtained in conjunction with the proposed sale, a copy of which is attached to the

Trustee Declaration as Exhibit 4, the Trustee has determined that the following liens and

interests are asserted against the Land, or certain of the five parcels of the Land:

(a)    A Deed of Trust recorded August 16, 2016 in favor of Scott A. Gould, a

single man, in the principal amount of $2,200,000.00 (Parcel 1 and a portion of Parcel 4);

(b)    A Deed of Trust recorded December 21, 2016 in favor of Union Home

Loan (various beneficiaries Union") in the principal amount of $3,000,000.00 (Parcels 1,

2, and 4);

(c)     A Deed of Trust recorded November 27, 2017, in favor of Elizabeth Pia Barth, in the principal amount of $100,000.00 (Parcels 1-4);

(d)     A Deed of Trust recorded November 27, 2017, in favor of Norman Rousseve, in the principal amount of $100,000.00 (Parcels 1-4);

(e)     A Deed of Trust recorded November 27, 2017, in favor of Albert Anthony Perencin, Trustee of the Albert Anthony Perencin Revocable Trust, in the principal amount of $150,000.00 (Parcels 1-4);

(f)     A Deed of Trust recorded November 27, 2017, in favor of Jean Kempner, in the principal amount of $100,000.00 (Parcels 1-4);

(g)     A Deed of Trust recorded December 15, 2017, in favor of Meilin Liu, an individual (fka Sam Son Exchange) and AmeriAsian Funding, LLC, in the principal amount of $3,026,744.57 (Parcels 1-5);

(h)     A Deed of Trust recorded January 31, 2018 in favor of Walter R. Stickel, an individual (fka W.R. and E.M Stickel Family 1986 Revocable Trust) and Walt Stickel Body & Frame Shop Inc., in the principal amount of $2,209,116.65 (Parcels 1-5);

(i)     A Deed of Trust recorded January 31, 2018, in favor of Brent Davies Pulley, an individual (fka The Brent D. Pulley Revocable Trust dated January 13, 2006) and Brent D. Pulley DMD LTD, in the principal amount of $1,020,900.00 (Parcels 1-5);

(j)     A County Tax Warrant recorded July 3, 2018, in the principal amount of $13,956.56; and

15

       (k)      Estimated taxes in the amount of $1,187,165.00.[32]

40.     Notice of the Motion will be provided to all parties noted above who have asserted interests against the Land.

### F.    Sale Subject to Higher and Better Offers and the Sale Procedures

41.     To ensure that the highest and best price for the Property is obtained, the sale of the Property to the Buyer is subject to higher and better offers, with the Buyer's offer serving as a stalking horse bid.[33]

42.     As discussed above, the Trustee received interest from several potential buyers, and notice of this Motion, including the bidding procedures discussed herein, will be served on all parties who have expressed an interest in the Property. In addition, such notice of the Motion will be served on all parties in interest in this case, including those who have asserted an interest in the Property.[34]

43.     As part of making this sale subject to higher and better offers, the Trustee is proposing certain procedures as set forth in ¶¶ 44-51 immediately below, including authority to pay a break-up fee to the Buyer as described below (the "Break-Up Fee") in the event that a higher and better offer is received and accepted at auction and the Property is sold to a different

---

[32] Trustee Declaration, Ex. 4 (Title Report). The Trustee has determined that the Deeds of Trust identified in subsections (g); (h); and (i) are invalid or avoidable, and he has filed Complaints against these parties seeking appropriate relief. *See* Adv. Pro. Nos. 19-02117, 19-02118, and 19-02119.

[33] *See* Ex. 1 (PSA, Section 9(c)).

[34] Trustee Declaration, ¶ 27.

4816-6682-6153\4

buyer. These procedures and the Break-Up Fee comprise the "Sale Procedures" for which the Trustee is requesting approval.[35]

44.      The Trustee submits that in his business judgment the proposed Sale Procedures are fair and reasonable given the circumstances in this case and will produce the highest and best offer for the Property.[36]

45.      If the Trustee receives an offer for the Property that he deems, in his sole and absolute discretion, to be higher and better and meets the criteria set forth immediately below (a "Qualified Offer"), then the Trustee will give written notice to the Buyer, as well as to any other parties that have submitted a Qualified Offer, of his intent to conduct an auction of the Property.

46.      To be a Qualified Offer, the offer must: (a) be submitted to the Trustee in writing so that it is **received by the Trustee and his undersigned counsel by no later than October 31, 2019 at 4:00 p.m. (Mountain Time)** (the "Bid Deadline"); (b) be in an amount that is higher and better than the offer memorialized in the Agreement; and (c) be accompanied with proof of ability to pay for the Property and a deposit of at least $150,000 in certified funds. Buyer's current offer under the Agreement is deemed to be a Qualified Offer.

47.      Any auction of the Property will be conducted by the Trustee on **November 4, 2019 at 10:00 a.m. (Mountain Time)** at the offices of Dorsey & Whitney LLP, 111 South Main Street, Suite 2100, Salt Lake City, Utah 84111.

---

[35] *Id.* at ¶ 27; Jamieson Declaration ¶ 12.

[36] Trustee Declaration, ¶ 28.

48.     If no Qualified Offers are received by the Trustee prior to the Bid Deadline, the Trustee shall not conduct an auction and Buyer shall be the Buyer of the Property for purposes of this Motion.

49.     In the event of an auction, no offer will be deemed to be a winning bid unless the person making the offer has submitted a Qualified Offer prior to the Bid Deadline, and the person attends the auction in person or by telephone. Arrangements may be made to attend telephonically.

50.     Also, in the event of an auction, the Trustee shall determine, in his sole and absolute discretion, which offer made at the auction constitutes the highest and best offer, including consideration of the Break-Up Fee discussed immediately below. Immediately thereafter, the Trustee shall report the results of the auction by filing a *Notice of Auction Sale* with the Court, and it will be the sale to the winning auction bidder for which Court approval shall be sought pursuant to this Motion.

51.     The Buyer is a stalking horse bidder, and pursuant to the Agreement, in the event of a higher and better offer, a Break-Up Fee of 3% of the purchase price obtained at auction applies.[37] The Trustee maintains that the Break-Up Fee is fair and reasonable given the circumstances of this case, fairly compensates the Buyer for serving as a stalking horse bidder, and does not unfairly restrict bidding in this case.[38]

---

[37] Ex. 1 (PSA, Section 9(d)).

[38] Trustee Declaration, ¶ 29.

18

### G.   **Good Faith Sale and Best Interest of the Estate**

52.     The Trustee and Buyer have negotiated the Agreement in good faith and at arms'

length, and Buyer is a good faith purchaser within the meaning of section 363(m) of the

Bankruptcy Code.[39]

53.     The Trustee is not aware of any collusion with regard to the sale that would

prevent the sale under section 363(n) of the Bankruptcy Code.[40]

54.     The Trustee has no relationship with the Buyer, and he has no knowledge of any

relationship between the Buyer and the Consolidated Debtors or their former management.[41]

55.     As set forth above, the Trustee has negotiated the Museum Settlement with the

Museum which, among other things, will allow the Trustee to provide exclusive possession of

the Property to the Buyer at closing as required under paragraph 3(c) of the PSA. With the

exception of the treatment of the Museum Agreements in the PSA, the terms of the respective

Agreements were negotiated by me with each party separately and in good faith and at arms'

length.[42]

56.     The sale of the Property as proposed in the Agreement is, in the Trustee's

business judgment, in the best interests of creditors and the consolidated estate and, therefore,

should be approved.[43]

---

[39] Trustee Declaration, ¶ 30; Jamieson Declaration, ¶ 5, 13.

[40] Trustee Declaration, ¶ 31; *see* Jamieson Declaration ¶ 14.

[41] Trustee Declaration, ¶ 32; *see* Jamieson Declaration ¶ 15.

[42] Trustee Declaration, ¶ 33; *see* Jamieson Declaration ¶ 15.

[43] Trustee Declaration, ¶ 34.

4816-6682-6153\4

57.     The Purchase Price for the Property is fair and reasonable.[44]

58.     The Land consists of five separate parcels, each varying substantially in value. The Trustee has considered selling the parcels separately and as a group, and has determined that selling the parcels together in one transaction is the best way to maximize the value of the Property for the benefit of all parties in interest. Thus, in his business judgment, selling all five parcels as part of one transaction will result in the greatest net return to the Consolidated Debtors' estate.[45]

59.     Additionally, the Trustee believes that selling the Property as a going concern will result in the best overall value and result for creditors and the consolidated estate.[46]

60.     Finally, the Trustee submits that selling the Property pursuant to the Agreement is in the best interests of creditors and the consolidated estate given the short due diligence required by the Buyer for real property of this type and the ability to sell the Property to a buyer that will facilitate a global settlement with the Museum. These factors will greatly assist the Trustee in most efficiently and expeditiously administering the consolidated estate for the benefit of creditors.[47]

---

[44] *Id.* at ¶ 35.

[45] *Id.* at ¶ 36.

[46] *Id.* at ¶ 37.

[47] *Id.* at ¶ 38.

### H.   <u>Proposed Disbursements to be Made at Closing</u>

61.     Assuming that this Motion is granted and the Court approves the Agreement and sale of the Property, the Trustee is seeking authority to disburse the gross sale proceeds obtained by the sale.

62.     The Trustee intends to pay all ordinary and customary closing costs, including JLL's commission, which will be limited to 3% of $8,860,000, which is the portion of the Purchase Price allocated to the sale of the Land. The Trustee will also pay outstanding real property taxes.

63.     The Trustee also intends to pay all holders of undisputed secured claims from the net sale proceeds to the extent there is sufficient equity in the respective collateral to do so. To the extent that there are disputes with claims asserted by secured claimholders, the Trustee will hold the net sale proceeds attributed to that claimant's collateral in reserve pending a determination as to the allowance of the claimant's secured claim.

## III.   <u>RELIEF REQUESTED</u>

By this Motion, the Trustee seeks the entry of an Order:

(a)     Approving the Agreement and the proposed sale of the Property, free and clear of interests to the Buyer or the highest and best offeror, free and clear of interests pursuant to section 363(b), (f) and (m) of the Bankruptcy Code.

(b)     Approval of the Sale Procedures, including authority to pay Buyer the Break-Up Fee in the event that a Qualified Offer other than Buyer's offer is accepted as the highest and best bid at auction and such sale closes, and waiver of the fourteen-day stay set forth in Bankruptcy Rule 6004(h).

4816-6682-6153\4

(c)      Authority to pay from the gross sale proceeds customary and ordinary costs of sale, including JLL's commission, as well as taxes. The Trustee also seeks authority to pay undisputed secured claims from the proceeds of the Purchase Price attributed to the collateral in question, and hold proceeds attributed to disputed interests pending a determination as to the validity and amount of disputed claims.

(d)      Waiver of the 14-day stay set forth in Bankruptcy Rule 6004(h).

IV.    **ANALYSIS**

A.    **The Sale of the Property Out of the Ordinary Course of Business Pursuant to the Sale Procedures Is Warranted And Both the Sale Procedures and the Sale Should be Approved**

Section 363(b)(1) of the Bankruptcy Code provides that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

In order to approve a sale of a debtor's assets outside the ordinary course of business, the Trustee must show that: (a) a sound business reason exists for the sale; (b) there has been adequate and reasonable notice to interested parties, including full disclosure of the sale terms and the Debtor's relationship with the buyer; (c) the sale price is fair and reasonable; and (d) the proposed buyer is proceeding in good faith.[48]

Here, the proposed sale pursuant to the Agreement and the Sale Procedures set forth herein meet all four factors. Accordingly, the Trustee respectfully submits that the Sale Procedures and the proposed sale should be approved. The Trustee should be authorized to enter

---

[48] *See In re Med. Software Sols.*, 286 B.R. 431, 439–40 (Bankr. D. Utah 2002).

4816-6682-6153\4

into the Agreement with the Buyer, or a person who submits a Qualified Offer that is determined

by the Trustee to be the highest and best Qualified Offer at auction. In the event that a higher and

better Qualified Offer is accepted at auction and such sale closes, the Trustee should also be

authorized to pay the Break-Up Fee to the Buyer.

### 1.      Sound Business Purpose

Courts show great deference to a trustee's decisions.[49] Additionally, a "presumption of

reasonableness" attaches to the decisions of those controlling a debtor.[50]

The Trustee submits that the proposed sale of the Property pursuant to the above terms

and Sale Procedures is based on sound business judgment, and the Trustee has made an

independent and informed decision based on his knowledge of the Property that the proposed

sale terms and Sale Procedures are the best way to maximize the Property's value for the benefit

of the Debtors' creditors, produce a good faith sale of the Property, and minimize further costs to

the consolidated estate. Accordingly both the sale and the Sale Procedures should be approved.[51]

The Trustee, after his evaluation of the Consolidated Debtors and their assets, has

concluded that selling the Property as a going concern and pursuant to the Sale Procedures is the

best means to maximize value for the Consolidated Debtors' estate.[52] The Land has been

marketed by a well-established and experienced broker. The Buyer's offer of $9,500,000.00 is

---

[49] *See Summit Land Co. v. Allen* (*In re Summit Land Co.*), 13 B.R. 310, 315 (Bankr. D. Utah 1981)

[50] *In re John-Mansville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986).

[51] Trustee Declaration, ¶ 39.

[52] *Id.* at ¶ 37.

4816-6682-6153\4

the highest and best offer that the Trustee has received, and is the only offer currently known to the Trustee. Accordingly, the Trustee submits that the sale of the Property for $9,500,000.00, subject to higher and better offers, is in the best interest of the consolidated estate.[53]

Selling the Property now pursuant to the Sale Procedures is beneficial to all parties in interest. Specifically, the Trustee is mindful of the continued accrual of interest on certain debts secured by the Land, which erodes equity in the Property, and the continued expense of operating the business on the Land.[54] Selling the Property now to this Buyer also results in the Museum Settlement with the Museum which resolves numerous motions the Museum has filed, including one requesting relief from stay related to the Property.[55] The proposed Sale Procedures have been formulated by the Trustee to ensure that he obtains the highest and best offer for the Property.[56]

Based thereon, the Trustee asserts that there is a sound business purpose for the proposed sale of the Property to the Buyer pursuant to the Sale Procedures.[57]

---

[53] *Id.* at ¶ 40.

[54] *Id.* at ¶ 41. The Trustee has entered in a stipulation with Union related to its motion seeking relief from stay with regard to its lien against Land parcels 1, 2, and 5 noted above. Pursuant to this stipulation, the Trustee must close the sale of the Land prior to the end of 2019. McMinnville Docket Nos. 124-126.

[55] *See* Docket Nos. 267, 362; McMinnville Docket Nos. 26, 44.

[56] Trustee Declaration, ¶ 42.

[57] *Id.* at ¶ 43.

24

### 2. Notice of the Proposed Sale and Sale Procedures Is Appropriate

The Trustee also respectfully submits that he is providing adequate and reasonable notice of this Motion and the Sale Procedures to interested parties, including full disclosure of the material sale terms and the fact that the Trustee has no relationship with Buyer.

The Trustee will serve concurrently with filing the Motion a *Notice of Opportunity for Hearing* upon (a) all creditors and parties-in-interest; (b) all parties who have requested notice in this case; (c) all parties identified in UCC statements and on the Title Report as holding an alleged interest in the Property; (d) all known persons that could potentially claim an interest in the Personal Property; (e) all persons who have expressed an interest in purchasing the Property; (f) tax agencies related to the Property; and (g) the office of the United States Trustee.

The *Notice of Opportunity Hearing* provides, among other things, (a) a description of the Property and a general overview of the material terms of the Agreement; (b) notice of the deadline to object to this Motion; and (c) notice of the Sale Procedures, including the procedures for submitting a Qualifying Offer for the Property, the Bid Deadline, and of the Break-Up Fee.

Based thereon, the Trustee submits that he is providing adequate and reasonable notice of the sale and the Sale Procedures in compliance with section 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002 and 6004.

### 3. Fair and Reasonable Price

The Trustee believes in an exercise of his business judgment that the proposed sale of the Property to the Buyer has produced a sales price that is fair and reasonable.[58] Furthermore, the Sale Procedures set forth herein, including the proposed notice of the Motion and the request for

---

[58] *Id.* at ¶ 35.

4816-6682-6153\4

higher and better offers prior to the Bid Deadline, will ensure that the highest and best price will be obtained for the Property.[59]

Finally, the Trustee maintains that the Break-Up Fee is reasonable in light of the amount of this transaction and the circumstances of this case.[60]

### 4.    Good Faith Purchaser

The Property will be sold to a good faith purchaser. Although the Bankruptcy Code does not define "good faith," the Court of Appeals for the Tenth Circuit has determined that, in the context of section 363(m) of the Bankruptcy Code, a "good faith" purchaser is "one that buys in good faith, and for value."[61] Actions that destroy a purchaser's good faith include "fraud, collusion between the purchaser and other bidders or trustee, or an attempt to take grossly unfair advantage of other bidders."[62]

As set forth above, the Trustee is not aware of any collusion with regard to the sale that would prevent the sale under section 363(n) of the Bankruptcy Code, he has no relationship with the Buyer, and he has no knowledge of any relationship between the Buyer and the Consolidated Debtors or their former management.[63] The Trustee and Buyer have negotiated the Agreement through their respective counsel in good faith and at arm's length, and Buyer is a good faith

---

[59] *Id.* at ¶ 41.

[60] *Id.* at ¶ 29.

[61] *Tompkins v. Frey (In re Bel Air Assocs., Ltd.)*, 706 F.2d 301, 304, (10th Cir. 1983).

[62] *Id.* at 305 n. 11 (citation omitted); *see also In re Lotspeich*, 328 B.R. 209 (10th Cir. BAP 2005).

[63] Trustee Declaration, ¶ 32.

4816-6682-6153\4

purchaser within the meaning of section 363(m) of the Bankruptcy Code.[64] Moreover, the sale of

the Property to the Buyer is subject to higher and better offers. Thus, if the Trustee receives a

Qualified Offer, the Sale Procedures make certain that the Property is sold for a fair and

reasonable value to a good faith purchaser.[65]

Thus, the Trustee submits that the Buyer is a good faith purchaser within the meaning of

section 363(m) of the Bankruptcy Code.[66]

**B.**     **The Sale of the Property Free and Clear of Interests Is Appropriate**

Section 363(f) of the Bankruptcy Code states that a trustee may sell estate property free

and clear of interests, if:

  (1)     applicable non-bankruptcy law permits the sale of such property free and
          clear of such interest;

  (2)     such entity consents;

  (3)     such interest is a lien and the price at which such property is to be sold is
          greater than the aggregate value of all liens on such property;

  (4)     such interest is in bona fide dispute; or

  (5)     such entity could be compelled, in a legal or equitable proceeding, to
          accept a money satisfaction of such interest.

Because section 363(f) is in the disjunctive, the satisfaction of any one of the requirements

enumerated therein will warrant the Trustee's proposed sale of the Property free and clear of any

and all interests.

---

[64] *Id.* at ¶ 30; *see also*, Jamieson Declaration, ¶¶ 5, 13.

[65] Trustee Declaration, ¶ 28.

[66] *Id.* at ¶ 30.

4816-6682-6153\4

Here, the Trustee is requesting to sell the Property free and clear of all liens, claims, encumbrances, or interests, including any that may be asserted after notice of his Motion. The Trustee seeks authority to pay, at closing, the amount of the valid liens and encumbrances, to the extent there is sufficient equity in the respective collateral to do so, and any costs of sale. All secured creditors are adequately protected by the proposed sale inasmuch as liens, to the extent valid, will attach to the net sale proceeds.

To the extent that any party claiming an interest in the Property objects to the sale, the Trustee maintains that the sale may nonetheless be approved under section 363(f)(1), (3), (4) or (5).

### C.   Waiver of Fourteen-Day Stay Under Bankruptcy Rule 6004(h)

Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of an order. The purpose of this Rule is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented.[67]

Cause exists in this case to waive the Bankruptcy Rule 6004(h) stay. It is in the interest of creditors and the estate that the sale be consummated as quickly as possible without any stay pending appeal in light of the financial condition of the estate and the ongoing expense to the estate in continuing to operate the Property. Expedited consummation of the sale will preserve the maximum going concern value for the Property and will minimize the ongoing operational costs to the benefit of the estate.

---

[67] *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

4816-6682-6153\4

Moreover, as set forth above, the Trustee will provide adequate notice of this Motion and the relief requested therein, to all of its creditors and other parties-in-interest, and therefore any person having any objection to the Motion will be afforded a reasonable opportunity to voice any objections or concerns. Accordingly, the Trustee is aware of no prejudice that would be caused by the Court's waiver of Bankruptcy Rule 6004(h) and, therefore, requests that the Court's order provide that the stay is waived.

**V.**     **CONCLUSION**

WHEREFORE, the Trustee requests that the Court enter an Order:

A.      After notice of this Motion pursuant to 11 U.S.C. § 363(b) and (f) and Federal Rule of Bankruptcy Procedure 6004, approving the Agreement and the sale of the Property to the Buyer or to a person making a higher and better offer pursuant to a Qualified Offer, free and clear of liens, claims, encumbrances, or interests of any sort whatsoever against the Property.

B.      Finding that the Buyer or the person making a higher and better offer pursuant to a Qualified Offer is a "good faith" purchaser pursuant to 11 U.S.C. § 363(m).

C.      Approving the Sale Procedures set forth herein, and authorizing the Trustee to pay the Break-Up Fee to the Buyer in the event that a higher and better offer by another buyer is accepted at auction and such sale closes.

D.      Authorizing the Trustee to pay the customary and ordinary costs of sale associated with the closing of the sale of the Property, including closing costs, JLL's commission, and taxes associated with the Property. The Trustee also requests authority to pay all uncontested secured claims from the net sale proceeds to the extent there is

4816-6682-6153\4

sufficient equity in the respective collateral to do so. To the extent any dispute exists as to the allowance of any secured claim, the Trustee will hold the sale proceeds attributed to the Property in question.

      E.     Waiving the fourteen-day stay imposed by Federal Rule of Bankruptcy Procedure 6004(h) so that the sale may occur as soon as possible.

      F.     Granting such other and further relief as is just and proper.

DATED this 11th day of October, 2019.

**DORSEY & WHITNEY LLP**

*/s/ Peggy Hunt*
Peggy Hunt
Michael F. Thomson
*Attorneys for Chapter 11 Trustee*

30

**<u>CERTIFICATE OF SERVICE – BY NOTICE OF ELECTRONIC FILING (CM/ECF)</u>**

I hereby certify that on the 11th day of October, 2019, I electronically filed the foregoing **CHAPTER 11 TRUSTEE'S MOTION TO SELL PROPERTY OUT OF THE ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF ALL INTERESTS AND SUBJECT TO HIGHER AND BETTER OFFERS, TO MCMINNVILLE PROPERTIES, LLC PURSUANT TO 11 U.S.C. § 363(b), (f) AND (m); APPROVAL OF SALE PROCEDURES, INCLUDING A BREAK-UP FEE; AND WAIVER OF THE STAY SET FORTH IN FED. R. BANKR. P. 6004(h)** with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF uses and will be served through the CM/ECF system.

- James W. Anderson    jwa@clydesnow.com, mmann@clydesnow.com;atrujillo@clydesnow.com
- Megan K Baker    baker.megan@dorsey.com, long.candy@dorsey.com
- David P. Billings    dbillings@fabianvancott.com, jwinger@fabianvancott.com;mdewitt@fabianvancott.com
- Aaron T. Brogdon    aaron.brogdon@squirepb.com, christopher.giaimo@squirepb.com
- Doyle S. Byers    DSByers@hollandhart.com, BKNoble@hollandhart.com
- Ryan C. Cadwallader    rcadwallader@kmclaw.com, tsanders@kmclaw.com
- Laurie A. Cayton tr    laurie.cayton@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov
- Micah L. Daines    micah@dainesjenkins.com
- Christopher J. Giaimo
- Thomas E. Goodwin    tgoodwin@parrbrown.com, nmckean@parrbrown.com
- Oren Buchanan Haker    oren.haker@stoel.com, kevin.mckenzie@stoel.com;daniel.kubitz@stoel.com;docketclerk@stoel.com;rene.alvin @stoel.com;kc.hovda@stoel.com
- Mark E. Hindley    mehindley@stoel.com, rnoss@stoel.com;slcdocket@stoel.com;Dixie.colson@stoel.com
- Alan C. Hochheiser    ahochheiser@mauricewutscher.com
- Armand J. Howell    armand@hwmlawfirm.com, meghan@hwmlawfirm.com;armandh@ecf.courtdrive.com
- Mary Margaret Hunt    hunt.peggy@dorsey.com, long.candy@dorsey.com
- Michael R. Johnson    mjohnson@rqn.com, docket@rqn.com;dburton@rqn.com
- Peter J. Kuhn tr    Peter.J.Kuhn@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov
- Ralph K. Mabey    rmabey@kmclaw.com
- Jessica G. McKinlay    mckinlay.jessica@dorsey.com, Segovia.Maria@dorsey.com
- John T. Morgan tr    john.t.morgan@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov
- Darren B. Neilson    darren@neilsonlaw.co
- Ellen E. Ostrow    ellen.ostrow@stoel.com, Stephanie.hore@stoel.com;docketclerk@stoel.com

31

- Brian J. Porter     brian@hwmlawfirm.com
- Chad Rasmussen     chad@alpinalegal.com, contact@alpinalegal.com
- Steven M. Rogers     srogers@roruss.com,
  nrussell@roruss.com;rorusslaw@gmail.com;paralegal@roruss.com
- Jeffrey B. Smith     jsmith@cgsattys.com
- Michael S. Steck     michael@clariorlaw.com
- Mark S. Swan     mswan@strongandhanni.com, mark@swanlaw.net
- Richard C. Terry     richard@tjblawyers.com, cbcecf@yahoo.com
- Michael F. Thomson     thomson.michael@dorsey.com,
  montoya.michelle@dorsey.com;ventrello.ashley@dorsey.com
- Michael F. Thomson tr     thomson.michael@dorsey.com,
  UT17@ecfcbis.com;montoya.michelle@dorsey.com
- United States Trustee     USTPRegion19.SK.ECF@usdoj.gov
- John J. Wiest     wiest.john@dorsey.com
- Marlon L. Bates     marlon@scalleyreading.net, emily@scalleyreading.net


_/s/John J. Wiest_____

4816-6682-6153\4