Michael F. Thomson (#9707)
Megan K. Baker (#15086)
John J. Wiest (#15767)
DORSEY & WHITNEY LLP
111 South Main Street, 21st Floor
Salt Lake City, UT 84111-2176
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: thomson.michael@dorsey.com
       baker.megan@dorsey.com
       wiest.john@dorsey.com

*Attorneys for Michael F. Thomson, Chapter 11 Trustee*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| In re: | |
|---|---|
| THE FALLS EVENT CENTER LLC; THE FALLS AT GILBERT, LLC; THE FALLS AT MCMINNVILLE, LLC; THE FALLS AT ST. GEORGE, LLC; THE FALLS AT FRESNO, LLC; THE FALLS AT CLOVIS, LLC; THE FALLS OF LITTLETON, LLC; THE FALLS AT CUTTEN ROAD, LLC; THE FALLS AT STONE OAK PARKWAY, LLC; THE FALLS AT BEAVERTON, LLC; THE FALLS AT ROSEVILLE, LLC; AND THE FALLS AT AUSTIN BLUFFS, LLC<br><br>Consolidated Debtors. | Bankr. Case Nos.<br><br>18-25116; 18-25419; 18-25492; 18-26653; 18-27713; 18-28140; 18-27111; and 19-27803<br><br>(Substantively Consolidated under Case No. 18-25116)<br><br>Chapter 11<br><br>The Honorable R. Kimball Mosier |

## CHAPTER 11 TRUSTEE'S MOTION TO APPROVE STIPULATION WITH NORTH AMERICAN BANCARD, LLC, PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

Pursuant to Federal Rule of Bankruptcy Procedure 9019, Michael F. Thomson, the duly appointed Chapter 11 Trustee (the "Trustee") of the above-referenced substantively consolidated estate (the "Consolidated Estate"), by and through counsel, moves this Court for entry of an *Order* approving the *Stipulation Regarding Release of Reserve Funds and Termination of*

*Merchant Services Agreement* (the "Stipulation") attached hereto as **Exhibit 1** between, on the one hand, the Trustee, in his capacity as the Chapter 11 Trustee of the Consolidated Estate, and on the other hand, North American Bancard, LLC ("NAB"). The Trustee and NAB shall be referred to together herein as the "Parties." This Motion is supported by the *Declaration of Michael F. Thomson, Chapter 11 Trustee*, filed contemporaneously herewith (the "Thomson Declaration"). In further support hereof, the Trustee states as follows:

I. **JURISDICTION AND VENUE**

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

II. **BACKGROUND**

A. **The Bankruptcy Cases**

4. On July 11, 2018, The Falls Event Center LLC ("TFEC") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court"), thus commencing Case No. 18-25116 (Bankr. D. Utah) (the "TFEC Case").

5. On November 27, 2018, the Bankruptcy Court entered an *Order* in the TFEC Case authorizing the appointment of the Trustee as the Chapter 11 Trustee of the TFEC bankruptcy estate. TFEC Docket No. 214.

6. On April 9, 2019, July 30, 2019, and January 22, 2020, the Bankruptcy Court entered *Orders* substantively consolidating numerous affiliated entities with TFEC to create the Consolidated Estate. TFEC Docket Nos. 395, 520, 721.

B. **TFEC's Agreements Related to NAB**

7. Prior to the commencement of its bankruptcy case, TFEC entered into that certain *Merchant Service Agreement* dated November 17, 2017 (the "Merchant Agreement"), between TFEC and Global Payments Direct, Inc. ("Global"), pursuant to which certain credit card merchant services are provided to TFEC related to TFEC's entry into contracts (the "Customer Contracts") to host special events for its customers at its various properties (the "Customer Events").

8. Global assigned to NAB certain rights under the Merchant Agreement, including the right to seek reimbursement for certain debts owing from TFEC to Global referred to in the Merchant Agreement as "chargebacks" ("Chargebacks"). Pursuant to the Merchant Agreement, NAB established and maintained a certain Reserve Account to secure TFEC's performance of obligations under the Merchant Agreement, including TFEC's obligation to indemnify NAB for its liability for the Chargebacks.

9. Since the Trustee's appointment, TFEC has continued to enter into Customer Contracts and accepted deposits and prepayments under the Merchant Agreement to host Customer Events.[1]

---

[1] Thomson Declaration ¶ 4.

3

10. Due to the Trustee's liquidation of the assets of the Consolidated Estate, including certain locations at which TFEC hosted Customer Events, the number of Customer Contracts has declined, and in or about September 2019, at the Trustee's request, NAB ceased funding the Reserve Account from credit card deposits for Customer Contracts.[2]

11. On or about December 18, 2019, at the direction of NAB, $121,598.47 was released from the Reserve Account to the Consolidated Estate.[3]

12. As of March 31, 2020, the amount held in the Reserve Account was $75,000.00 (the "Reserve Funds").[4]

13. The Trustee has requested that NAB turnover the Reserve Funds to the Consolidated Estate.[5]

14. NAB maintains that, pursuant to the Merchant Agreement, it retains an interest in the Reserve Funds to secure TFEC's continuing indemnity obligations to NAB for Chargebacks.[6]

15. On March 27, 2020, the Bankruptcy Court entered its *Order* [Docket No. 835] authorizing the Trustee to sell the last remaining property of the Consolidated Estate upon which

---

[2] *Id.* at ¶ 5.
[3] *Id.* at ¶ 6.
[4] *Id.* at ¶ 7.
[5] *Id.* at ¶ 8.
[6] *Id.* at ¶ 9.

4839-5586-3994\2

TFEC hosts Customer Events (the "McMinnville Property"), and on April 14, 2020, the sale of the McMinnville Property closed.[7]

16.  The Parties entered into good faith and arms'-length negotiations and agreed to enter into the Stipulation to resolve and compromise the claims which may exist between them pursuant to the terms of the Stipulation.[8]

### III.  TERMS OF THE STIPULATION

17.  The following is a summary of the material terms of the Stipulation[9]:

a)  The Trustee shall cease processing Customer Contracts under Merchant Agreement on behalf of the Consolidated Estate.

b)  NAB shall release the Reserve Funds to the Trustee as follows:

i)  $41,000.00 upon execution of the Stipulation;

ii)  $14,000.00 on or about the date that is 60 days after NAB receives written notice from the Trustee that the last Customer Event has been held in the year 2020, provided there are no Chargebacks during this period;

iii)  $14,000.00 on or about the date that is 120 days after NAB receives written notice from the Trustee that the last Customer Event has been held in the year 2020, provided there are no Chargebacks during this period;

---

[7] *Id.* at ¶ 10.

[8] *Id.* at ¶ 11.

[9] *See* Ex. 1 (Stipulation).

4839-5586-3994\2

    iv) $3,000.00 on or about the date that is 60 days after NAB receives written notice from the Trustee that the last Customer Event has been held, provided there are no Chargebacks during this period;

    v) $3,000.00 on or about the date that is 120 days after NAB receives written notice from the Trustee that the last Customer Event has been held, provided there are no Chargebacks during this period (the "<u>Final Reserve Payment</u>").

  c) Upon payment of the Final Reserve Payment, the Merchant Agreement shall be terminated and be of no longer force or effect.

  d) The Parties will provide a release of claims, as set forth in the Stipulation.

## IV. <u>ANALYSIS</u>

Federal Rule of Bankruptcy Procedure 9019 provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."[10] The Trustee respectfully submits that this Motion should be granted and the Stipulation should be approved.[11]

Settlements and compromises "are favored in bankruptcy."[12] "The purpose behind compromises is to allow the trustee and creditors to avoid the expenses and burdens associated

---

[10] Fed. R. Bankr. P. 9019(a).

[11] Thomson Declaration ¶ 12.

[12] *Korngold v. Loyd (In re Southern Med. Arts Cos.)*, 343 B.R. 250, 255 (B.A.P. 10th Cir. 2006) (*quoting* 10 COLLIER ON BANKRUPTCY ¶ 9019.01, at 9019-2 (Alan N. Resnick & Henry J. Sommer eds., 15th rev. ed. 2006)).

with litigating sharply contested and dubious claims."[13] A court's decision to approve a Stipulation "must be an informed one based upon an objective evaluation of developed facts."[14] However, "it is not necessary for a bankruptcy court to conclusively determine claims subject to a compromise, nor must the court have all of the information necessary to resolve the factual dispute, for by so doing, there would be no need of settlement."[15] Thus, "in approving a settlement, the . . . court is not required to conduct a 'mini-trial' on the merits."[16] "Rather, the obligation of the court is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."[17]

The Bankruptcy Appellate Panel for the Tenth Circuit established the following four factors (referred to as the "*Kopexa* Factors") that bankruptcy courts should consider in determining the propriety of a settlement for purposes of approval under Bankruptcy Rule 9019:

(1) the probable success of the underlying litigation on the merits;

(2) the possible difficulty in collection of a judgment;

(3) the complexity and expense of the litigation; and

---

[13] *Southern Med. Arts*, 343 B.R. at 255 (*quoting Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377, 1380–81 (9th Cir. 1986)).

[14] *Reiss v. Hagmann*, 881 F.2d 890, 891-92 (10th Cir. 1989).

[15] *In re Dennett*, 449 B.R. 139, 145 (Bankr. D. Utah 2011); *accord Martin v. Cox (In re Martin)*, 212 B.R. 316, 319 (B.A.P. 8th Cir. 1997); Collier on Bankruptcy ¶ 9019.02 (16th ed. 2012) [hereinafter, "Collier"].

[16] *In re Armstrong*, 285 B.R. 344 at *3 (B.A.P. 10th Cir. 2002) (table decision); *accord Dennett*, 449 B.R. at 145 ("[T]he Court is not required to hold a mini-trial on the issues involved in the case being compromised."); Collier (a bankruptcy judge is not required "to hold a full evidentiary hearing or even a 'mini trial' before a compromise can be approved. Otherwise, there would be no point in compromising; the parties might as well go ahead and try the case.").

[17] *Dennett*, 449 B.R. at 145 (citations omitted); Collier (same) (citations omitted).

4839-5586-3994\2

(4) the interest of creditors in deference to their reasonable views.[18]

As discussed below, an evaluation of the *Kopexa* Factors demonstrates that the Stipulation is fair, equitable, and in the best interests of the creditors of the Consolidated Estate. Thus, the Court should grant this Motion and enter an Order approving the Stipulation.

### A. Probability of Success of Litigation on the Merits

The first *Kopexa* Factor requires the Court to consider the probable success of the underlying litigation on the merits. While the Trustee believes he eventually would obtain a release of the Reserve Funds if he were to litigate any dispute with NAB, a release of the full amount of the Reserve Funds likely could not occur until after the final Customer Event has been held. Thus, given the inherent risks, delay, and expense of any litigation, the Trustee believes he has obtained a favorable result for the Consolidated Estate by entering into the Stipulation and obtaining a release of the Reserve Funds from NAB voluntarily. Based thereon, the Trustee maintains that this factor is satisfied.[19]

### B. Possible Difficulty in Collection of Judgment

The second *Kopexa* Factor requires the Court to consider the possible difficulty in collecting any judgment against the parties. If the Trustee were to obtain a judgment against NAB for the Reserve Funds, and NAB refused to voluntarily pay the judgment, the Trustee would need to resort to collection actions. All of this would take significant time and expense. In

---

[18] *C.K. Williams, Inc. v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020, 1022 (B.A.P. 10th Cir. 1997); *see Am. Employers' Ins. Co. v. King Resources Co.*, 556 F.2d 471, 478-79 (10th Cir. 1977) (applying 10-factor test for approval of settlement); *see also Southern Med. Arts*, 343 B.R. at 257 n.5 (recognizing that the *Kopexa* Factors collapse and take into consideration the 10-point test established in *King Resources*).

[19] Thomson Declaration ¶ 13.

4839-5586-3994\2

contrast, under the Stipulation, the Consolidated Estate will receive the majority of the Reserve Funds ($41,000.00 of the total $75,000.00) immediately, another $28,000.00 in less than a year, and the remainder of the Reserve Funds ($6,000) in the months thereafter. The Trustee believes the Stipulation provides a favorable outcome to the Consolidated Estate now and in the near future with little cost to the Consolidated Estate. Accordingly, this factor is satisfied.[20]

### C. Complexity and Expense of Litigation

The third *Kopexa* Factor requires the Court to consider the complexity and expense of any litigation. The issues relating to the Merchant Agreement and TFEC's liability for Chargebacks are complicated, and the Trustee believes settling with NAB at this time achieves a favorable outcome for the Consolidated Estate while avoiding the expense and inherent risk of litigation. Accordingly, settlement of the disputes is appropriate.[21]

### D. Interest of Creditors

The final *Kopexa* Factor looks at the interests of creditors in deference to their reasonable views. The Trustee asserts that the Stipulation is fair, reasonable, and in the best interest of creditors. Under the Stipulation, the Consolidated Estate will receive the majority of the Reserve Funds immediately and most of the remainder in less than a year, with little expense to the Consolidated Estate without the risk and expense of litigation and subsequent collection or enforcement actions. Therefore, the final *Kopexa* factor weighs in favor of the Stipulation.[22]

## V. CONCLUSION

---

[20] *Id.* at ¶ 14.

[21] *Id.* at ¶ 15.

[22] *Id.* at ¶ 16.

4839-5586-3994\2

For the reasons discussed above, the Trustee respectfully requests the Court to grant this Motion and enter an *Order* approving the Stipulation under Bankruptcy Rule 9019.

DATED this 21st day of April, 2020.

**DORSEY & WHITNEY LLP**

*/s/ John J. Wiest*
Michael F. Thomson
Megan K. Baker
John J. Wiest
*Attorneys for Chapter 11 Trustee*

**<u>CERTIFICATE OF SERVICE – BY NOTICE OF ELECTRONIC FILING (CM/ECF)</u>**

       I hereby certify that on the 21st day of April, 2020, I electronically filed the foregoing **CHAPTER 11 TRUSTEE'S MOTION TO APPROVE STIPULATION WITH NORTH AMERICAN BANCARD, LLC, PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019** with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF users and will be served through the CM/ECF system.

- James W. Anderson    jwa@clydesnow.com, mmann@clydesnow.com;atrujillo@clydesnow.com
- Megan K Baker    baker.megan@dorsey.com, long.candy@dorsey.com
- Marlon L. Bates    marlon@scalleyreading.net, emily@scalleyreading.net
- David P. Billings    dbillings@fabianvancott.com, jwinger@fabianvancott.com;mdewitt@fabianvancott.com
- Aaron T. Brogdon    aaron.brogdon@squirepb.com, christopher.giaimo@squirepb.com
- Doyle S. Byers    DSByers@hollandhart.com, BKNoble@hollandhart.com
- Ryan C. Cadwallader    rcadwallader@kmclaw.com, twhite@kmclaw.com
- Laurie A. Cayton tr    laurie.cayton@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov
- Micah L. Daines    micah@dainesjenkins.com
- Thomas E. Goodwin    tgoodwin@parrbrown.com
- Oren Buchanan Haker    oren.haker@stoel.com, kevin.mckenzie@stoel.com;daniel.kubitz@stoel.com;docketclerk@stoel.com;kc.hovda@stoel.com
- Mark E. Hindley    mehindley@stoel.com, rnoss@stoel.com;slcdocket@stoel.com;Dixie.colson@stoel.com
- Alan C. Hochheiser    ahochheiser@mauricewutscher.com
- KC L. Hovda    kc.hovda@stoel.com
- Armand J. Howell    armand@hwmlawfirm.com, meghan@hwmlawfirm.com;armandh@ecf.courtdrive.com
- Mary Margaret Hunt    huntp@gtlaw.com, longca@gtlaw.com
- Michael R. Johnson    mjohnson@rqn.com, docket@rqn.com;swilliams@rqn.com
- Peter J. Kuhn    Peter.J.Kuhn@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov
- Ralph R. Mabey    rmabey@kmclaw.com
- Jessica G. McKinlay    mckinlay.jessica@dorsey.com, Segovia.Maria@dorsey.com
- John T. Morgan    john.t.morgan@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov
- Darren B. Neilson    darren@neilsonlaw.co
- Brian J. Porter    bporter@mbt-law.com, judianne@ecf.courtdrive.com
- Chad Rasmussen    chad@alpinalegal.com, contact@alpinalegal.com
- Steven M. Rogers    srogers@roruss.com, nrussell@roruss.com;rorusslaw@gmail.com;paralegal@roruss.com;la@roruss.com

4839-5586-3994\2

- Mark C. Rose    mrose@mbt-law.com, markcroselegal@gmail.com
- Nicholas R. Russell    nrussell@roruss.com, paralegal@roruss.com;rorusslaw@gmail.com;srogers@roruss.com;la@roruss.com
- Jeffrey B. Smith    jsmith@cgsattys.com
- Michael S. Steck    michael@clariorlaw.com
- Mark S. Swan    mswan@strongandhanni.com, mark@swanlaw.net
- Richard C. Terry    richard@tjblawyers.com, cbcecf@yahoo.com
- Michael F. Thomson    thomson.michael@dorsey.com, UT17@ecfcbis.com;montoya.michelle@dorsey.com
- Michael F. Thomson    thomson.michael@dorsey.com, montoya.michelle@dorsey.com;ventrello.ashley@dorsey.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov
- John J. Wiest    wiest.john@dorsey.com

*/s/ John J. Wiest*

12

4839-5586-3994\2

# Exhibit 1

## STIPULATION REGARDING RELEASE OF RESERVE FUNDS AND TERMINATION OF MERCHANT SERVICES AGREEMENT

THIS STIPULATION REGARDING RELEASE OF RESERVE FUNDS AND TERMINATION OF MERCHANT SERVICES AGREEMENT (this "Stipulation") is made and entered into as of this 13th day of April, 2020, by and between Michael F. Thomson, in his capacity as the Chapter 11 Trustee for The Falls Event Center LLC ("TFEC") and its affiliated debtors in the consolidated Bankruptcy Case (as defined below) (the "Trustee"), on the one hand, and North American Bancard, LLC ("NAB"), on the other hand. The Trustee and TFEC on the one hand, and NAB on the other, are sometimes individually referred to herein as a "Party," and are collectively referred to as the "Parties."

WHEREAS, TFEC, its bank and Global Payments Direct, Inc. ("Global"), are parties to that certain Merchant Service Agreement dated November 17, 2017 (the "Merchant Agreement") pursuant to which certain credit card merchant services are provided to TFEC related to TFEC's entry into contracts (the "Customer Contracts") to host special events for its customers at its various properties ("Customer Events");[1]

WHEREAS, pursuant to that certain Amended and Restated Merchant Agreement between Global and NAB dated June 13, 2002, as further amended, Global assigned to NAB certain rights under the Merchant Agreement, including, but not limited to, the right to seek reimbursement for certain debts owing from TFEC to Global referred to in the Merchant Agreement as "chargebacks" ("Chargebacks");

WHEREAS, pursuant to the Merchant Agreement, NAB established and maintained a certain Reserve Account to secure TFEC's performance of obligations under the Merchant Agreement, including, but not limited to, TFEC's obligation to indemnify NAB for its liability for Chargebacks (the "Reserve Account");

WHEREAS, beginning on July 11, 2018 and continuing through October 15, 2018 (collectively, the "Petition Date"), TFEC and its affiliates (collectively, the "Debtors") filed seven voluntary petitions for relief under Chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court"), which cases are substantively consolidated and currently pending as Case No. 18-25116 (the "Bankruptcy Case");

WHEREAS, the Trustee, on behalf of TFEC, has continued to enter into Customer Contracts after the Petition Date through, among other things, the acceptance of deposits and prepayments under the Merchant Agreement to host Customer Events;

WHEREAS, the number of Customer Contracts has declined because of the Trustee's liquidation of certain locations at which TFEC hosted Customer Events;

---

[1] For purposes of this Stipulation, Customer Contracts and Customer Events shall mean only those for which deposits, prepayments or payments were processed under the Merchant Agreement.

- 1 -

**WHEREAS**, in or about September, 2019, at the Trustee's request, NAB ceased funding the Reserve Account from credit card deposits for Customer Contacts;

**WHEREAS**, on or about December 18, 2019, at the direction of NAB, One Hundred Twenty One Thousand Five Hundred Fifty Eight and 47/100 Dollars ($121,598.47) was released from the Reserve Account to TFEC's estate;

**WHEREAS**, as of March 31, 2020, the amount held in the Reserve Account is Seventy Five Thousand Dollars ($75,000.00) (the "Reserve Funds");

**WHEREAS**, the Trustee has requested turnover of the remaining Reserve Funds to the Debtors' consolidated estate;

**WHEREAS**, NAB maintains that, pursuant to the Merchant Agreement, it retains an interest in the remaining Reserve Funds to secure, among other things, TFEC's continuing indemnity obligations to NAB for Chargebacks;

**WHEREAS**, on March 27, 2020, the Bankruptcy Court entered an Order Granting Motion to Sell Property Free and Clear of Liens Under Section 363(f) (the "Sale Order") which authorized the Trustee, on behalf of the consolidated estates, to sell the last remaining property upon which TFEC hosts Customer Events (the "McMinnville Property"); and

**WHEREAS**, the Parties are desirous of resolving and settling any and all interests and claims between the Trustee and NAB related to the Reserve Funds.

**NOW, THEREFORE**, for and in consideration of the foregoing recitals, the mutual covenants and conditions herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned Parties **HEREBY AGREE AS FOLLOWS**:

1. <u>Ceasing of Entry into Customer Contracts</u>. Upon the later of, April 15, 2020 or the closing of the sale of the McMinnville Property and transfer of title thereof, the Trustee, on behalf of the Debtors' consolidated estates, shall immediately cease processing Customer Contracts under the Merchant Agreement.

2. <u>Release of Remaining Reserve Funds</u>. NAB shall release the Reserve Funds to the Trustee as follows:

    (i) Forty One Thousand Dollars ($41,000.00) upon full execution of this Stipulation;

    (ii) Fourteen Thousand Dollars ($14,000.00) on or about the date that is sixty (60) days after receipt of written notice from, or on behalf of, the Trustee, that the last Customer Event has been held in the year 2020, provided that there are no Chargebacks during this period;

    (iii) Fourteen Thousand Dollars ($14,000.00) on or about the date that is one hundred and twenty (120) days after receipt of written notice from, or on

       behalf of, the Trustee, that the last Customer Event has been held in the year 2020, provided that there are no Chargebacks during this period;

  (iv)  Three Thousand Dollars ($3,000.00) on or about the date that is sixty (60) days after receipt of written notice from, or on behalf of, the Trustee that the last Customer Event has been held, provided that there are no Chargebacks during this period;

  (v)  Three Thousand Dollars ($3,000.00) on or about the date that is one hundred and twenty (120) days after receipt of written notice from, or on behalf of, the Trustee that the last Customer Event has been held, provided that there are no Chargebacks during this period (the "Final Reserve Payment").

  (vi)  Notwithstanding the foregoing, NAB reserves the right, in its sole discretion, to release funds after a Chargeback, provided there are no additional Chargebacks within sixty (60) days of the originally scheduled release dates provided in the foregoing provisions.

3.    Termination. Upon payment of the Final Reserve Payment, the Merchant Agreement shall be terminated and be of no longer force or effect. Prior to termination as provided herein, the Merchant Agreement shall not be assumed nor assigned to any party, including, but not limited to, the Purchaser or the Museum, both as defined in the Sale Order, nor shall NAB be under any obligation to provide any services under the Merchant Agreement to any third party.

4.    Taxability. NAB does not make and has not made any representations regarding the taxability of the Final Reserve Payment to the Trustee pursuant to this Stipulation. The Trustee represents that it has not relied upon any representation of NAB and/or its attorneys on the subject of taxability of any consideration provided under this Stipulation. The Trustee understands and expressly agrees that any income or other tax obligations of TFEC or its consolidated estate, including any interest or penalties (if any) ultimately determined to be payable by TFEC or its consolidated estate from the Final Reserve Payment, as well as any state or federal reporting or payment obligations of the Trustee and/or TFEC and its consolidated arising from or attributable to the Final Reserve Payment (including, but not limited to any applicable reporting obligations of the Trustee or TFEC), are the sole responsibility of the Trustee.

5.    Mutual Release between the Trustee and NAB. Except for the obligations set forth in this Stipulation, and for and in consideration of the agreements herein and the avoidance of further costs, inconvenience, and uncertainties relating to this matter, effective upon payment of the Final Reserve Payment and termination of the Merchant Agreement, the Trustee, on behalf of TFEC and its consolidated estate, on the one hand, and NAB, on the other hand, on behalf of themselves and their respective predecessors, successors, parent companies, subsidiaries, sister and affiliated companies, divisions or other related entities, and, solely in their capacities as such, their respective shareholders, officers, directors, administrators, subrogates, fiduciaries, members, agents, professionals, advisors, assignors, assignees, employees, and anyone who claims or may claim by and/or through any of the foregoing or in their stead (in this paragraph, the "Releasors"), do hereby release, acquit, covenant not to sue, and forever discharge each other and each other's respective predecessors, successors, parent companies, subsidiaries, sister and affiliated

010-8916-3518/2/AMERICAS

companies, divisions and other related entities, and, solely in their capacities as such, each of the foregoing's respective members, shareholders, managers, partners, officers, directors, employees, agents, administrators, insurers, subrogates, fiduciaries, assignors, assignees and attorneys (in this paragraph, the "Releasees") of and from any and all actions, causes of action, claims, claims for indemnity, claims for contribution, claims for restitution (including but not limited to any claim for restitution relating to any criminal proceedings), rights, rights of subrogation, suits, proceedings, demands, relief, liabilities, controversies, damages, losses and expenses, whatsoever, in law or equity, which the respective Releasors, or any of such Releasors, ever had, now have, or may hereafter claim to have, directly, by assignment or otherwise, against the respective Releasees, or any of such Releasees arising out of or related to the subject matter of the Merchant Agreement ("Released Claims").

6. **Waiver of Rights.** The Trustee on behalf of himself and TFEC's consolidated estate, on the one hand, and NAB, on the other hand, (including their respective assigns, agents, employees, attorneys, and anyone who claims or may claim by and/or through any of the foregoing and/or in their stead) hereby expressly waive and relinquish any rights and benefits relating to their ability to later assert claims arising out of or related to the subject matter of the Released Claims for which they do not now know or suspect to exist in their favor at the time of executing this Stipulation, which if known might have materially affected this Stipulation. The Parties intend that the releases granted in this Stipulation constitute a full and complete release of the Released Claims. The Parties acknowledge and understand that they might later discover facts in addition to or different from those which they now know or believe to be true with respect to the Released Claims, but that it is their intention to fully, finally, and forever settle and release all claims, known or unknown, suspected or unsuspected, which now exist, might exist, or previously existed between TFEC and the Trustee, on the one hand, and NAB, on the other hand, arising out of or related to the subject matter of the Released Claims. This Stipulation is intended to be and is final and binding, regardless of any claims of misrepresentation, concealment of fact, or mistake of law or fact and shall be and remains in effect as a full and complete release of all matters released in this Stipulation, notwithstanding the discovery or existence of any additional or different claims or facts relative to this Stipulation. In furtherance of such intention, the Parties agree that the releases given pursuant to this Stipulation shall remain in effect as a full and complete release between TFEC and the Trustee, on the one hand, and NAB, on the other hand, of the Released Claims, notwithstanding the discovery or existence of any such additional or different facts.

7. **Effective Date.** The effective date of this Stipulation (the "Effective Date") will be the date that this Stipulation is approved by entry of a final and non-appealable order by the Bankruptcy Court.

8. **Entire Stipulation.** This Stipulation contains the entire agreement between the Parties and supersedes and replaces all prior negotiations, proposed settlement agreements, written or oral, between the Parties. Each Party acknowledges that there have been no promises, representations or warranties, express or implied, made by the other or by the other's agents, to induce them to execute this Stipulation, other than those set forth in this Stipulation. It is expressly understood and agreed that this Stipulation may not be altered, amended, modified, or otherwise changed in any respect, except by a writing duly executed by the Parties, their successors or assigns in interest, or their authorized representatives. This Stipulation is a fully integrated contract.

- 4 -

9. **Jurisdiction and Governing Law.** The Parties consent to jurisdiction and venue for any claim relating to this Stipulation, including any claim for enforcement of this Stipulation or any claim arising out of a breach of this Stipulation, in the United States Bankruptcy Court for the District Court Utah. This Stipulation is to be construed in accordance with and governed by the laws of the State of Utah.

10. **Good Faith Settlement and Advice of Counsel.** This Stipulation was negotiated between the Parties at arm's length. Each of the Parties represents that it has: (i) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Stipulation; (ii) executed this Stipulation with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice; (iii) read this Stipulation, and understands and assents to all the terms and conditions contained in this Stipulation without any reservations; and (iv) had, or has had the opportunity to have had, the same explained to it by its own counsel, who have answered any and all questions which have been asked of them, or which could have been asked of them, with regard to the meaning of any of the provisions of this Stipulation.

11. **No Prejudice to the Drafter.** No Party will be entitled to have any language contained in this Stipulation construed against any other Party based upon the identity of the drafter.

12. **Headings.** The headings or captions of the sections or paragraphs of this Stipulation are for convenience of reference only and in no way define, limit or affect the scope or substance of any section or paragraph of this Stipulation.

13. **Successors in Interest.** This Stipulation shall be binding on the Parties hereto and their respective successors, parents, subsidiaries, divisions, alter egos, affiliated corporations and related entities, and their past or present officers, directors, partners, employees, attorneys, agents, and assigns, and any or all of them.

14. **Survival.** The Parties hereby agree that the provisions of this Stipulation, including, without limitation, the representations, warranties, covenants and releases made herein, shall survive the execution of this Stipulation and the performance by the Parties of their respective obligations under this Stipulation.

15. **Execution of Documents.** This Stipulation may be executed simultaneously or in counterparts, each of which shall be an original, but all of which together shall constitute one and the same instrument. A facsimile or electronic copy of a signature page is the equivalent of an original signature page.

16. **Authority to Settle.** The persons executing this Stipulation on behalf of the Parties hereto warrant that (i) such Party is duly organized and existing, (ii) they are duly authorized to execute and deliver this Stipulation on behalf of said Party and to bind that Party, including its members, agents and assigns, (iii) by so executing this Stipulation, such Party is formally bound to the provisions of this Stipulation, and (iv) the entering into this Stipulation does not violate any provision of any other agreement to which said Party is bound.

010-8916-3518/2/AMERICAS

17. <u>Severability of Stipulation</u>. If any provision of this Stipulation is held by a court of competent jurisdiction to be invalid, void, or unenforceable for any reason, the remaining provisions shall remain valid and enforceable notwithstanding, unless the provision found to be unenforceable is of such material effect that this Stipulation cannot be performed in accordance with the intent of the Parties in the absence of any such provision.

18. <u>Further Assurances</u>. Each of the Parties hereby agrees to execute such other and further documents, and to take such other and further actions, as may be reasonably requested by any of the Parties for the sole purpose of effectuating the agreements herein.

19. <u>Time is of the Essence</u>. Time shall be of the essence in connection with any and all dates and times set forth in this Stipulation.

IN WITNESS WHEREOF, the Parties have caused this instrument to be executed on and as of the Effective Date.

TRUSTEE

By: _____

Print: Michael F. Thompson, Trustee of the Falls Event Center LLC

NORTH AMERICAN BANCARD, LLC

By: _____

Print: Jay Nadarajah

Its: EVP & Chief Risk Officer, North American Bancard, LLC

- 7 -

010-8916-3518/2/AMERICAS